RICHARD L HOLCOMB (HI Bar No. 9177)
BRIAN J BRAZIER (HI Bar No. 9343) (Of Counsel)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI 96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@gmail.com
Email: brianbrazier@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| De-Occupy Honolulu;<br>Catherine Russell;<br>Christopher Smith;<br>Andrew Smith;<br>Madori Rumpungworn; and<br>John Does 1-50,<br><br>          Plaintiffs,<br>   vs.<br><br>City and County of Honolulu;<br>Westley Chun, in his personal and<br>official capacity;<br>Trish Morikawa, in her personal and<br>official capacity;<br>Larry Santos, in his personal and official<br>capacity; and<br>John Does 1-50 in their personal and<br>official capacities.<br><br>          Defendants. | CASE NO. 1:12-cv-000668 JMS KSC<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT<br><br>Hearing:<br><br>Date: March 12, 2013<br><br>Time: 9:00 a.m.<br><br>Judge: Honorable J. Michael Seabright |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

## **TABLE OF CONTENTS**

**I.     INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.    STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**III.   ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    **A.  The Complaint contains more than sufficient facts.** . . . . . . 3

    **B.  Plaintiffs have claims for relief that are more
        than plausible on their face.** . . . . . . . . . . . . . . . . . . . . . . . 12

        Plaintiffs' claims should not be dismissed as to the
        Defendants personally or in their official capacities. . . . . 12

        Plaintiffs' request for punitive damages survives. . . . . . . 13

        Plaintiffs' federal and state constitutional
        Claims are sufficiently pled and must not be dismissed. . . 14

            **Fourth Amendment Claims** . . . . . . . . . . . . . . . . . . 14

            **Due Process Claims** . . . . . . . . . . . . . . . . . . . . . . . . 18

            **First Amendment Claims** . . . . . . . . . . . . . . . . . . . 19

            **Takings Clause** . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            **Conspiracy, Failure to Supervise
            and 42 U.S.C. § 1983 Claims** . . . . . . . . . . . . . . . . . 22

            **State Constitution/
            Law of the Splintered Paddle Claim** . . . . . . . . . . . 24

        Plaintiffs have pled cognizable
        state law claims against Defendants . . . . . . . . . . . . . . . . 25

            **Conversion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

            **Replevin** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

**Negligence** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     26

**Negligent Supervision and Training** . . . . . . . . . .     27

Plaintiff De-Occupy has standing
to seek claims that result in damages . . . . . . . . . . . . . . .     28

**IV.    CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     30

## TABLE OF AUTHORITIES

<u>**Cases**</u>

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . .     2, 5, 6

<u>Awakuni v. Awana</u>, 115 Hawai'i 126, 105 P.3d 1027 (2007) . . . . . . .     26

<u>Balistreri v. Pacifica Police Dept</u>., 901 F.2d 696 (9th Cir.1988) . . . . .     1

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) . . . . . . . . . . . . . . .     2, 4-5

<u>Conley v. Gibson</u>, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . .     2, 4

<u>Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.</u>,
473 U.S. 788 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

<u>Fed'n of African Am. Contractors v. City of Oakland</u>,
96 F.3d 1204 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

<u>Frisby v. Schultz</u>, 487 U.S. 474 (1988) . . . . . . . . . . . . . . . . . . . . . . . .     20

<u>Gillespie v. Civiletti</u>, 629 F.2d 637 (9th Cir.1980) . . . . . . . . . . . . . . .     1-2

<u>Golden Eagle Distrib. Corp. v. Burroughs Corp.</u>,
801 F.2d 1531 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

<u>Hunt v. Washington Apple Advertising Com'n</u>,
 432 U.S. 333 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     28, 29

International Society for Krishna Consciousness, Inc. v. Lee,
505 U.S. 672 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

Lavan v. City of Los Angeles, 693 F.3d 1022 (9th Cir. 2012) . . . . . . .   14, 15,
16-18

Monell v. Department of Social Services, 473 U.S. 159 (1985) . . . . . .   13

Miranda v. City of Cornelius, 429 F.3d 858 (2005) . . . . . . . . . . . . . .   15

Robertson v. Dean Witter Reynolds, Inc.,
749 F.2d 530 (9th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Scheuer v. Rhodes, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . .   4

United States v. Ritchie, 342 F.3d 903 (9th Cir.2003) . . . . . . . . . . . .   2, 21

Vance v. Barrett, 345 F.3d 1083 (9th Cir. 2003) . . . . . . . . . . . . . . .   18

***Constitutional Provisions, Statutes, Rules, and Other Authorities***

Fed.R.Civ.P., Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12-13

ROH § 29-19.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21-22

# I.  INTRODUCTION

The majority of the issues raised in Defendants' Motion to Dismiss Plaintiffs' Complaint are either completely frivolous or, at the very least, borderline frivolous.[1] Those issues that may, at some point, have some merit are more appropriately disposed of in a Motion for Summary Judgment *after* the parties have had the opportunity to conduct discovery and ascertain the roles and extent of the culpability of the parties in the instant action.  At the present time, Plaintiffs have undoubtedly pled adequate facts to support each and every cause of action in the complaint and those facts more than plausibly entitle Plaintiffs to the relief sought.  The Defendants' Motion to Dismiss should be denied in its entirety.

# II. STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984)).  However, in determining whether either of these infirmities are present, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir.1996).   And, likewise, any doubts should be construed in favor of the pleader.  Gillespie v. Civiletti,

---

1 The few minute exceptions to Plaintiffs' summation of its response to the Motion are noted herein.

629 F.2d 637, 640 (9th Cir.1980).   Not only are the allegations set forth in the Complaint considered in this most favorable light, but also courts may "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.2003).

With the benefit of the application of this standard, which is designed to prevent dismissals of potentially meritorious complaints, a complaint still need only contain sufficient factual allegations to "state a claim to relief that is plausible on its face" to survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

Thus, Defendants face a very onerous burden when challenging complaints pursuant to Rule 12(b)(6).   Indeed, a complaint should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 (1957); Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir.1980).

## III. ARGUMENT

### A.  The Complaint contains more than sufficient facts.

Defendants claim that "Plaintiffs' generalized and conclusory allegations in their Complaint lack the factual specificity that this Court requires in order [for the complaint] to survive a Rule 12(b)(6) motion to dismiss."  Defendants' Motion to Dismiss Complaint ("Def. Motion") at 9.  Plaintiffs have alleged numerous specific events, specific dates and specific personal property owned by Plaintiffs that has been seized and/or destroyed by the Defendants individually and collectively.  Moreover, Plaintiffs have provided videotape evidence showing the seizure and destruction of that property by the Defendants.

Accordingly, Plaintiffs cannot begin to understand how Defendants can complain that this is a "threadbare recital" of "mere conclusory statements."  Def. Motion at 8.  Indeed, such allegations are frivolous and this Court should treat them as such.  *See* Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1536 (9th Cir. 1986) ("Rule [11] was designed to create an affirmative duty of investigation both as to law and as to fact before motions are filed. It creates an objective standard of "reasonableness under the circumstances."  And, Rule 11 was designed to deter "dilatory or abusive pretrial tactics" and "'costly meritless maneuvers.'").  Nevertheless, Plaintiffs address Defendants' consistent misplaced reliance on Twombly and Iqbal, *supra.*, below.

In Twombly, the Court found that the pleadings in an antitrust conspiracy case did not provide the Defendants with the necessary information to defend the case. In essence, the Court ruled that the pleadings did not provide enough facts to raise a reasonable expectation that discovery would reveal evidence of an illegal agreement. In so ruling, however, the Court specifically noted that, in order to survive a 12(b)(6) motion, the Plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." 550 U.S. at 555 (*citing* Conley v. Gibson, 355 U.S. 41, 47 (1957)). Thus, a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In footnote 3, the Court explains the difference between the situation in Twombly, where the complaint alleged insufficient factual basis for the claims and cases such as the present one:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he bases his claim,' Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests. See 5 Wright & Miller § 1202, at 94, 95 (Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it').

Twombly 550 U.S. at 556, n. 3.  The Defendants confuse the requirement that sufficient facts be plead so as to put the Defendants on notice as to the claims presented and their bases, and, instead, seem to demand that Plaintiffs tie each individual fact to each individual cause of action in order to survive a 12(b)(6) motion.  That is simply not the law.  The pleading requirements of rule 8(a) simply require a "statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it."  *Id*.

The Defendants' reliance on Iqbal, *supra*. is equally misdirected.  The Court in Iqbal summarized the allegations in Iqbal's complaint as follows:

> The complaint contends that petitioners designated respondent a person of high interest on account of his race, religion, or national origin, in contravention of the First and Fifth Amendments to the Constitution. The complaint alleges that 'the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11.'  It further alleges that '[t]he policy of holding post–September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001.'  Lastly, the complaint posits that petitioners 'each knew of, condoned, and willfully and maliciously agreed to subject' respondent to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'  The pleading names Ashcroft as the "principal architect" of the policy . . . and identifies Mueller as 'instrumental in [its] adoption, promulgation, and implementation.' Id., ¶ 11, at 157a.

Iqbal, 556 U.S. at 668-669.  Thus, in contrast to this Complaint, the Plaintiff in Iqbal did not allege specific incidents of misconduct, and did not allege the dates and times of any

specific actions.  Iqbal simply said that the government was wrong and alleged causes of actions to broadly parallel the unspecified wrong.

However, the instant Plaintiffs have alleged specific incidents on specific dates committed by specific people and backed by specific evidence in support of their claims.  As to each of Plaintiffs' causes of action, Plaintiffs have more than met their burden.  The court in <u>Iqbal</u>, describing that burden, continued as follows:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." <u>Id.</u>, at 557, 127 S.Ct. 1955.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id.</u>, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.*, at 556.As to each of Plaintiffs' claims, sufficient facts have been alleged that far exceed the "facial plausibility" necessary for court to draw the "reasonable inference" that the Defendants are liable for the misconduct.

Indeed, in the present case, Plaintiffs have provided dates, times, places, and pieces of property at issue as to each of Plaintiffs' causes of action.  In summary, the Plaintiffs first specifically identified and described the ordinances at issue as follow:

> Starting in 2010, the Honolulu City Council has targeted the homeless with the passage of two bills, Bill 39 which is codified as Chapter 29, Article 18 of the Revised Ordinances of Honolulu ("ROH") and, more recently, Bill 54, which is codified as Chapter 29, Article 19 of the ROH.  Complaint at ¶ 20.

> Article 18 defines and permits the City to define areas of the sidewalk designated as "pedestrian use zones."  Complaint at ¶ 25.  It prohibits the

6

storage of personal property within those zones. *Id.* Unlike Article 19, Bill 54 specifically excepts persons engaged in "expressive activities" from the ordinance's prohibitions. *Id.*

Article 19 authorizes the seizure of "stored" property. Complaint at ¶ 26. It defines stored property as property that has not been removed from public property within 24 hours after having been "tagged" with a notice from the City. *Id.* Article 19 also authorizes the seizure of property that "interferes with the safe or orderly management of the premises or poses a threat to health, safety, or welfare of the public." *Id.*

Upon seizure, all property is to be impounded. Complaint at ¶ 27. Impounded property is supposed to be stored. *Id.* Notice is supposed to be given to the owners at least 30 days before the City destroys or disposes of any of the property. *Id.* No hearing is provided for property owners either before any deprivation of the owners' property, before destruction or disposal of the property, or before impoundment fees and costs are assessed against the property owners. *Id.* at ¶ 28. Further, there are no exemptions or exceptions for property that is used in exercising First Amendment rights. *Id.* at ¶ 29.

Then, while avoiding improper legal conclusions, Plaintiffs specifically averred five separate instances in which the ordinance was enforced, including, where known, the individual Defendant who engaged in the challenged conduct and what specific actions constitute that conduct, as well as specific and plausible indicia of why that violated Plaintiffs' constitutional rights:

### February 15, 2012

On February 15, 2012, Defendants and/or their agents participated in a raid at Thomas Square. Complaint at ¶ 32. Upon arriving at Thomas Square, Defendants and/or their agents, seized and detained Plaintiff Christopher Smith, separating him from his personal property, which had not been "tagged" 24 hours earlier pursuant to Sections 29-19.3(b) and 19.4. *Id.* at ¶ 33. Despite having detained Mr. Smith away from his property, another De-Occupy member, with Mr. Smith's consent, removed the property from public property to private property, as specifically contemplated by Section 29-19.3(b) of the Revised Ordinances of Honolulu. *Id.* at ¶ 34.

7

The property was then stored in the private commercial property located at 1210 Ward Avenue, a business known as Hawaiian Braces. *Id.* at ¶ 35. Defendants, including Defendants Santos, Chun, and Morikawa chased the property across Beretania Street. *Id.* The person having dominion over Hawaiian Braces, despite being interrogated Defendants, specifically authorized the storage of the personal property at 1210 Ward Avenue. *Id.*

Dissatisfied, Defendants then contacted the owner of Hawaiian Braces, who initially authorized the storage of the property. *Id.* at ¶ 36. However, after continual duress and coercion by the Defendants, the property owner relented to the Defendants' wish to remove Mr. Smith's personal property back to the public area from which it had been removed. *Id.*

Defendant Chun removed the personal property from private property onto public property. *Id.* Defendant Moriwaka rummaged through the property, discarding what she believed was not worth preserving. *Id.* at ¶ 38. All of the property was either seized or destroyed. *Id.* at ¶ 37-39. Some property was immediately discarded into a garbage truck, including an orange untagged tent, a gas can, and a number of mats and tarps. *Id.* Mr. Smith, through the impoundment process, was only able to regain some of his impounded property. *Id.* at ¶ 40-41.

### March 29, 2012

On March 29, 2012, all or some of the Defendants and/or their agents participated in another raid at Thomas Square. *Id.* at ¶ 45. Plaintiff Madori Rumpungworn's tent was erected on the sidewalk of Beretania Street, near numerous other tents. *Id.* at ¶ 46. Ms. Rumpungworn's personal property was also located within the tent. *Id.* Much of Ms. Rumpungworn's property was seized and destroyed during this raid. *Id.* Among the property seized was Ms. Rumpungworn's tent. *Id.* at ¶ 48. Yet, instead of impounding the property as provided by Chapter 29, Article 19 of the Revised Ordinances of Honolulu, Ms. Rumpungworn's tent was discarded into a garbage truck. *Id.* Ms. Rumpungworn pleaded with Defendant Chun to remove or allow her to remove the tent and/or personal property from the garbage truck. *Id.* at ¶ 49. Defendant Chun walked away, ignoring Ms. Rumpungworn's pleas. *Id.*

Ms. Rumpungworn then pleaded with another employee of the City to remove her tent and personal items from the garbage truck. *Id.* at ¶ 49. Upon hearing Ms. Rumpungworn's pleas, that employee moved his finger in a circular motion, instructing the driver of the truck to initiate the mechanism that compacts rubbish in the bed of the truck. *Id.* The

mechanism was initiated, and Ms. Rumpungworn's tent was destroyed in full view of everyone present. *Id*. at ¶ 50.

### June 28, 2012

On June 28, 2012, the Defendants and/or their agents participated in another raid at Thomas Square. *Id*. at ¶ 55. Plaintiff Catherine Russell's tent was erected on the sidewalk of Beretania Street along with several other tents. *Id*. Her and other Plaintiffs' personal property were located in the tent. *Id*. Many items of untagged personal property were seized and destroyed during this raid. *Id*. Again, whether the property was seized or destroyed was left to the sole discretion of the Defendants and/or their agents. *Id*. Various Defendants and/or their agents sorted through Ms. Russell's belongings and discarded some of it into a garbage bag while placing only part of it into the bin which was presumably there to store seized property, although much of that allegedly stored property has been unrecoverable. *Id*.

None of the property was "tagged" as required by Sections 29-19.3(b) or 29-19.4 of the Revised Ordinances of Honolulu. *Id*. at ¶ 58.

After months of Defendants erecting various obstacles to prevent or deter the return of the impounded property, only a portion of the property was ever returned to Ms. Russell. *Id.* at ¶ 61. A specific inventory of property was then provided. *Id*. at a-ii.

### August 8, 2012

On August 8, 2012, all or some of the Defendants and/or their agents participated in another raid at Thomas Square. Plaintiff Andrew Smith's tent was erected on the sidewalk of Beretania Street along with several other tents. Personal property was located in the tent. *Id*. at ¶ 70-72.

Various property was seized and destroyed during this raid. Whether the property was seized or destroyed was once again left to the sole discretion of the Defendants and/or their agents. Various Defendants and/or their agents sorted through Mr. Smith's belongings, discarding some of it into a garbage bag and only placing part of it into the bin which should have been used to impound all of the seized property. *Id*. at ¶ 70-73.

After Defendants' arrival, Defendant Santos and/or other John Doe Defendants admitted that property, "tagged" pursuant to Sections 29-19.3(b) and 19.4 on the previous day, had been removed. Nevertheless, Defendants seized and destroyed untagged property, including the property of Plaintiffs Russell and Smith. *Id*. at ¶ 74-75.

**September 6, 2012**

Plaintiffs had erected a sign in protest of the Defendants' actions. *Id*. at 85-86.   On September 6, 2012, the sign was not "tagged" as required by Sections 29-19.3(b) or 29-19.4 of the Revised Ordinances of Honolulu. *Id*. Nevertheless, on September 6, 2012, Defendants conducted another raid on Thomas Square. *Id*. at ¶ 87.  Defendants seized and destroyed the untagged property, including Ms. Russell's sign. Id.   The Plaintiffs who were present, including Ms. Russell, were seized and detained away from their property. Id. at ¶ 88.

**October 9, 2012**

On or about October 9, 2012, Plaintiff Russell had painted and erected Tulsi Gabbard political signs on what the De-Occupy members called the "Free Speech" Wall. *Id*. at ¶ 93.  The signs had a large "X" painted across the then-candidate's name, in protest of Ms. Gabbard's policies pertaining to the homeless. *Id*.   The signs were not "tagged" as required by Sections 29-19.3(b) or 29-19.4 of the Revised Ordinances of Honolulu. *Id*. at ¶ 94. No notice was given that the property was subject to seizure. *Id*. Nevertheless, on September 6, 2012, Defendant Chun seized and destroyed Ms. Russell's signs. *Id*. at ¶ 95.

Ms. Russell, who videotaped the seizure, asked Defendant Chun why he was taking Ms. Russell's artwork and also why he was taking "untagged" property. *Id*. at ¶ 96.  Defendant Chun ignored Ms. Russell and walked away with the signs. *Id*.

**November 21, 2012**

On November 21, 2012, Defendants again raided the De-Occupy Honolulu camp, and destroyed multiple pieces of property in violation of City ordinances. *Id*. at ¶ 101-102.  This property included five chairs, a blue tarp, two video cameras, and five tents.  This property was not stored; it was simply destroyed. *Id*. at ¶ 104-122.

Accompanying each of these specific recounts of the facts that occurred on specific days and, where available, naming each individual Defendant and the capacity in which that Defendant was involved, was language identical or almost identical to the following:

No inventory of the seized or destroyed property was ever provided to [Plaintiff]; no hearing has ever been offered or provided to [Plaintiff] concerning the seized and/or destroyed [or seized] property; and no attempt

10

has ever been made by the City or any other Defendant, their agencies, to replace or compensate [Plaintiff] for the destroyed property.  *Id*. at ¶¶ 42-44; 53-54; 58, 60; 71-78; 86; 89; 97; 120-21.

In addition, where pre-deprivation notice was not provided to Plaintiffs before the seizure or destruction of property, Plaintiffs specifically alleged that fact.  For example:

> On September 6, 2012, in protest of the various actions taken against members of De-Occupy, Plaintiff Russell had painted and erected a sign quoting Lavan v. City of Los Angeles, 693 F.3d 1022 (9th Cir. 2012).  *Id*. at ¶ 85-86.  That opinion had only been released on September 5, 2012 and condemns many of the actions that had been taken against De-Occupy members, including the named Plaintiffs, by Defendants.  *Id*.  The seizure and destruction of the property was not authorized by the Revised Ordinances of Hawaii.  *Id*. at ¶ 90.  The property had not been "stored" at that location as defined by Sections 29-19.3(b).  Id.  And, the property did not interfere with the safe or orderly management of the premises or pose a threat to the health, safety, or welfare of the public.  *Id*. at ¶ 90.  Indeed, property in that exact location had been tagged both before and after this illegal seizure.  *Id*.

And, on October 9:

> The property had not been "stored" at that location as defined by Sections 29-19.3(b).  *Id*. at ¶ 98.  And, the property did not interfere with the safe or orderly management of the premises or pose a threat to the health, safety, or welfare of the public.  *Id*.  Indeed, property in that exact location had been tagged both before and after this illegal seizure.  *Id*.  No inventory of the seized or destroyed property was ever provided to Ms. Russell; no hearing has ever been offered or provided to Ms. Russell concerning the seized and/or destroyed property, and no attempt has ever been made by the City or any other Defendant, their agencies to replace or refund the property.  *Id*.

Clearly, these facts are sufficient to provide adequate notice to the Defendants of the facts comprising the claim; and, moreover, the allegations more than demonstrate a plausible entitlement to the relief requested by Plaintiffs.   Defendants do not

meaningfully debate whether the factual allegations contained within Plaintiffs' complaint are true.  In fact, they deny nothing instead simply avoiding Plaintiffs' factual allegations altogether.   Defendants appear to read the causes of action in Plaintiffs' complaint in a vacuum, and do not care to recognize that each any every cause of action incorporates the factual statements made in the complaint.  As specifically discussed in each section below, Plaintiffs have plead sufficient facts in support of each of their causes of action, and Defendants' reliance on <u>Twombly</u> and <u>Iqbal</u> to contradict this unavoidable conclusion is completely misplaced.

**B.  Plaintiffs have claims for relief that are more than plausible on their face.**

If the facts alleged are true, which this Court must assume, Plaintiffs are entitled to relief.  Each of the Defendants' arguments as to the purported deficiency of those claims is discussed below.

<u>PLAINTFFS' CLAIMS SHOULD NOT BE DISMISSED AS TO THE DEFENDANTS PERSONALLY OR IN THEIR OFFICIAL CAPACITIES.</u>

Obviously, Plaintiffs have not had the opportunity to conduct discovery to ascertain whether the complained-of conduct of the individual defendants occurred in the course of conducting their official duties, thereby rendering the city liable, or whether their conduct was outside the scope of their official duties, thereby rendering them individually liable.  Fortunately, Fed.R.Civ.P. 8(d)(2) states; "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the

pleading is sufficient if any one of them is sufficient," and that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Here, each individual defendant is named in both their individual and official capacities. Discovery will reveal upon which alternative theory the Plaintiffs choose to proceed.

Nevertheless, Defendants seek to use the Supreme Court's decision in <u>Monell v. Department of Social Services</u>, 473 U.S. 159 (1985), as both a sword and a shield. Defendants seek to have the claims against the individual defendants dismissed before Plaintiffs have had the opportunity to ascertain their precise role in the complained-of actions. If the individual defendants are dismissed at this early stage of the litigation, Defendant City will likely claim that the actions of those individuals were the actions of rogue employees of the City and not part of a custom or policy of the City, thereby rendering the City untouchable under <u>Monell</u>. Prior to discovery and giving the Plaintiffs the opportunity to ascertain the motivation for the individual defendants' actions, the individual defendants cannot be dismissed. If the Defendants' proposition were the law, a municipality and its employees would be left free to violate the constitutional rights of all citizens without any meaningful recourse, simply by pointing the finger at one another as the guilty party before aggrived citizens have the ability to ascertain whether the appropriate liability lies with the individual or the government.

<u>PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES SURVIVES.</u>

Defendants contend that punitive damages are completely unavailable against the city. Def. Motion at 11. While that may be true as to Plaintiffs' claims under 42 U.S.C.

section 1983, Defendants have provided no authority preventing the imposition of punitive damages against the City pursuant to Plaintiffs' other causes of action.  Further, if, as discussed above, the City chooses to blame the individual Defendants for acting outside any policy or custom of the City and the <u>Monell</u> quandary is, therefore, resolved in favor of Defendants having acted in their individual capacities, those individual Defendants are undoubtedly exposed to punitive liability.  The proposed dismissal of Plaintiffs' claim for punitive damages should be denied.

## PLAINTIFFS' FEDERAL AND STATE CONSTITUTIONAL CLAIMS ARE SUFFICIENTLY PLED AND MUST NOT DISMISSED.

### Fourth Amendment Claims

As discussed in detail below, Plaintiffs need only show a "meaningful interference" with their property when this Court evaluates Plaintiffs' Fourth Amendment Claims.[2]   <u>Lavan v. City of Los Angeles</u>, 693 F.3d 1022, 1027 (9th Cir. 2012).   Yet, Defendants devote only one paragraph of its Memorandum to discussing that standard.   Motion at pp. 12-13.   And, consistent with the remainder of its Memorandum, Defendants seek to avoid confronting the allegations of the Complaint.

Indeed, quite remarkably, the Defendants contend that "nothing in paragraphs 129 and 130 or the preceding 120 paragraphs allege how the City Defendants meaningfully interfered with any of these plaintiffs' possessory interests in the impounded personal

---

[2] Following Defendants' handling of Plaintiffs' ancillary claims based on the Hawaii constitution, Motion at p. 12, n. 9, Plaintiffs contend that each of those claims should not be dismissed for the same reasons that the claims based on the applicable federal counterpart to those state constitutional provisions survive.

property, if at all, or which plaintiff had a possessory interest in which personal property in the first instance." Motion at 12-13. As shown above, Plaintiffs meticulously and with great specificity identified: the type of property with which Defendants meaningfully interfered; who owned the property; and the Defendants' (often specifically identifying the individual Defendant) actions that constituted meaningful interference. In fact, if the factual averments in which Plaintiffs alleged meaningful interference with their property were removed from the Complaint, this Court would be confronted a 41-page Complaint in which pages 11 through 31 would be left blank. This contention does not pass Rule 11 muster.

Plaintiffs do observe that, while Defendants appear to recognize that Plaintiffs have alleged in some instances that their property was destroyed, Defendants only use the adjective "impounded" when describing the property. Notably, property does not have to be destroyed in order for "meaningful interference" to have occurred. Lavan, 693 F.3d at 1030 ("[h]ere, by seizing and destroying Appellees' unabandoned legal papers, shelters, and personal effects, the City meaningfully interfered with Appellees' possessory interests in that property."); Miranda v. City of Cornelius, 429 F.3d 858, 864 (2005) (mere impoundment of illegally parked vehicle, without destruction, clearly implicates the Fourth Amendment) (cited favorably in Lavan, 693 F.3d at 1028).

Even more remarkably, Defendants devote the majority of their argument to challenging the complaint because it "does not articulate any factual content that permits the Court to draw a reasonable inference that any of the plaintiffs had a

15

'reasonable expectation of privacy' with respect to the 'seized' personal property, all of which were located on a public sidewalk out in the open on South Beretania Street." Motion at 13.  Of course, despite Rule 3.3(a)(3) of the Hawaii Rules of Professional Conduct, Defendants do not disclose that this exact same argument was precisely and unequivocally rejected in <u>Lavan</u> mere months before the filing of this complaint:[3]

> The City argues that the Fourth Amendment does not protect Appellees from the summary seizure and destruction of their unabandoned personal property. It bases its entire theory on its view that Appellees have no legitimate expectation of privacy in property left unattended on a public sidewalk in violation of LAMC § 56.11. Relying on Justice Harlan's concurrence in *Katz v. United States,* the City asserts that the Fourth Amendment protects only persons who have both a subjectively and an objectively reasonable expectation of privacy in their property. 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring). As the Supreme Court has recently made very clear in *United States v. Jones,* 565 U.S. ——, 132 S.Ct. 945, 950, 181 L.Ed.2d 911 (2012), however, **the City's view entirely misapprehends the appropriate Fourth Amendment inquiry, as well as the fundamental nature of the interests it protects. The reasonableness of Appellees' expectation of privacy is irrelevant as to the question before us: whether the Fourth Amendment protects Appellees' unabandoned property from unreasonable seizures**.
>
> The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."

---

[3] Indeed, the entirety of the holding and the vast majority of the *dicta* of <u>Lavan</u> (an opinion reviewing the most analogous facts to those of this case that this Court could possibly expect to be available to assist it in deciding this case and which is cited in the Defendants' Memorandum for other purposes in the immediately preceding paragraph) is dedicated to obliterating any argument that Plaintiffs need possess (and therefore, show) any meaningful expectation of privacy.

*United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Appellees need not show a reasonable expectation of privacy to enjoy the protection of the Fourth Amendment against *seizures* of their unabandoned property. Although the district court determined that Appellees had a reasonable expectation of privacy in their EDARs and carts, we need not decide that question because the constitutional standard is whether there was "some meaningful interference" with Plaintiffs' possessory interest in the property.

To the extent that Justice Harlan's *Katz* concurrence generated the mistaken impression that the Fourth Amendment protects only privacy interests, the Supreme Court has clarified that the Fourth Amendment protects possessory and liberty interests even when privacy rights are not implicated. *Soldal v. Cook County,* 506 U.S. 56, 63–64 & n. 8, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). As the Court explained, while *Katz* and its progeny may have shifted the emphasis in Fourth Amendment law from property to privacy, "[t]here was no suggestion that this shift in emphasis had snuffed out the previously recognized protection for property under the Fourth Amendment." *Id.* at 64, 113 S.Ct. 538. Indeed, even in the *search* context, where privacy is the principal protected interest, the Supreme Court has recently reiterated that a reasonable expectation of privacy is not required for Fourth Amendment protections to apply because "Fourth Amendment rights do not rise or fall with the *Katz* formulation." *Jones,* 565 U.S. at ——, 132 S.Ct. at 950.

**Following *Soldal,* we recognized that a reasonable expectation of privacy is not required to trigger Fourth Amendment protection against seizures**. In *Miranda v. City of Cornelius,* 429 F.3d 858, 862 n. 2 (9th Cir.2005), for example, the plaintiffs admitted that they had no reasonable expectation of privacy in their parked car, but they nevertheless challenged the city's impoundment of the vehicle as an unreasonable seizure. **We held that the seizure was subject to the Fourth Amendment's reasonableness standard because "[t]he Fourth Amendment protects against unreasonable interferences in property interests regardless of whether there is an invasion of privacy." *Id.* at 862 (citing *Soldal* ).** Other circuits are in accord. *See United States v. Paige,* 136 F.3d 1012, 1021 (5th Cir.1998) ("The Supreme Court recently made clear that the protection afforded by the Fourth Amendment extends to an individual's possessory interests in property, even if his expectation of privacy in that property has been completely extinguished.") (citing *Soldal* ); *Lenz v. Winburn,* 51 F.3d 1540, 1550 n. 10 (11th Cir.1995) ("It is true that a possessory interest is all that is needed for the Fourth Amendment's

reasonableness requirement to apply to a *seizure.*") (citing *Soldal* ); *Bonds v. Cox,* 20 F.3d 697, 702 (6th Cir.1994) ("[O]ur finding that Bonds had no reasonable expectation of privacy in the house at 4174 Dunn Avenue does not affect our conclusion that Bonds has standing to challenge the seizure of her property.").

Lavan, 693 F.3d at 1027-29 (emphases added); *see also Id*. at 1029  ("the dissent's nearly exclusive focus on the *Katz* 'reasonable expectation of privacy' standard is misguided."); *Id*. at 1030  ("[n]o more [than meaningful interference] is necessary to trigger the Fourth Amendment's reasonableness requirement.").

Notably, the Ninth Circuit, in Lavan, also specifically held that "[v]iolation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property. Were it otherwise, the government could seize and destroy any illegally parked car or unlawfully unattended dog without implicating the Fourth Amendment." *Id*. at 693 F.3d at 1029.  This issue is wholly without merit and should be summarily denied in unmistakable language.

### Due Process Claims

Defendants argue that the "problem with Plaintiffs' 'due process' claim is their failure to provide the Court (or the City Defendants) with any factual content that provides the Court with any basis to draw a reasonable inference that the City Defendants, individually or collectively, violated the Fourteenth Amendment's due process clause by enforcing the SPO 'without underlying statutory authority and competent procedural protections.'"  Motion at 15 (*citing* Vance v. Barrett, 345 F.3d 1083 (9th Cir. 2003)).  According to Defendants, and based on that disingenuous

18

allegation, the complaint "does not satisfy the Igbal/Twombly test."  Motion at 15.

Again, as shown above, Plaintiffs meticulously and with great specificity identified:  the type of property with which Defendants meaningfully interfered; who owned the property; and the Defendants' (often specifically identifying the individual Defendant) actions that constituted meaningful interference.  Plaintiffs have also alleged that those specified meaningful interferences of property violate minimal guarantees of due process of law.  *See e.g.*, Complaint at ¶¶ 42-44; 53-54; 58, 60; 71-78; 85; 86; 89; 90; 97; 98; 120-21.  Insofar as the basis for Defendants' contention that these counts should be dismissed because Plaintiffs "do not . . . articulate with any specificity whose property was 'seized and/or destroyed'" is clearly disingenuous and should be denied.

Plaintiffs have claimed and Defendants do not deny that notice and a meaningful opportunity to be heard is required before a seizure of property may be held to comport with due process.  *See* Doc. 56.  Plaintiffs and presumably any other person faced with similar circumstances, do not know any other way to plead that they were not provided with those protections, other than specifically stating that they were not as was done in the Complaint.

**First Amendment Claims**

Defendants' argument that Plaintiffs' First Amendment "claim is a classic example of what may not survive an Iqbal/Twombly motion" is patently absurd. Motion at 15.  Every factual allegation in Plaintiffs' complaint, as Defendants themselves acknowledge and as specifically stated in the complaint, occurred on the

19

sidewalks adjacent to Thomas Square Park.   Perhaps the most settled aspect of First Amendment law recognizes that "[t]he types of property that we have recognized as the quintessential public forums are streets, parks, and sidewalks." International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 696 (1992), citing Cornelius v. NAACP Legal Defense & Ed. Fund, Inc., 473 U.S. 788 (1985); Frisby v. Schultz, 487 U.S. 474, 480–481 (1988).   Moreover, Plaintiffs have alleged multiple instances where the alleged facts clearly indicate the Defendants' interference with Plaintiffs' ability to conduct First Amendment activities.

In paragraphs 93-96 of the complaint, Plaintiffs discuss in detail and have provided video tape showing an instance where City officials, including Defendant Chun, seized and destroyed untagged political posters depicting political candidate Tulsi Gabbard with an a large "X" painted across the then-candidate's name.   Moreover, Plaintiffs have alleged and will prove true the fact that Defendants seized and destroyed an untagged sign quoting the Ninth Circuit's opinion in Lavan v. City of Los Angeles, 693 F.3d 1022 (9th Cir. 2012), which condemned the city of Los Angeles's behavior in ways which bear a strong resemblance to the actions of the city of Honolulu in this case. Complaint at ¶ 85-87.   Taking these facts as true, there can hardly be a more blatant violation of Plaintiffs' First Amendment rights.    To destroy political signs (quintessential political speech) without a compelling governmental interest and in a non-content neutral way is the very definition of a First Amendment violation.

For the Defendants to suggest that Plaintiffs have failed to state sufficient facts to justify a First Amendment claim either evidences a complete ignorance of the First Amendment by the Honolulu government and its employees or a complete disregard for the facts plead by Plaintiffs.  Any layperson could see the connection between the facts plead by Plaintiffs and the content-specific interference with quintessential political speech in a quintessential public forum that Defendants have conducted over and over again.  This is yet another of Defendants' frivolous attempts designed to dilate these proceedings in violation of Rule 11.

## Takings Clause

Defendants argue that the Plaintiffs' claims for violations of the Takings Clause of the Fifth Amendment should be dismissed because the Plaintiffs did not allege that their property was taken for a public use.  Motion at 17.  While Plaintiffs contend that the Complaint presents no such infirmity, this Court should consider judicially noticeable material when deciding Defendants' Motion.  Ritchie, 342 F.3d at 908. Here, ROH 29-19.1 states the legislative purpose for the challenged ordinance as follows:

> Public property should be accessible and available to residents and the public at large for its intended uses. The unauthorized use of public property for the storage of personal property interferes with the rights of other members of the public to use public property for its intended purposes and can create a public health and safety hazard that adversely affects residential and commercial areas. The purpose of this article is to maintain public areas in clean, sanitary, and accessible condition, to prevent harm to the health or safety of the public, to prevent the misappropriation of public property for personal use, and to promote the

public health, safety and general welfare by ensuring that public property remains readily accessible for its intended uses.

There is no authority suggesting that the "public use" prong of the takings clause requires that the property taken actually be provided to the public. Indeed, the "public use" clause has been consistently construed quite liberally. Accordingly, Defendants' motion in this regard should be denied.

### Conspiracy, Failure to Train and Supervise and 42 U.S.C. 1983 Claims

Plaintiffs' conspiracy claim more that survives the threshold for Defendants' 12(b)(6) motion, even by the standards articulated by the Defendants. In the Defendants' own words, a conspiracy requires three elements: (1) the formation of a conspiracy; (2) wrongful conduct in furtherance of a conspiracy; and (3) damage. Def.'s Motion at 18.

Plaintiffs have alleged that multiple individuals and the City government as a whole have collectively endeavored and/or agreed to unconstitutionally deprive Plaintiffs of multiple constitutional and common law rights. The entirety of Plaintiffs complaint is devoted to these allegations. As to the second element, Plaintiffs' entire complaint is devoted to allegations of collective wrongful conduct by the Defendants, seeking to deprive Plaintiffs of their Constitutional rights. And, as to the third element, Plaintiffs have been damaged monetarily and constitutionally by the wrongful conduct of Defendants in their conspiracy to damage Plaintiffs.

22

Thus, the elements of conspiracy clearly pled.   That the Plaintiffs, prior to discovery, cannot specifically delineate the precise back-channel workings of the Honolulu government in conspiring to deprive them of their constitutional rights is in no way fatal to their claim.   Multiple city organs and multiple alleged individuals, as well as Doe individuals whose identities have yet to be ascertained, have collectively organized a concerted effort to deprive Plaintiffs of their rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.   That is a conspiracy.

With respect to to Plaintiffs' "failure to train/supervise" claim, Defendants again express the correct standard but fail to even remotely read the facts alleged in conjunction with Plaintiffs' claims.   As Defendants state, "inadequate training may serve as a basis of section 1983 liability against municipality (sic) only where the failure to train amounts to "**deliberate indifference**" to the rights of the individual.   Def.'s Motion at 20 (emphasis in original).   Defendants have deliberately and unconstitutionally:   destroyed Plaintiffs' property; seized Plaintiffs' property; silenced Plaintiffs' speech; and denied Plaintiffs' due process of law - not on one occasion, not for one week, but for over one year.   This is the epitome of "deliberate indifference."

Finally, Defendants argument with respect to 1983 liability generally provides the correct standard, but again fails entirely to address the factual aspects of Plaintiffs' claims.   Citing <u>Delia v. City of Rialto</u>, 2010 WL 4398774 at 10 (9th Cir. 2010), Defendants correctly state that municipal conspiracy liability requires that the municipal

23

employees acted "pursuant to a longstanding practice or custom."   Motion at 21.

Plaintiffs' allegations of Defendants' unconstitutional activities span from February to

November 2012 and involve the activities of multiple named individuals and the City

itself.  If a municipality and its multiple agencies and employees engage in disgorging

citizens of their constitutionally protected rights on many occasions over the course of

nearly a year, particularly when their actions are veiled under the "authority" of a City

Ordinance, what is that if not a "longstanding practice or custom?"  The facts alleged in

this case are not an isolated instance of governmental misconduct where a single rogue

employee commits a wrong, but a longstanding, concerted effort to deprive Plaintiffs of

their rights.  Period.  The fact that Defendants make not one mention of a single specific

fact in Plaintiffs' allegations speaks volumes.  They know what they have done and

have no ability to defend their actions.

### State Constitution/Law of the Splintered Paddle Claim

The Constitution of Hawaii, Article IX, section 10 says what it says.  Based upon

the facts alleged by the Plaintiffs, women and children have been harassed, had their

property taken, and generally deprived of the ability to exist in a community that should

be grounded by the ideals of 'ohana and aloha; and Defendants, whose power and duty

it is to "provide for the safety of the people from crimes against persons and property,"

are the perpetrators of these acts.   In the absence of state law authority, this Court

should recognize the language of the Hawaii Constitution and allow Plaintiffs to

develop evidence and give meaning to the provisions of the Constitution of the great state of Hawaii.

**PLAINTIFFS HAVE PLED COGNIZABLE**
**STATE LAW CLAIMS AGAINST THE CITY**

**Conversion**

Defendants' argument regarding Plaintiffs' conversion claim is the "hodgepodge," not Plaintiffs' complaint.  Plaintiffs have alleged, as Defendants admit, that various property owned by different Plaintiffs has been either seized, discarded, destroyed, and not returned.  By the standard articulated by the Defendants, Plaintiffs have alleged more than sufficient facts to show that Defendants have committed an "act inconsistent with the general right of dominion which the owner of a chattel has in it, who is entitled to the use of it at all time and in all places."  Def's Motion at 23 (*citing* Tsuru v. Bayer, 25 Haw. 693 (Haw. Terr. 1920)).  If destroying the personal property of individuals and seizing property where an individual has no ability to seek its return are not acts "inconsistent with the general right of dominion which the owner of a chattel has in it," what is?

**Replevin**

Defendant again articulates the proper legal standard for replevin, "the right to recover the possession of goods illegally detained" and an "action to recover possession of the specific chattel."  Def.'s Motion at 23 (*citing* Sinnot v. Felock, 59 N.E. 265, 266 (N.Y. 1901)).  Again, however, Defendants seem not to have read Plaintiffs factual allegations.  Plaintiffs' complaint specifically articulates property that was seized by

25

Defendants and which Plaintiffs have been unable to recover.   As but one of many available examples, Plaintiffs specifically listed a number of items seized from Plaintiff Russell but never returned.   Complaint at ¶ 61 a-ii.   Clearly, Defendants' motion should be denied.

## Negligence

Defendants' negligence argument correctly states that non-judicial officials are shielded for tortious acts by a "qualified or conditional privilege," which shields those officials from tortious acts unless motivated by malice.   Motion at 25, (*citing* Towse v. State of Hawaii, 64 Haw. 624, 630 and 647 (Haw. 1982)).   The Hawaii Supreme Court has adopted the normal and usual sense of the word (*i.e.,* "substantially certain to cause injury" . . . "without just cause or excuse"  "malice" and/or "'reckless disregard of the law or of a person's legal rights[,]'" and/or "'[i]ll will; wickedness of heart.'"   Awakuni v. Awana, 115 Hawai'i 126, 141, 105 P.3d 1027, 1042 (2007) (citations omitted).   In the present case, Defendants have: chased Plaintiffs onto private property and strong-armed private property owners into forcing Plaintiffs off that property (after previously being welcomed onto it) in order to seize and destroy Plaintiffs' property,   Complaint at ¶ 35-41; wantonly destroyed Plaintiffs property in complete contravention of the City's ordinances even as the Plaintiffs stand nearby and beg for the property not to be destroyed,  Id. at ¶ 48-52;  destroyed untagged Plaintiffs' untagged property in complete violation of their own ordinances,  *See, e.g., Id*. at ¶ 59-62; refused to return property in violation of its own ordinances, *See, e.g.*, Id. at ¶ 62-67; specifically and based upon

content targeted Plaintiffs' right to free speech, *Id*. at ¶ 85-96;  and unconstitutionally separated Plaintiffs from their property in order to seize and destroy it,  *Id*. at ¶ 48-52 and 34-40, among other egregious actions.   Each of these acts clearly evidences a "reckless disregard" of the law or a person's legal rights, constituting the malice necessary to defeat Defendants' claim of qualified or conditional privilege. Accordingly, Defendants' motion should be denied.

## Negligent Supervision and Training

Defendants' argument with respect to negligent supervision involves the same quagmire as their argument with respect to the individual vs. official capacity of the individual defendants at this stage of the litigation.  Plaintiffs have simply not had the opportunity to ascertain whether the individual defendants were acting within the scope of their employment or outside the scope of their employment.  Either could be the case.

Without conducting discovery and having the opportunity to depose the state employees responsible for the wrongs committed against the Plaintiffs in this case and those responsible for managing and training them, it is impossible for Plaintiffs to know whether the properly charged party is the individual or their employer, the City.  There is no Iqbal/Twombly problem in the pleading of the complaint.

Adequate facts have been plead to allows the court to draw the reasonable inference that either the individual employee defendants in their personal capacity or the city defendant is liable for the misconduct alleged, which is all that Iqbal/Twombly require.   Plaintiffs simply cannot know without discovery whether the course of

wrongdoing committed against them stems from the official policies and customs of the City Defendant or from the actions of the City employees acting outside the scope of their employment.   Until the Plaintiffs have been able to meaningfully question both the individual defendants and the policy makers and higher-ups within the City concerning the impetus for the wrongful and unconstitutional acts of the Defendants collectively, Plaintiffs cannot know where the appropriate liability lies.

PLAINTIFF DE-OCCUPY HAS STANDING
TO SEEK CLAIMS THAT RESULT IN DAMAGES

Plaintiff De-Occupy Honolulu unquestionably has standing to pursue claims against the Defendants in this case.   Defendants provide this Court with an unusual representation of the governing standard for organizational standing in their summary of the Supreme Court's ruling in Hunt v. Washington Apple Advertising Com'n, 432 U.S. 333 (1977).   To quote the exact language of the Court in describing the test for organizational standing, the Court in Hunt described and ruled:

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members. . . . The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. . . . So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

Hunt, at 342 (citations omitted).

28

More importantly, the court defined the nature of organizational standing in the context of a case where injunctive relief is sought by saying:

> (W)hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

Hunt, 432 U.S. at 342 (citations omitted).

There is no question that De-Occupy Honolulu represents members who "are suffering immediate or threatened injury as a result of the challenged action." As specifically stated in the complaint:

> Plaintiff De-Occupy Honolulu is an unincorporated association comprised of a wide range of people from widely varying economic, social, and ethnic backgrounds. Its purpose is to condemn, protest and advocate against social injustices, including legal, governmental and social policies victimizing the houseless population of Honolulu and throughout Hawaii. . . . its members attempt to further these purposes by maintaining a constant public vigil, conducting organized demonstrations, and erecting signs expressing their political views to be viewed by the public.

Complaint at ¶ 10. The participation of De-Occupy as an organization unquestionably ensures that any positive result of this lawsuit, whether by injunction or in the form of monetary damages "will inure to the benefit of those members of the association actually injured." Much of the impounded and destroyed property at question in this case was collectively owned by the De-Occupy organization and not by any individual. As detailed in Plaintiffs' complaint, De-Occupy's collective property, including their

29

"Free Store," are specifically described as property that has been impounded and/or destroyed by the Defendants.  See, e.g., Complaint at ¶ 81-84.  De-Occupy Honolulu's participation in the case is indispensible in the protection of not only the named Plaintiffs, but to all "those members of the association actually injured."

## IV.  CONCLUSION

Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss Plaintiffs' Complaint in full.

DATED:  Honolulu, Hawaii; February 22, 2013

s/ Richard L. Holcomb
Richard L. Holcomb 9177
Brian Brazier 9343 (of counsel)
Counsel for the Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| De-Occupy Honolulu;<br>Catherine Russell;<br>Christopher Smith;<br>Andrew Smith;<br>Madori Rumpungworn; and<br>John Does 1-50,<br><br>          Plaintiffs,<br>     vs.<br><br>City and County of Honolulu;<br>Westley Chun, in his personal and<br>official capacity;<br>Trish Morikawa, in her personal and<br>official capacity;<br>Larry Santos, in his personal and official<br>capacity; and<br>John Does 1-50 in their personal and<br>official capacities.<br><br>          Defendants. | CASE NO.  1:12-cv-000668<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

I hereby certify that on the date first stated below, or in compliance with the rules of this Court, I did serve a true and exact copy of the foregoing document via this Court's electronic filing system, upon the following:

Ernest Nomura,
Brian Black, and/or
Scott Dodd
Dept. of Corp. Counsel
530 S. King St.
Room 110
Honolulu, HI  96813

DATED:  Honolulu, Hawaii; February 22, 2013.


                                        _s/Richard L. Holcomb__
                                        Richard L. Holcomb
                                        Attorney for Plaintiffs