DEPARTMENT OF THE CORPORATION COUNSEL
DIANE T. KAWAUCHI        1539-0
Acting Corporation Counsel
ERNEST H. NOMURA        4829-0
DAWN D.M. SPURLIN        5559-0
LAURA YOSHIDA        6771-0
Deputies Corporation Counsel
530 South King Street, Room 110
Honolulu, Hawaii  96813
Telephone No. (808) 768-5120
E-Mail:      enomura@honolulu.gov
               dspurlin@honolulu.gov
               lyoshida@honolulu.gov
Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
WESTLEY CHUN, and TRISH MORIKAWA

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| DE-OCCUPY HONOLULU; CATHERINE RUSSELL; CHRISTOPHER SMITH; ANDREW SMITH; MADORI RUMPUNGWORN; AND JOHN DOES 1-50,<br><br>                Plaintiffs,<br><br>        vs.<br><br>CITY AND COUNTY OF HONOLULU; WESTLEY CHUN, in his personal and official capacity; | CIVIL NO. CV 12-00668 JMS-KSC<br><br>DEFENDANTS CITY AND COUNTY OF HONOLULU, WESTLEY CHUN, AND TRISH MORIKAWA'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' "SUPERSEDING" MOTION FOR PRELIMINARY INJUNCTION; DECLARATION OF TRISH MORIKAWA; DECLARATION OF LAWRENCE SANTOS; DECLARATION OF ERNEST H. NOMURA; EXHIBITS "1" – "19"; CERTIFICATE OF SERVICE<br><br>[Caption Continued on Next Page] |

TRISH MORIKAWA, in her personal
and official capacity; LARRY
SANTOS, in his personal and
official capacity; and JOHN DOES
1-50,

                    Defendants.

DATE:   March 12, 2013
TIME:    9:00 a.m.
JUDGE:  J. Michael Seabright

DEFENDANTS CITY AND COUNTY OF HONOLULU,
WESTLEY CHUN AND TRISH MORIKAWA'S
MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
"SUPERSEDING" MOTION FOR PRELIMINARY INJUNCTION

DECLARATION OF TRISH MORIKAWA

DECLARATION OF LAWRENCE SANTOS

DECLARATION OF ERNEST H. NOMURA

EXHIBITS "1" – "19"

CERTIFICATE OF SERVICE

2

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| DE-OCCUPY HONOLULU; CATHERINE RUSSELL; CHRISTOPHER SMITH; ANDREW SMITH; MADORI RUMPUNGWORN; AND JOHN DOES 1-50,<br><br>             Plaintiffs,<br><br>  vs.<br><br>CITY AND COUNTY OF HONOLULU; WESTLEY CHUN, in his personal and official capacity; TRISH MORIKAWA, in her personal and official capacity; LARRY SANTOS, in his personal and official capacity; and JOHN DOES 1-50,<br><br>             Defendants. | CIVIL NO. CV 12-00668 JMS-KSC<br><br>DEFENDANTS CITY AND COUNTY OF HONOLULU, WESTLEY CHUN, AND TRISH MORIKAWA'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' "SUPERSEDING" MOTION FOR PRELIMINARY INJUNCTION |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................1

FACTS UNDERLYING THIS MOTION .......................................6

  A.  The Stored Property Ordinance's Legislative History .........6

  B.  SPO Enforcement............................................................10

        February 15, 2012 ........................................................14

        March 29, 2012 ............................................................15

        June 28, 2012 ..............................................................16

        August 8, 2012............................................................16

        September 6, 2012.......................................................17

        October 9, 2012 ...........................................................17

        November 21, 2012 ......................................................18

STANDARD OF REVIEW .......................................................19

ARGUMENT ..........................................................................20

  1.  PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF
      MUST BE DENIED. ........................................................20

      A.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON
           THE MERITS OF ANY OF THEIR CLAIMS AGAINST
           THE CITY DEFENDANTS. ....................................20

      B.   PLAINTIFFS DO NOT SUFFER IRREPARABLE HARM
           IN THE ABSENCE OF INJUNCTIVE RELIEF.........................21

      C.   THE BALANCE OF EQUITIES DECIDEDLY TIP IN
           FAVOR OF THE CITY DEFENDANTS, NOT
           PLAINTIFFS .........................................................22

i

D.   INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK IS
     NOT IN THE PUBLIC INTEREST   .........................................23

2.   PLAINTIFFS' FACIAL CHALLENGE TO THE SPO MUST BE
     REJECTED.....................................................................................25

     A.   Procedural Due Process........................................................25

     B.   Overbroad   ..........................................................................27

     C.   Prior Restraint   ...................................................................28

3.   THE DOMINIC JAMES "AS APPLIED" CHALLENGE MUST
     BE DENIED ....................................................................................29

CONCLUSION.............................................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

Alliance for Wild Rockies v. Cottrell,
  622 F.3d 1045 (9th Cir. 2010) ...............................................21

Carribean Marine Servs. Co. v. Baldridge,
  844 F.2d 668 (9th Cir. 1988).................................................24

Clear Channel Outdoor, Inc. v. City of Los Angeles,
  340 F.3d 810 (9th Cir. 2003) ................................................22

Demore v. Kim,
  536 U.S. 956 (2002) ..........................................................29

Forsyth County v. Nationalist Movement,
  505 U.S. 123 (1992) .........................................................32

Jayaraj v. Scappini,
  66 F.3d 36 (2nd Cir. 1995) ...................................................24

Jones v. City of Los Angeles,
  444 F.3d 1118 (9th Cir. 2006),
  vacated pursuant to settlement, 505 F.3d 1006 (9th Cir. 2007).................9

Kim v. Ziglar,
  276 F.3d 523 (9th Cir. 2002)................................................29

Kincaid v. City of Fresno,
  2006 WL 3542732 (E.D. Cal. Dec. 8, 2006). ..........................................31

Lavan v. City of Los Angeles,
  693 F.3d 1022 (9th Cir. 2012)...............................................22

Lubavitch Chabad House, Inc. v. City of Chicago,
  917 F.2d 341 (7th Cir. 1990) ................................................27

Munaf v. Geren,
  553 U.S. 674 (2008) ..........................................................21

Regents of the Univ. of Cal. v. Am. Broad. Co.,
  747 F.2d 511 (9th Cir. 1984)...................................................................24

S.D. Myers, Inc. v. City & County of San Francisco,
  253 F.3d 461 (9th Cir. 2001)...................................................................29

Southeastern Promotions, Ltd. v. Conrad,
  420 U.S. 546, 553 (1975).........................................................................33

United States v. O'Brien,
  391 U.S. 367 (1968)..................................................................................32

United States v. Salerno,
  481 U.S. 739 (1987) ............................................................................5, 29

Univ. of Haw. Prof'l Assembly v. Cayetano,
  183 F.3d 1096 (9th Cir.1999). ..................................................................25

Ventura County Christian High Sch. v. City of San Buenaventura,
  233 F. Supp. 2d 1241 (C.D. Cal. 2002)...................................................25

Ward v. Rock Against Racism,
  491 U.S. 781 (1989) .................................................................................34

Washington State Grange v. Washington State Republican Party,
  552 U.S. 442 (2008) ...................................................................................5

Winter v. Natural Resources Defense Council, Inc.,
  555 U.S. 7 (2008) .....................................................................................21

## Statutes

Haw. Rev. Stat. § 52D-14 .........................................................................14

Ordinance 11-29 (2012), codified in
  Revised Ordinances of Honolulu § 29-19.1, et seq. (1990).............passim

## Other Authorities

Richard A. Greer, <u>Kulaokahu`a and Thomas Square:
From Boom to Bust to Now</u>, 26 The Hawaiian Journal
of History 133 (1992) ...............................................................................3

## Treatises

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
<u>Federal Practice and Procedure</u> § 2947 (2nd ed. 1995)...........................22

DEFENDANTS CITY AND COUNTY OF HONOLULU
WESTLEY CHUN, AND TRISH MORIKAWA'S
MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
"SUPERSEDING" MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

Defendants CITY AND COUNTY OF HONOLULU ( "City"),

WESTLEY CHUN ("Chun"), and TRISH MORIKAWA ("Morikawa")

(collectively "City Defendants")[1], by their attorneys, the Department of the

Corporation Counsel, Diane T. Kawauchi, Acting Corporation Counsel, and

Ernest H. Nomura, Dawn D.M. Spurlin, and Laura Yoshida, Deputies

Corporation Counsel, oppose Plaintiffs DE-OCCUPY HONOLULU;

---

[1]  Mr. Westley Chun was recently served with the Complaint and
Summons.  The only individually-named defendant who has not been
served to date is Mr. Lawrence Santos.  Assuming that Mr. Santos is timely
served, as a former officer with the Honolulu Police Department he must
seek approval from the Honolulu Police Commission to be represented by
the Department of the Corporation Counsel.  The Police Commission
considers these "course and scope" requests for legal representation at its
regularly scheduled meetings, which are held once a month.  The City
Defendants raise this point to let the Court and Plaintiffs' counsel know that
even after Mr. Santos is served, he may not make an appearance in the
case until such time that the Police Commission approves (or not) his
request for legal representation.  Counsel for Plaintiffs has assured counsel
for the City Defendants that Plaintiffs will not seek entry of default against
Mr. Santos given the procedural steps that he must undertake in order to
be represented by the Department of the Corporation Counsel.

CATHERINE RUSSELL; CHRISTOPHER SMITH; ANDREW SMITH[2]; and

MADORI RUMPUNGWORN's ("Plaintiffs") "Superseding" Motion for

Preliminary Injunction ("Superseding Motion"), filed on February 8, 2013.[3]

_____

[2]  It is counsel's understanding that Plaintiff Andrew Smith will be voluntarily dismissed from this lawsuit with prejudice pursuant to Fed. R. Civ. P. 41(a)(1).

[3]  The City Defendants are puzzled by the "Superseding Motion for Preliminary Injunction."  Counsel for the City Defendants understood that at the recently held status conference, the Court wanted Plaintiffs' counsel to file a "new" motion for preliminary injunction that clarifies precisely the relief his clients seek.  What has been presented to the Court and to the City Defendants by way of this "superseding motion," however, is the same Motion for Preliminary Injunction ("specifically incorporated as if restated verbatim herein"), in addition to a "facial challenge" of the subject "stored property" ordinance, and the Court's review of Mr. Dominic James's claim that the City Defendants damaged his gold tent at the December 20, 2012 enforcement, which the Court previously and soundly rejected in denying Plaintiffs' Motion for Reconsideration.  See Order Denying Plaintiffs' Motion to Alter, and or Reconsider Order Granting in Part and Denying in Part Plaintiffs' Motion for Sanctions, Enforcement of Agreement, and/or Temporary Restraining Order, entered on January 30, 2013 ("Reconsideration Order").

The City Defendants ask that the Court seriously consider sanctioning Plaintiffs' counsel for ignoring the Court's specific instruction to file a clearer, more coherent motion, instead of rehashing the same confusing mess.  Obviously, Plaintiffs and their attorneys would rather waste the Court's and the City Defendants' time and money than distill their slipshod arguments into a motion that makes sense.

At the very least, the Court should consider striking the "Superseding Motion," as Plaintiffs have far exceeded the page and limitations set forth in LR 7.5(a) and (b).

The Superseding Motion and the original Motion for Preliminary Injunction, filed on December 12, 2012, must be denied.

This case is not about the homeless.  This case is about a mixed bag of self-absorbed social protesters – recent Mainland transplants – who have seen fit to pitch their tents, invoke King Kamehameha's law, and drag bulky item pickup junk furniture and other personal property on the sidewalk fronting one of Honolulu's most historic and culturally significant public parks, which was established to commemorate the restoration of the Hawaiian monarchy in July 1843, 170 years ago.[4]  They have littered and abused public property, overstayed their self-proclaimed "constitutionally

---

[4]  Thomas Square was named after Rear Admiral Richard Thomas of the British navy who is credited for the restoration of the Hawaiian monarchy. On February 13, 1843, the Englishman, Lord George Paulet, entered Honolulu Harbor and demanded that King Kamehameha III cede the Hawaiian kingdom to the British Crown, which he did.  On July 31, 1843, Admiral Thomas apologized to the King for Paulet's actions and restored Hawaiian sovereignty after five months of illegal seizure and occupation by Paulet and his supporter.  Thomas Square marks the area where Admiral Thomas lowered the British flag and raised the Hawaiian flag and restored the Hawaiian monarchy in 1843.  See Richard A. Greer, Kulaokahu`a and Thomas Square: From Boom to Bust to Now, 26 The Hawaiian Journal of History 133, 141 (1992).

It is shameful that the location of the subject matter of this lawsuit is the very site that the Hawaiian monarchy selected to commemorate Restoration Day (July 31st).  This special place for all residents of the City and County of Honolulu has been "seized" and "occupied" by a few "foreign" social protesters who have seen fit to disrespect and desecrate the historically and culturally significant public space.

3

protected" welcome, and now they presumptuously seek this Court's aid to obtain injunctive relief against the City Defendants.  The Court must reject this transparent attempt.

Plaintiffs will not succeed on the merits.  As set forth in the City Defendants' Motion to Dismiss filed on February 8, 2013, the Court should dismiss all of the claims set forth in the Complaint for failure to state claims upon which relief can be granted.

As detailed in the Motion to Dismiss, none of Plaintiffs' claims have factual or legal merit.  In addition, Plaintiffs' claims against the individual defendants in their personal and official capacities must be dismissed. Plaintiffs' claim for punitive damages, too, must be dismissed.  Moreover, Plaintiff De-Occupy Honolulu ("DOHON") lacks "individual" and "associational" standing to assert the claims against the City Defendants. Based on the arguments set forth in the City Defendants' Motion to Dismiss and as set forth herein, Plaintiffs will not succeed on the merits.  Injunctive relief should not be granted.

Further, Plaintiffs' facial challenge to the "stored property" ordinance, Ordinance 11-29 (2012), codified in <u>Revised Ordinances of Honolulu</u> (1990), ("ROH") § 29-19.1, <u>et seq.</u> ("SPO"), is without merit.  The Ninth Circuit Court of Appeals has consistently observed as follows:

4

A facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987); see Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449 (2008) ("i.e., that the law is unconstitutional in all of its applications"). That the ordinance might operate unconstitutionally under some circumstances is not enough to render it invalid against a facial challenge.

Plaintiffs fail to satisfy this high standard. As a result, their facial challenge to the ordinance must be rejected as a matter of law.

Finally, Plaintiffs' attempt to resurrect Dominic James's claim that his tent was "destroyed" in the recent enforcement action that took place on December 20, 2012, is, frankly, sanctionable. The Court made it crystal clear that Mr. James's "challenge to the destruction" of his tent was too late. See Reconsideration Order at 4.

As to the three remaining elements to justify injunctive relief, Plaintiffs have utterly failed to demonstrate at all how they will suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. The Superseding Motion and the original Motion must, accordingly, be soundly rejected.

## FACTS UNDERLYING THIS MOTION

### A. The Stored Property Ordinance's Legislative History

In response to the proliferation of residents in the City and County of Honolulu who use public property, including sidewalks, as a place to store personal property, on September 28, 2011, former City Councilmember Tulsi Gabbard introduced Bill 54 (2011), which sought to establish a procedure for the removal and storage of personal property located on public property. See Exhibit 1. The legislative intent of Bill 54 is as follows:

> Public property should be accessible and available to residents and the public at large for its intended uses. The unauthorized use of public property for the storage of personal property interferes with the rights of other members of the public to use public property for its intended purposes and can create a public health and safety hazard that adversely affects residential and commercial areas. The purpose of this article is to maintain public areas in clean, sanitary, and accessible condition, to prevent harm to the health or safety of the public, to prevent the misappropriation of public property for personal use, and to promote the public health, safety and general welfare by ensuring that public property remains readily accessible for its intended uses.

Id. at 1-2.

At its October 5, 2011 meeting, the City Council considered Bill 54. See Exhibit 2 (Journal, Reg. Meeting, City Council, Oct. 5, 2011, at 5-8), at 5-8. The administration of former Mayor Peter B. Carlisle supported Bill 54

6

and indicated that the proposed ordinance was not intended to and did not

"target the homeless but is intended to ensure that public property remains

accessible for use by the public." Id. at 6.  Bill 54 passed first reading by

the City Council and was referred to the Committee on Safety, Economic

Development and Governmental Affairs ("SEDGA") for public hearing.

The SEDGA Committee held public hearing on Bill 54 on October 11,

2011.  See Exhibit 3 (Minutes, Comm. on Safety, Econ. Dev. & Gov't

Affairs, Oct. 11, 2011, at 3-6).  At the hearing, the late Professor John Van

Dyke of the University of Hawaii, Richardson School of Law, testified as the

City's consultant that the proposed ordinance "does not impose criminal

penalties nor require enforcement by the Honolulu Police Department" and

that Bill 54 "establishes a uniform administrative process for the

impoundment, storage and disposal of personal property after proper

notice." Exhibit 4 (Comm. Rept. No. 325, Comm. on Safety, Econ. Dev. &

Gov't Affairs, Oct. 11, 2011, at 2).  In addition, Professor Van Dyke testified

that the proposed legislation "meets the requirements of due process

because the Bill provides a person with multiple notices and a reasonable

time period in which a person may retrieve their personal property prior to

disposal by the City." Id.

Professor Van Dyke noted that Bill 54 "does not violate the provisions of the U.S. Constitution nor implicate the issues raised in <u>Jones v. City of Los Angeles</u>, 444 F.3d 1118 (9th Cir. 2006), <u>vacated pursuant to settlement</u>, 505 F.3d 1006 (9th Cir. 2007), which involved the imposition of criminal penalties upon persons storing personal property on public property and the destruction of their personal property without due process." <u>Id.</u>  The SEDGA Committee passed Bill 54 for second reading.  <u>Id.</u>

On November 2, 2011, the City Council considered Bill 54 on second reading.  Exhibit 5 (<u>Journal</u>, Reg. Meeting, City Council, Nov. 2, 2011, at 42-44).  After considering testimony and statements by members of the public, administration, and council members, the Council voted 8-1 to pass Bill 54 for second reading and adopted the Committee Report No. 325.  <u>Id.</u>

Bill 54 came before the SEDGA Committee on November 15 and 17, 2011.  Exhibit 6 (<u>Minutes</u>, Comm. on Safety, Econ. Dev. & Gov't Affairs, Nov. 15 and 17, 2011, at 9-11).  Again, the City administration reiterated its support of the legislation.  After receiving testimony from the public and committee members, Councilmember Gabbard recommended to report Bill 54 to the Council for passage.  <u>See</u> Exhibit 7 (<u>Comm. Rept. No. 344</u>, Comm. on Safety, Econ. Dev. & Gov't Affairs, Nov. 15, 2011, at 2).

On December 7, 2011, the City Council considered Bill 54 for third reading and passage.  See Exhibit 8 (Journal, Reg. Meeting, City Council, Dec. 7, 2011, at 5-18).  During the Council's final hearing on Bill 54, the Council heard testimony from Mr. Marc Alexander, State Coordinator on Homelessness, in support of the legislation.  Id. at 6.  Mr. Alexander testified that Bill 54 was not "aimed directly at the homeless.  The measure is aimed at any kind of private property that is left on public property by individuals, vendors and other property owners."  Id.  Mr. Alexander also testified that the legislation should be viewed as a vehicle by which outreach programs to the homeless could be enhanced so that those who are homeless could "avail themselves of services and seek shelter in the 200 spaces available on average every day in a given month."  Id.

The Council also heard testimony from the American Civil Liberties Union of Hawaii's representative who admitted and acknowledged that Bill 54 did not have any criminal penalties.  Id. at 9.

All but one councilmember spoke in support of Bill 54.  The Journal of the December 7th Council meeting summarized the cogent and relevant statements of Councilmember Chang who supported passage of the legislation as follows:

> He stated that no one individual or business should
> be able to store their items on public property.  He

> expressed his belief that it was ironic that those who
> have the best interests at the heart for the homeless
> seem to be arguing that sidewalks are good places
> for people to live.  He stated that any advocate for
> community services should be advocating for
> dignified places for individuals to live.  He noted that
> Bill 54 was not a solution to homeless but was a
> solution to the obstruction of public right-of-way,
> sidewalks and parks.  He stated that the true
> solutions to homeless are completely different. . . .

Id. at 16.

The Council adopted the SEDGA Committee Report No. 344, and Bill 54 passed third reading by an 8-1 vote.  Former Mayor Carlisle approved Bill 54 on December 9, 2011.  Bill 54, Ordinance 11-29 (2011), codified as Revised Ordinance of Honolulu (1990) ("ROH"), §§ 29-19.1, et seq., took effect on December 9, 2011.  Exhibit 9.

## B. **SPO Enforcement**

Upon enactment of the SPO, the City's Department of Facility Maintenance ("DFM"), together with the Department of Parks and Recreation ("DPR"), and the Mayor's Office of Housing, were designated as the agencies responsible for the implementation of the ordinance's "tag," "impound" and "store" enforcement actions.

As the Court is now well aware, enforcement actions under the SPO commence with the "tagging" of personal property that is located on public

property, including sidewalks.  DFM and DPR personnel visit locations[5]

where residents' complaints have been lodged regarding personal property

located on public property.  Morikawa Decl. at ¶ 4.  DFM and DPR

personnel fill out the "Removal Notice" and affix the "tag" on the item and

take photographs of the "tagged" item and the general area around the

item.  Morikawa Decl. at ¶ 4.

The "Removal Notice" tells the owner of the "tagged" items that

his/her personal property will be "impounded if not removed within 24

hours.  Items cannot be relocated to another public property."  See Exhibit

10.  The "tag" also advises the owner that if the personal property is

impounded, it would be stored at the "Division of Road Maintenance."  The

division's telephone number is provided.  Id.  See also Morikawa Decl. at ¶

5.  Finally, the "tag" informs the owner that "impounded property will be

---

[5]  As part of its mission, the Mayor's Office of Housing, by the County
Housing Coordinator, works with social services organizations such as the
Waikiki Health Center ("WHC") and the Institute for Human Services ("IHS")
to assist individuals who may be impacted by the SPO enforcement
actions.  Social service providers visit the "homeless encampments" before
and/or during SPO enforcement actions take place so that individuals may
utilize the services and assistance of these organizations that provide
temporary, emergency shelter or transitional housing, as well as medical
and psychological care.  By undertaking these types of proactive outreach
services, the City and social services organizations coordinate to address
and attempt to alleviate one of the pressing issues facing municipalities
throughout the United States in a humane and meaningful way.  See
Declaration of Trish Morikawa ("Morikawa Decl.") at ¶ 2.

sold, donated, or otherwise disposed of if not claimed within 30 days after impoundment."  Id.  See also Morikawa Decl. at ¶ 5.

At least twenty-four (24) hours later, DFM and DPR personnel return to the locations and if the "tagged" items are still on the public property, City personnel fill out "Storage and Removal Notice" and videotape placement and storage of the items.  See Exhibit 11.  See also Morikawa Decl. at ¶ 6. The items are then placed in green storage bins.  The "Storage and Removal Notices" give a general description of the items being stored, indicate the "bin number" in which the item is placed, and provide the telephone number of DFM's Halawa Corp Yard to contact in order to repossess the stored items.  Id.

The "Storage and Removal Notices" tell the owner of the personal property that his/her property was impounded at a time certain and date certain at a specific location (i.e., Thomas Square).  It informs the owner that the item will be stored at the City's Division of Road Maintenance and a telephone number is provided.  Morikawa Decl. at ¶ 7

Again, the second notice tells the owner that the "impounded property will be sold, donated, or otherwise disposed of if not claimed within 30 days after the date of this notice."  Id. at ¶ 8.  The notice cross-references the "Removal Notice" tag number and is then posted at the site where the

personal property was removed.  Thus, for example, if the personal property was removed from the Thomas Square location, the second "Storage and Removal Notice" would be posted on the nearest street light pole where the property was removed.  Id.

Generally, SPO enforcement actions take place every two to three weeks.  See Morikawa Decl. at ¶ 9.  Locations where SPO enforcement takes place include Aala Park, Smith Street, North Kukui Street, River Street, Kuwili Street, Thomas Square, Pawaa Street, the Ala Wai Promenade, Moiliili Park, and Old Stadium Park.  Id.

Based on resident/constituent complaints about stored personal property on public property, DFM, DPR and the Office of Housing coordinate SPO enforcement at the specified locations.  The former County Housing Coordinator, Ms. Trish Morikawa, was the City's designated point person who fielded the complaints, coordinated with the WHC and IHS, and interfaced with the various city agencies, including the Honolulu Police Department ("HPD"), to schedule and conduct SPO enforcement actions.[6] Morikawa Decl. at ¶ 10.

---

[6]  HPD's involvement in SPO enforcement actions is nominal.  It is present at SPO enforcement actions to ensure public safety, keep the peace, and ensure that the public, owners of personal property and City employees are not confronting each other.  HPD officers do not "tag," "impound," or "store" any personal property under the SPO.  Officers may videotape the

**February 15, 2012**:  The enforcement action that took place on this date involved "tagged" items that were stored on the sidewalk of Thomas Square, along South Beretania Street, between Ward Avenue and Victoria Street.  On February 14, 2012, City personnel "tagged" several personal properties that were located on the sidewalk.  See Exhibit 12-A.  The next day, February 15, 2012, City personnel impounded and stored the tagged personal property that had not been removed from the day before.  See Exhibit 12-B.

During of course of SPO enforcement at Thomas Square, City personnel, including Ms. Morikawa, were informed that personal property that was part of the DOHON "encampment" and was "tagged" the day before, had been moved a block away on Ward Avenue, between South Beretania and Kinau Street, to a location fronting a private office building. After speaking with the owner of the property who did not want the personal property placed in front of her office building, City personnel inventoried the items and impounded the personal property under the state's "found property" statute, Haw. Rev. Stat. § 52D-14.[7]  See Morikawa Decl. at ¶ 12.

---

enforcement actions, and will take all necessary and appropriate measures within their authority if individuals interfere with governmental operations. See Declaration of Lawrence Santos ("Santos Decl.") at ¶ 2.

[7]  Haw. Rev. Stat. § 52D-14 provides in relevant part as follows:

14

Items that were deemed unsafe for storage or flammable were discarded.

All other items were stored under Haw. Rev. Stat. § 52D-14, not the SPO.

Id. at ¶ 12.

**March 29, 2012**:  The enforcement action that took place on this date

again involved "tagged" items that were stored on the sidewalk of Thomas

Square, along South Beretania Street, between Ward Avenue and Victoria

Street.  On March 28, 2012, City personnel "tagged" several personal

properties that were located on the sidewalk.  See Exhibit 13-A.  The next

day, March 29, 2012, City personnel impounded and stored the tagged

personal property that had not been removed from the day before.  See

Exhibit 13-B.

During the March 29th enforcement, City personnel saw a tent that

appeared to be thrown into one of the trees in the area.  It was perched

high enough so that it had to be pulled down by the strings that were

dangling down.  City personnel in good faith reasonably believed that the

tent, which had been tossed into the tree branches, clearly was not being

---

[A]ll money or property found shall be reported or
delivered by the finder to the chief of police of the county.
When so delivered, it shall be held by the chief of police
for forty-five days or until claimed by some person who
establishes title or right of custody thereto . . . .

used for its intended purpose and posed a hazard of falling on pedestrians. Ms. Morikawa believes that it was disposed of under the circumstances. Morikawa Decl. at ¶ 14.

**June 28, 2012**:  Enforcement of the SPO took place over the course of four (4) days – June 25, 26, 27, and 28, 2012.  Again, stored personal property on public property was "tagged" and Notices of Removal were affixed to the items.  See Exhibit 14-A.  On June 28, 2012, City personnel impounded and stored the tagged personal property that had not been removed from the days before.  See Exhibit 14-B.  Morikawa Decl. at ¶ 15.

It is not clear based on allegations set forth in the Complaint whether Plaintiffs took steps to repossess their personal property or whether the items still remain in storage, were "not returned," or have been destroyed.

**August 8, 2012**:  Enforcement of the SPO took place over the course of three (3) days – August 6, 7, and 8, 2012.  Again, stored personal property on public property were "tagged" and Notices of Removal were affixed to the items.  See Exhibit 15-A.  On August 8, 2012, City personnel impounded and stored the tagged personal property that had not been removed from the days before.  See Exhibit 15-B.  Morikawa Decl. at ¶ 16.

Again, it is not clear based on allegations set forth in the Complaint whether Plaintiffs took steps to repossess their personal property or

whether the items still remain in storage, were "not returned," or have been destroyed.

**September 6, 2012**:  Enforcement of the SPO took place over the course of four (4) days – September 5, 6, 10, and 11, 2012.  Stored personal property on public property were "tagged" and Notices of Removal were affixed to the items.  See Exhibit 16.  Morikawa Decl. at ¶ 17.

As with the other SPO enforcement dates, it is not clear based on allegations set forth in the Complaint whether Plaintiffs took steps to repossess their personal property or whether the items still remain in storage, were "not returned," or have been destroyed.

**October 9, 2012**:  Enforcement of the SPO took place over the course of three (3) days – October 9, 11, and 12, 2012.  Stored personal property on public property was "tagged" and Notices of Removal were affixed to the items.  See Exhibit 17-A.  Items that remained on the public property for twenty-four (24) hours or more, were impounded and stored. See Exhibit 17-B.  Morikawa Decl. at ¶ 18.

It is not clear based on allegations set forth in the Complaint whether Plaintiffs took steps to repossess their personal property or whether the items still remain in storage, were "not returned," or have been destroyed.

With respect to the "Gabbard" campaign sign on which "Sugar" painted an "X" across the candidate's name, City personnel were informed that the sign belonged to the Gabbard campaign.  When Sugar was informed that these signs were owned by the Gabbard campaign, she disavowed any ownership interest in the sign and said that City personnel could take the sign away.  Morikawa Decl. at ¶ 19.  It was taken away.

**November 21, 2012**:  Enforcement of the SPO took place over the course of two (2) days – November 20 and 21, 2012.  Stored personal property on public property was "tagged" and Notices of Removal were affixed to the items.  See Exhibit 18-A.  Items that remained on the public property for twenty-four (24) hours or more were impounded and stored. See Exhibit 18-B.  Morikawa Decl. at ¶ 20.

It is not clear based on allegations set forth in the Complaint whether Plaintiffs took steps to repossess their personal property or whether the items still remain in storage, were "not returned," or have been destroyed. Indeed, recently Sugar's personal property identified in "Storage and Disposal Notice" "tags" Nos. 818, 819, and 820 have been repossessed. Morikawa Decl. at ¶ 21.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary and drastic remedy [that] is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689–90 (2008) (citation and quotation signals omitted).  In Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), the Supreme Court explained that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

So long as all four parts of the Winter test are applied, "a preliminary injunction [may] issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.' " Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1049 (9th Cir. 2010) (quoting Clear Channel Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003)).  "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Id.

19

Plaintiffs are utterly unable to satisfy any of the <u>Winter</u> prerequisites to justify preliminary injunctive relief.  The Motion and "Superseding" Motion must be denied.

## ARGUMENT

1.   **PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF MUST BE DENIED.**

   A. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF ANY OF THEIR CLAIMS AGAINST THE CITY DEFENDANTS.

The problem with Plaintiffs' theory of liability against the City and their displeasure with the City's enforcement of the SPO is that they believe that <u>Lavan v. City of Los Angeles</u>, 693 F.3d 1022 (9th Cir. 2012), controls.  It does not.  <u>Lavan</u> involves Los Angeles's "bag, tag, and trash" effort to clean up the streets of Los Angeles.  The City of Los Angeles "seized and destroyed" plaintiffs' property that was left unattended for a few minutes.  The Ninth Circuit held that this kind of "seize and destroy" cleanup efforts was tantamount to criminalizing "homelessness" and did not pass constitutional scrutiny.

Here, the City's SPO is not a "bag, tag, and trash" policy.  Instead, it is the City's balanced approach to ensure that public space remains free of clutter that interferes with the public's use of public property.  The SPO also seeks to safeguard personal property owners from dispossession of their

20

property.  The City's ordinance provides multiple "notices" and opportunities for the owner to remove his/her property from public property. Further, the ordinance requires "storage" of impounded property.  It does not authorize summary dispossession and destruction of personal property. Thus, reliance on <u>Lavan</u> is entirely misplaced.

With respect to the fourteen (14) claims asserted against the City Defendants, the utter lack of merit of all of these claim are briefed in detail in the City Defendants' Motion to Dismiss filed on February 8, 2013.  The City Defendants respectfully incorporate the arguments made in the Motion to Dismiss and ask that the Court conclude that Plaintiffs are unlikely to prevail on the merits.

### B. PLAINTIFFS DO NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF.

The law is clear:  a plaintiff seeking preliminary injunctive relief must demonstrate that irreparable injury is likely in the absence of an injunction. <u>Winter</u>, 555 U.S. at 22.  A party is not entitled to the extraordinary equitable relief unless it can demonstrate that it will sustain more than damages of a pecuniary nature.  <u>Regents of the Univ. of Cal. v. Am. Broad. Co.</u>, 747 F.2d 511, 519 (9th Cir. 1984).  Further, "irreparable injury" is an injury "that is not remote or speculative, but actual and imminent and for which monetary damages cannot adequately compensate.  <u>Jayaraj v. Scappini</u>, 66 F.3d 36,

39 (2nd Cir. 1995); <u>Carribean Marine Servs. Co. v. Baldridge</u>, 844 F.2d 668

(9th Cir. 1988).  Moreover, if the harm complained of is self-inflicted, it does

not qualify as irreparable.  11A Charles Alan Wright, Arthur R. Miller & Mary

Kay Kane, <u>Federal Practice and Procedure</u> § 2947 (2nd ed. 1995); <u>Ventura</u>

<u>County Christian High Sch. v. City of San Buenaventura</u>, 233 F. Supp. 2d

1241, 1253 (C.D. Cal. 2002).

Plaintiffs have not articulated at all how they will suffer irreparable

harm if the City Defendants are not enjoined.  In enforcing the SPO, the

City provides all personal property owners who store their property on

public property with notice to remove their possessions.  The City provides

all such owners with additional notice that their property will be stored at

the City's Halawa Corp Yard and that they have plenty of time repossess

their property.  Any irreparable harm in having their property disposed

under the SPO at that point is a function of their own doing.  They have not

suffered irreparable harm.

### C. THE BALANCE OF EQUITIES DECIDEDLY TIP IN FAVOR OF THE CITY DEFENDANTS, NOT PLAINTIFFS.

"To determine which way the balance of the hardships tips, a court

must identify the possible harm caused by the preliminary injunction

against the possibility of the harm caused by not issuing it."  <u>Univ. of Haw.</u>

<u>Prof'l Assembly v. Cayetano</u>, 183 F.3d 1096, 1108 (9th Cir.1999).

Plaintiffs' sole argument in support of this test is predicated on their mistaken and misplaced reliance on <u>Lavan</u>.  The City Defendants, in enforcing the SPO, do not and have not summarily destroyed or destructed "stored" personal property in violation of their constitutional rights.  The objective of the SPO is to ensure that public property is accessible and usable by all residents of Honolulu, not by just the few who believe that this public space ought to be reserved and used for the "homeless" or those who have generalized complaints against "Wall Street."

Stored personal property is maintained at the City's Halawa Corp Yard and there is a timely and reasonable process for the repossession of the property by its owner.  The balance of equities do not tip in favor of Plaintiffs.  On the other hand, Plaintiffs would have the Court enjoin the City from removing stored property on public property so that Plaintiffs can live for an indefinite period of time on the Thomas Square sidewalk.  Such an injunction adversely impacts all residents of the City and County of Honolulu.  Certainly, the balance of equities tips decidedly in favor of the City and not Plaintiffs.

### D. INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK IS NOT IN THE PUBLIC INTEREST.

Plaintiffs bear the burden of showing that the injunction is in the public interest.  <u>See</u> <u>Winter</u>, 555 U.S. at 20.  The trial court need not

consider public consequences that are "highly speculative."  In other words, the Court should weigh the public interest in light of the likely consequences of the injunction.  Such consequences must not be too remote, insubstantial, or speculative and must be supported by evidence.

Here, Plaintiffs suggest that the granting of injunctive relief is in the public interest by maintaining the "status quo" so as to allow them to live on the sidewalk and continue to store their personal property on the public space.  This is absurd.  The public interest is not in Plaintiffs' favor.  The City has every right to remove stored personal property on its sidewalks to ensure access of the city sidewalks for all residents.  Plaintiffs would have the Court grant them a constitutional right to erect their tents on the sidewalk for an indefinite period of time.

Courts in other jurisdictions have consistently held that there is no "private constitutional right to erect a structure on public property.  See Lubavitch Chabad House, Inc. v. City of Chicago, 917 F.2d 341 (7th Cir. 1990).  There is no public interest that supports Plaintiffs' request for equitable injunctive relief.

Based on the foregoing, the Court must deny Plaintiffs' Motion for Preliminary Injunction and their "Superseding" Motion.  They are not entitled to the extraordinary equitable relief.

## 2.   PLAINTIFFS' FACIAL CHALLENGE TO THE SPO MUST BE REJECTED.

The United States Supreme Court has ruled that "[a] facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).  The Ninth Circuit "recently reaffirmed the vitality of the Salerno standard outside of First Amendment cases." Kim v. Ziglar, 276 F.3d 523, 527 (9th Cir. 2002) (citing S.D. Myers, Inc. v. City & County of San Francisco, 253 F.3d 461, 467 (9th Cir. 2001) (holding that the Salerno standard "is the correct standard in every context, with the exception of certain First Amendment cases ... [and] in the context of facial challenges to abortion statutes")), cert. granted on other grounds sub nom., Demore v. Kim, 536 U.S. 956 (2002).

Here, Plaintiffs challenge the facial unconstitutionality of the SPO on three (3) bases (a) procedural due process; (b) overbroad; and (c) prior restraint.  Each has no merit.

### A.   Procedural Due Process

Plaintiffs complain that the SPO has no pre- or post-deprivation hearing and the absence of such a hearing is facially fatal, this violates the protections of "procedural due process."  Of course, they rely on Lavan.

The problem with this facial challenge is that the SPO does not deprive them of any property whatsoever.  The City gives all owners of stored personal property placed on public property written notice that their property is subject to impoundment and storage if it is not removed within 24 hours of written notice.  If the owner sees fit to keep his/her property on public property for 24 hours after issuance of the "Removal Notice," the City then gives the owner with written notice that the property will be stored.  The City's "Storage and Disposal Notice" tells the owner what has been impounded, where it is stored, what number to contact and there is a process in place as to how to repossess his/her property.

The SPO is far from the draconian measures under the Los Angeles "bag, tag, and destroy" policy that sought to rid the streets of Los Angeles of "abandoned" and "unattended" property.  Here, there are procedurally due processes by which owners of stored personal property can protect his/her property from being impounded.  There are notices issued to the owner regarding the disposition of his property.  Indeed, on the face of the SPO, there notice is issued to the owner that informs him/her that he/she has thirty days before the property is disposed, by sale or otherwise.  ROH § 29-19.5(b).

Precisely what a pre- or post-deprivation hearing would accomplish or try to establish in order to protect the property rights of any person who stores property on public property is puzzling.  This is not a case involving the summary **seizure and destruction** of personal property involved in Lavan or Kincaid v. City of Fresno, 2006 WL 3542732 (E.D. Cal. Dec. 8, 2006).  Here, Plaintiffs or anyone subject to the SPO are provided with adequate notice and ample opportunity to repossess their personal property.  Arguing that procedural due process rights are violated on the face of the SPO is disingenuous.

## B. **Overbroad**

The United States Supreme Court has held that when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitation on First Amendment freedoms. United States v. O'Brien, 391 U.S. 367, 376 (1968).

A governmental regulation is sufficiently justified if it is within the constitutional powers of government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on

alleged First Amendment freedom is no greater than essential to the furtherance of that interest.  Id. at 377.

The SPO is content neutral and does not purport to regulate speech or speech-related conduct.  It deals with personal property stored on public property.  The ordinance does not require a permit or curtail the time, place, and manner of speech.  The SPO is narrowly tailored and serves a significant governmental interest (preservation of public property for its intended use) and it leaves open ample alternatives for communication. Forsyth County v. Nationalist Movement, 505 U.S. 123, 130 (1992).

The City Defendants are puzzled as to how the SPO is unconstitutionally "overbroad" under First Amendment jurisprudence. Plaintiffs have cited to no case that supports their proposition that leaving their personal possessions on public property is a constitutionally protected right.  See Lubavitch Chabad House, 917 F.2d 341.  Plaintiffs have not demonstrated at all how the SPO infringes on constitutionally protected conduct at all.  Their overbreadth challenge must fail.

## C. **Prior Restraint**

Plaintiffs' finally claim that the SPO is a "prior restraint" to their ability to exercise their First Amendment right.  In order to constitute an unconstitutional "prior restraint," Plaintiffs must demonstrate that the SPO

28

forbids Plaintiffs the use of public places to express their protected speech and give public officials the power to deny the use of a forum in advance of actual expression.  Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 553 (1975).

The SPO does not restrain any speech.  It restricts how long personal property may remain on public property before it is stored – no more than 24 hours.  The SPO does not purport to regulate or forbid "vigils" or "free speech activities" at all.

If anything, the SPO is a "reasonable time, place or manner restriction," as it is a facially-neutral ordinance that makes no reference whatsoever to the content of regulated speech.  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).  Plaintiffs may exercise their speech any time, any place, or any manner.  The SPO does not infringe on protected speech.  It simply requires owners of personal property stored on public property to remove the items within 24 hours after receiving the "Removal Notice."  This does not amount to a "prior restraint" by any stretch of First Amendment law.

## 3.   THE DOMINIC JAMES "AS APPLIED" CHALLENGE MUST BE DENIED.

Plaintiffs finally ask the Court to issue an injunction against the City Defendants because a single gold tent that was stored in December 2012

allegedly had a few rips in it when its owner, Dominic James, repossessed it in January 2013.  They use this as an example of an "as applied" challenge to the SPO.  The Court has already rejected this claim as untimely and wholly without merit.

## CONCLUSION

The Court must reject Plaintiffs' Superseding Motion and original Motion for Preliminary Injunction.  Nothing in these motions warrants extraordinary equitable relief.  This Court should so conclude.

DATED:  Honolulu, Hawaii, February 22, 2013.

DIANE T. KAWAUCHI
Acting Corporation Counsel

*/s/ Ernest H. Nomura*

ERNEST H. NOMURA
DAWN D.M. SPURLIN
LAURA YOSHIDA
Deputies Corporation Counsel

Attorneys for Defendant
CITY AND COUNTY OF HONOLULU,
WESTLEY CHUN, and TRISH
MORIKAWA