RICHARD L HOLCOMB (HI Bar No. 9177)
BRIAN J BRAZIER (HI Bar No. 9343) (Of Counsel)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI  96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@gmail.com
Email: brianbrazier@gmail.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| De-Occupy Honolulu;<br>Catherine Russell;<br>Christopher Smith;<br>Andrew Smith;<br>Madori Rumpungworn;<br>Dominic James; and<br>John Does 1-50,<br><br>           Plaintiffs,<br>  vs.<br><br>City and County of Honolulu;<br>Westley Chun, in his personal and<br>official capacity;<br>Trish Morikawa, in her personal and<br>official capacity;<br>Larry Santos, in his personal and official<br>capacity;<br>Ken Shimizu, in his personal and<br>official capacity; and<br>John Does 1-50 in their personal and<br>official capacities.<br><br>           Defendants. | CASE NO. 1:12-cv-668  JMS KSC<br><br>SECOND AMENDED COMPLAINT<br>FOR DEPRIVATION OF CIVIL<br>RIGHTS, DAMAGES,<br>DECLARATORY AND INJUNCTIVE<br>RELIEF<br><br>JURY TRIAL REQUESTED |

## SECOND AMENDED COMPLAINT

COME NOW the Plaintiffs, DE-OCCUPY HONOLULU, CATHERINE RUSSELL, CHRISTOPHER SMITH, ANDREW SMITH, MADORI RUMPUNGWORN, DOMINIC JAMES and JOHN DOES 1-50, by and through their undersigned counsel, and complain against Defendants CITY AND COUNTY OF HONOLULU, WESTLEY CHUN, TRISH MORIKAWA, LARRY SANTOS, KEN SHIMIZU, and JOHN DOEs 1-50 as follows:

### INTRODUCTION

1.     This is an action to vindicate Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and the Constitution and laws of the State of Hawaii.  Plaintiffs were and continue to be deprived of their federal and state constitutional rights, as well as rights rooted in the statutes and common law of the State of Hawaii.  Plaintiffs seek declaratory judgment, injunctive relief, and damages.

2.     Plaintiffs have been victimized by a continuing assault on Plaintiffs' and other members of De-Occupy Honolulu's property, due process rights, and First Amendment Rights when, on numerous occasions, police officers, including Defendant Santos, employees of the Honolulu Department of Parks and Recreation, employees of the Honolulu Department of Facility Maintenance including its Director, Defendant Chun and acting Supervisor Ken Shimizu, as well

as employees of the Honolulu Office of Housing, including Defendant Morikawa who serves as County Housing Coordinator, conducted raids upon the encampment of De-Occupy Honolulu.

3.     During those raids, numerous items of Plaintiffs' personal property have been seized, stolen by Defendants, and/or destroyed while the city officials were on the scene or seized and stored in such a manner that caused the destruction of Plaintiffs' property.  These items include both personal property and various media upon which Plaintiffs expressed protected speech.  Further, during many of these raids, Plaintiffs have been physically seized and/or restrained to areas outside of their encampment.

4.     Defendants have attempted to justify these raids and the resulting deprivation or destruction of property by relying on Chapter 29, Articles 18 and 19 of the Revised Ordinances of Honolulu.  These ordinances are unconstitutional on their face and/or as applied to Plaintiffs.  And, even if the ordinances could survive constitutional scrutiny, the Defendants routinely disregard inconvenient provisions of those ordinances, seizing and destroying property to which the ordinances do not apply.

5.     No notice of a hearing or opportunity to be heard has ever been provided to Plaintiffs, before or after the seizure and/or destruction of their property.  Often, no notice that the property would even be seized has been provided.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343, 2201, and 2202.  This Court has jurisdiction over the supplemental claims arising under Hawaii State law pursuant to 28 U.S.C. § 1367.

7.     This Court has personal jurisdiction over Defendant City and County of Honolulu as it is a government entity, more specifically a municipal corporation incorporated under the laws of the State of Hawaiʻi, located in Hawaiʻi.

8.     This Court also has personal jurisdiction over each of the Defendants because they, inter alia, acted under the color of laws, policies, customs, and/or practices of the City and County of Honolulu and/or within the geographic confines of the State of Hawaiʻi.

9.     Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

10.     Plaintiff De-Occupy Honolulu is an unincorporated association comprised of a wide range of people from widely varying economic, social, and ethnic backgrounds.   Its purpose is to condemn, protest and advocate against social injustices, including legal, governmental and social policies victimizing the homeless population of Honolulu and throughout Hawaii. Much like other "Occupy Wall Street" affiliated groups which have and continue to maintain a presence in most major American cities, its members attempt to further these

purposes by maintaining a constant public vigil, conducting organized demonstrations, and erecting signs expressing their political views to be viewed by the public.   It brings this action by and through Plaintiffs Catherine Russell, Christopher Smith, Andrew Smith, Madori Rumpungworn, and Dominic James as its authorized representatives.   All of the Plaintiffs in this suit are associated with Plaintiff De-Occupy and have participated in numerous demonstrations, including residing in the De-Occupy encampment.   De-Occupy also maintains communal property to be used by all of its member for creating works of art to present their messages of protest and to provide for the general welfare of its members.   As set forth below, the Defendants' unconstitutional actions occurred over the course of at least one year.   And, Defendants continue to act in a similar manner, causing its members to suffer immediate or threatened injury.   Further, as discussed below, some of the property actually seized and destroyed was communal property belonging to the organization as a whole, damaging not only the members of De-Occupy, but also the organization itself.

11.   Plaintiff  Catherine Russell is a natural person and a citizen of the United States, who at all material times herein did reside in Honolulu, Hawai'i.  She is an active member of the De-Occupy movement and has owned and created numerous signs used in De-Occupy demonstrations.  Ms. Russell is homeless and has lived in

the De-Occupy encampment for six months.  Ms. Russell continues to reside in Honolulu, Hawai'i.

12.    Plaintiff  Christopher Smith is a natural person and a citizen of the United States, who at all material times herein did reside in Honolulu, Hawai'i.  He is an active member of the De-Occupy movement.  Christopher Smith is homeless and has lived in the De-Occupy encampment for twelve months.  Christopher Smith continues to reside in Honolulu, Hawai'i.

13.    Plaintiff  Andrew Smith is a natural person and a citizen of the United States, who at all material times herein did reside in Honolulu, Hawai'i.  He is an active member of the De-Occupy movement.  Andrew Smith is homeless and lived in the De-Occupy encampment for seven months.   Andrew Smith resided in Honolulu, Hawai'i at all relevant times.

14.    Plaintiff  Madori Rumpungworn is a natural person and a citizen of the United States, who at all material times herein did reside in Honolulu, Hawai'i.  She is an active member of the De-Occupy movement.  Ms. Rumpungworn was homeless and lived in the De-Occupy encampment for eight months.   Ms. Rumpungworn continues to reside within the jurisdiction of the City and County of Honolulu, Hawai'i.

15.    Plaintiff  Dominic James is a natural person and a citizen of the United States, who at all material times herein did reside in Honolulu, Hawai'i.  He is an

active member of the De-Occupy movement.  Mr. James was homeless and lived in the De-Occupy encampment for several months.  Mr. James continues to reside within the jurisdiction of the City and County of Honolulu, Hawaiʻi.

16.    Plaintiffs John Doe 1-50 are members of the De-Occupy Movement who are either unidentified or currently do not wish and/or have not yet been invited to participate in this lawsuit.  John Doe 1-50 are natural persons and/or citizens of the United States, who at all material times herein did reside in Honolulu, Hawaiʻi.

17.    Defendant Larry Santos is an employee of the HPD.  Mr. Santos has been present during most, if not all, of the raids; has directly participated in the seizure of persons and property as well as the destruction of the latter; and is believed to oversee and/or supervise the raids on behalf of HPD.   Mr. Santos is sued in both his personal and official capacity.

18.    Defendant Westley Chun is the Director of the City's Department of Facility Maintenance.  Mr. Chun has been present during most, if not all, of the raids described below; has directly participated in the seizure and destruction of property; and is believed to oversee and/or supervise the raids on behalf of the City and/or its Department of Facilities Maintenance.   Mr. Chun is sued in both his personal and official capacity.

19.    Defendant Trish Morikawa is the County Housing Coordinator, an employee of the City's Office of Housing.  Ms. Morikawa has been present during most, if

not all, of the raids described below; has directly participated in the seizure and destruction of property; and is believed to oversee and/or supervise the raids on behalf of the City and/or its Office of Housing.   Ms. Morikawa is sued in both her personal and official capacity.

20.    Defendant Kenneth Shimizu was the Deputy Director of the Department of Facilities Maintenance and currently is the acting Director of that Department.  Mr. Shimizu was present and acted in a supervisory capacity at the raid of December 20, 2012.  Mr. Shimizu is sued in both his personal and official capacity.

21.    Defendants John Doe 1-50 are sued in both their personal and official capacity as City officials and/or employees who have supervised, overseen, or participated in the raids described below.  John Doe 1-50 are responsible for seizures of persons or property and/or restraints on Plaintiffs' exercise of free speech and/or otherwise may be participants in the unconstitutional and/or tortious acts and practices discussed within this complaint. Defendants John Doe 1-50, because of their actions, are accordingly liable to Plaintiffs for damages and other relief as set forth in this Complaint.

22.    Plaintiffs have reviewed all documents and video evidence available to them and have made a diligent and good faith effort to ascertain said persons' full names and identities; however, Plaintiff has been unable to ascertain the identities of said Defendants. The names, capacities, and relationships of defendants named as Doe

Defendants will be alleged by amendment to this Complaint when they are revealed and thus properly identified.   The videotape evidence available to Plaintiffs as to the instant claims is attached as exhibits as indicated below.

23.     Plaintiffs reserve the right to petition this Court to amend this Complaint to add such parties as their true identities and capacities are ascertained through discovery or otherwise.  This Second Amended Complaint was requested by this Court in the Status Conference, conducted on March 8, 2013.

24.     Defendant City is a municipal corporation incorporated under the laws of the State of Hawaii. The City is authorized by law to control and maintain the Honolulu Police Department, Department of Facility Maintenance, and the Office of Housing, all agencies or departments of the city, who act on the City's behalf in the areas of law enforcement and other illegal activities described in this Complaint.  The City is therefore ultimately responsible for these agencies and their actions, and therefore, must assume the risks incidental to the maintenance of these agencies and their employees.

25.     Employees of the Honolulu Police Department, Department of Facilities Maintenance, and the Office of Housing have enforced the policies complained in this action against Plaintiffs.

## The Applicable Ordinances

26.     Starting in 2010, the City and County of Honolulu has targeted the homeless with the passage of two controversial bills, Bill 39 which is codified as Chapter 29, Article 18 of the Revised Ordinances of Honolulu ("ROH") and, more recently, Bill 54 which is codified as Chapter 29, Article 19 of the ROH.

27.     The passage of Bill 54 (Chapter 29, Article 19) repealed much of ROH § 29-18 (Bill 39).  Nevertheless, the viable provisions of Article 18 define and permit the City to define areas of the sidewalk designated as "pedestrian use zones."  It prohibits the storage of personal property within those zones.   Because of Bill 54, the seizure of property found in a "pedestrian use zone" is no longer authorized except as permitted by ROH § 29-19.  Nevertheless, Article 18 does authorize the imposition of $50 fine against the property owner.  ROH § 29-18.5.  Unlike Article 19 (Bill 54), it specifically excepts persons engaged in "expressive activities" from the ordinance's prohibitions.  ROH § 29-18.4(i).

28.     Article 19 (Bill 54) does authorize the seizure of "stored" property.  It defines stored property as property that has not been removed from public property within 24 hours after having been "tagged" with a notice from the City.  ROH § 29-19.3(b).  Article 19 also authorizes the seizure of property that "interferes with the safe or orderly management of the premises or poses a threat to health, safety, or welfare of the public."  ROH § 29-19.3(a).

29.     Upon seizure, all property is to be impounded.  Impounded property is to be stored.  ROH § 29-19.5(a).  The owner is assessed with all costs and "bears the risk of loss or damage" to the property.  ROH § 29-19.5(a).  Notice is supposed to be given to the owners at least 30 days before the City destroys or disposes of any of the property.  ROH § 29-19.5(b).

30.     The Ordinance states its legislative purpose as follows:

> Public property should be accessible and available to residents and the public at large for its intended uses. The unauthorized use of public property for the storage of personal property interferes with the rights of other members of the public to use public property for its intended purposes and can create a public health and safety hazard that adversely affects residential and commercial areas. The purpose of this article is to maintain public areas in clean, sanitary, and accessible condition, to prevent harm to the health or safety of the public, to prevent the misappropriation of public property for personal use, and to promote the public health, safety and general welfare by ensuring that public property remains readily accessible for its intended uses.

Thus, any and all property seized and or destroyed, as complained of below, has been done so for "public use" as that term is contemplated in the Fifth Amendment of the United States constitution.

31.     No hearing is provided for property owners either before any deprivation of the owners' property, before destruction or disposal of the property, or before impoundment fees and costs are assessed against the property owners. No Plaintiff in this suit has ever been provided any meaningful opportunity to be heard before any administrative, judicial, or non-judicial panel, board, or decision maker before

their property was seized and/or destroyed.  And, upon information and belief, there was never any judicial determination of wrongdoing before the seizure or destruction of property.

32.   Additionally, there is no exemption or exception for property that is used in exercising First Amendment rights within Chapter 29, Article 19 of the ROH.

33.   Defendants, their employees, servants, agents, and/or contractors have conducted a series of raids at the De-Occupy encampment at Thomas Square, which at all relevant times was located at the southeast corner of the intersection of Ward and Beretania Streets.  During these raids, as discussed in more detail below, property, both "tagged" and "untagged" pursuant to Sections 29-19.3(b) and 19.4 of the Revised Ordinances of Honolulu, has been seized and destroyed.

34.   Plaintiffs have never been compensated for any of their property that the Defendants seized and/or destroyed or even offered a hearing to argue against the seizure or destruction.  And, often this property comprised all or a large portion of the affected Plaintiffs' worldly possessions.

## Unlawful Seizure and/or Destruction of Property

## February 15, 2012

35.   On February 15, 2012, all or some of the Defendants and/or their agents participated in a raid at Thomas Square, which is located at the southeast corner of

the intersection of Beretania Street and Ward Street in Honolulu, Hawaii.  See Exhibits 1-2.

36.    Nevertheless, upon arriving at Thomas Square, Defendants and/or their agents, seized and detained Plaintiff Christopher Smith, separating him from his personal property, which had not been "tagged" 24 hours earlier pursuant to Sections 29-19.3(b) and 19.4 and posed no "interference with the safe or orderly management of the premises or poses a threat to health, safety, or welfare of the public."

37.    Despite Mr. Smith having been unlawfully seized and detained away from his property, another De-Occupy member, acting with Mr. Smith's consent, removed the property from Thomas Square to private property located across Beretania Street.  This is the specific action that is contemplated to occur when property is "tagged" pursuant to Section 29-19.3(b) of the Revised Ordinances of Honolulu to prevent the property from being seized.

38.    Nevertheless, Defendants, including Defendants Santos, Chun, and Morikawa "chased" the property across Beretania Street.  The person having ownership, possession or dominion over private property located at 1210 Ward Ave. and known as "Hawaiian Braces", despite being interrogated by one or all Defendants, specifically authorized the storage of the personal property at 1210 Ward Ave.  Exhibit 1 at 20:22.

39.     Dissatisfied, Defendants then contacted the owner of Hawaiian Braces, who also initially authorized the storage of the property.   However, after continual duress and coercion by the Defendants, the property owner relented to the Defendants' wish to remove Mr. Smith's personal property back to the public area from which it had been removed.   Exhibit 1 at 23:39-26:00.

40.     Defendant Chun removed the personal property from private property onto public property.   Much of this property was then seized or impounded.

41.     However, Defendant Morikawa rummaged through the property discarding or instructing the disposal of what she believed was not worth preserving.   Exhibit 1 at 26:41-27:29.   *See also*, Exhibit 2.

42.     Among this discarded or destroyed property were spray paint cans, markers, brushes, acrylic paint, and/or stencils used by De-Occupy members to paint signs used in lawfully expressing protected speech.   In addition, once the property was removed from the private property and relocated back to public property at Defendant Morkawa's direction, Defendants and their agents discarded various items into a garbage truck, including:  a gas can, an orange untagged tent, and various mats and tarps.   Exhibit 2.

43.     The remainder of the property, lawfully owned by Mr. Christopher Smith, was seized.

44.     Despite attempts by Mr. Smith to reclaim the property, much of the property, including dog food and a dog food bowl, was never returned.  The property that was eventually returned was held without explanation for months.  Further, Defendants told Mr. Smith that the property was being held pursuant to the "found property ordinance."

45.     Post-seizure notice(s) or inventory of the seized items was neither provided to Plaintiff Christopher Smith nor posted in any conspicuous area as required by Chapter 29 Article 18.

46.     Yet, as in all known instances when property is seized, Defendants informed Mr. Smith that because he did not identify the seized property with some unknown degree of specificity that would be sufficient to satisfy Defendants, the property could not be returned.

47.     No hearing has ever been offered and/or provided to Mr. Smith concerning the seized and/or destroyed property; and no attempt has ever been made by the City, its agents, and anyone acting on its behalf, or from any other Defendant to compensate Mr. Smith for the destroyed or unreturned property.

**March 29, 2012**

48.     On March 29, 2012, all or some of the Defendants and or their agents participated in another raid at Thomas Square.  Exhibits 3A and 3B.

49.     Plaintiff Madori Rumpungworn's tent was erected on the sidewalk of Beretania Street along with numerous other tents.  Ms. Rumpungworn's personal property was also located within the tent.

50.     Various property was seized and destroyed during this raid.  Whether the property was seized or destroyed was left to the sole discretion of the Defendants and/or their agents.

51.     Among the property seized was Ms. Rumpungworn's tent.  Yet, instead of impounding the property as provided by Chapter 29, Article 19 of the Revised Ordinances of Honolulu, Ms. Rumpungworn's tent was discarded into a garbage truck.  Exhibit 3B at 3:30 and 3:52.

52.     Ms. Rumpungworn pleaded with Defendant Chun to remove or allow her to remove the tent and/or personal property from the garbage truck.  Exhibit 3B at 4:49. Defendant Chun ignored Ms. Rumpungworn's pleas.  Instead, upon hearing Ms. Rumpungworn's pleas, Mr. Chun moved his finger in a circular motion, instructing the driver of the truck to initiate the mechanism that compacts rubbish in the bed of the truck.  Exhibit 3B at 5:28.

53.     The compacting mechanism was initiated and, although Defendants had already damaged the tent, Ms. Rumpungworn's tent was destroyed.

54.     Defendant Chun walked away.

55.    Ms. Rumpungworn has never had her tent or any of her personal property returned.

56.    There was no judicial determination of wrongdoing before the seizure or destruction of property.

57.    Post-seizure notice(s) or inventory of the seized items was neither provided to Ms. Rumpungworn nor posted in any conspicuous area as required by Chapter 29 Article 18.

58.    No hearing has ever been offered and/or provided to Ms. Rumpungworn concerning the seized and/or destroyed property; and no attempt has ever been made by the City, its agents, and anyone acting on its behalf, or from any other Defendant to compensate Ms. Rumpungworn for the destroyed or unreturned property.

### June 28, 2012

59.    On June 28, 2012, all or some of the Defendants and/or their agents participated in another raid at Thomas Square.  Defendants and/or their agents, for unknown reasons, appeared with a bulldozer, backhoe, or excavator.

60.    Plaintiff Catherine Russell's and Plaintiff Andrew Smith's tents were erected on the sidewalk of Beretania Street along with several other tents.  Personal property was located in the tent.  Exhibit 4.

61.    A wide variety of personal property was seized and/or destroyed during this raid.

62.    None of the property owners, including Ms. Russell and Mr. Smith, were offered and/or provided any meaningful opportunity to be heard before any administrative, judicial, or non-judicial panel, board, or decision maker before their property was seized and/or destroyed.   There was no judicial determination of wrongdoing before the seizure or destruction of property.

63.    Further, none of the property was "tagged" as required by Sections 29-19.3(b) or 29-19.4 of the Revised Ordinances of Honolulu.  No notice was given that the property was subject to seizure.

64.    Indeed, the property was not subject to seizure.  It had not been "stored" at that location as defined by Sections 29-19.3(b) (defining "stored property" as property that has not been removed 24 hours after having been "tagged" as required by Section 29-19.4).  And, the property did not interfere with the safe or orderly management of the premises or pose a threat to the health, safety, or welfare of the public.  In fact, property in that exact location had been tagged both before and after this illegal seizure.

65.    "Untagged" items seized from Ms. Russell during this raid included:

      a.  a two-person Ozark Trails blue/ grey tent with rain fly, poles, and carrying case;

b.  a full size grey inflatable mattress;

c.  bedding, including a green woven heavy weight blanket; a white, floral-printed light weight blanket; a flat, white cotton sheet; a bamboo mat with blue trim; two standard white pillows; and a purple pillowcase;

d.  a blue foam pad that is medical equipment used for shock patients with "Stand up Chicago" written on it in black marker;

e.  a "Street Medic Trainers' Manual" in a white plastic binder;

f.  an "Anonymous Medic" shirt;

g.  a square pillow with a picture of Abraham Lincoln with a quote from Lincoln on one side, and a flag printed on the back, which holds significant sentimental value as Ms. Russell's father gave it to Ms. Russell just before he died;

h.  a bluish-purple extra wide folding chair with vented seat and back and cupholders in the armrests;

i.  a large plastic storage chest with a small Masterlock on it;

j.  a DVD;

k.  Ms. Russell's prescribed Lorazepam;

l.  two fully stocked first-aid kits in black bags with a red cross imprinted on the bags;

m.  two empty black first-aid kit bags with an imprinted red cross;

n.  an electric lantern that is clear with a blue top;

o.  black mini-mag light that was still in its packaging;

p.  an orange water container;

q.  a book about the BP oil spill with the word "Vulture" in the title;

r.  various Occupy Wall Street related stickers that were in the book listed above;

s.  a pair of black slippers with two wide velcro straps, size 10;

t.  one over-sized blue bath towel;

u.  non-perishable food items;

v.  a pair of black leggings with zippers on the side of the legs;[1]

w.  a pair of red shorts with a large red button on each leg;

x.  a black cotton dress, sleeveless with a curved collar;

y.  a one-piece bathing suite with a black and white zebra pattern with skirt;

z.  a pair of swim bottoms;

aa. a grey striped dress shirt with elastic waist and cowl neck;

bb. a teal sleeveless shirt

cc. a white tank top

_____

[1] All clothing ranges in womens' sizes from 18-24, 1X-2X.

dd. a white cotton shirt with a small ruffle on the neck line;

ee. blue and green plaid pajama bottoms;

ff. blue pajama bottoms with "pin-up girls" imprint;

gg. various basic woman's underwear;

hh. a plastic bag of dirty clothes; and

ii. a pair of blue yoga pants.

66.     These items constituted almost the entire sum of Ms. Russell's worldly possessions.  Exhibit 4.

67.     After months of grappling with Defendants' various obstacles designed to prevent or deter the return of the property, only a portion of the property was ever returned to Ms. Russell.   Items that were never returned include: the tent, the mattress, the bedding, the folding chair, the DVD, and medical equipment (*i.e.*, the blue foam "shock" pad).

68.     Property taken from Mr. Smith during the raid included:

a.  A shelf;

b.  A cooler with plates, cups and silverware;

c.  A rug;

d.  Bedding; and

e.  A blue Ozark tent.

69.     Mr. Smith also attempted to have his property returned.

70.   After a series of phone calls, Mr. Smith spoke with Defendant Chun. Despite Mr. Smith having described the property as a blue and gold Ozark tent and the bedding contained therein and even having provided Defendant Chun with the bin number in which Mr. Smith had observed his property being placed after the seizure, Mr. Chun insisted that Mr. Smith had not prescribed an adequate description.

71.   None of Mr. Smith's property was ever returned.

72.   Post-seizure notice(s) or inventory of the seized items was not provided to Mr. Smith nor was any such notice posted in any conspicuous area as required by Chapter 29 Article 18.  Ms. Russell did receive a vague notice that property had been seized.  In that notice, Defendants did not attempt to describe all of the property taken from Ms. Russell.

73.   No hearing has ever been offered and/or provided to Mr. Smith or Ms. Russell concerning the seized and/or destroyed property;  and no attempt has ever been made by the City, its agents, and anyone acting on its behalf, or from any other Defendant to compensate Mr. Smith or Ms. Russell for the destroyed or unreturned property.

**August 8, 2012**

74.   On August 8, 2012, all or some of the Defendants and/or their agents participated in another raid at Thomas Square.  Exhibit 5.

75.    Plaintiff Andrew Smith's tent was erected on the sidewalk of Beretania Street along with several other tents, including Plaintiff Russell's.  Personal property was located in both of Plaintiffs' tents.

76.    None of the property owners, including Mr. Smith or Ms. Russell, were provided any meaningful opportunity to be heard before any administrative, judicial, or non-judicial panel, board, or decision maker before their property was seized and/or destroyed.  There was no judicial determination of wrongdoing before the seizure or destruction of property.

77.    The seizure and destruction of the property was not authorized by the Revised Ordinances of Hawaii.  The property had not been "stored" at that location as defined by Sections 29-19.3(b) (defining "stored property" as property that has not been removed 24 hours after having been "tagged" as required by Section 29-19.4).  And, the property did not interfere with the safe or orderly management of the premises or pose a threat to the health, safety, or welfare of the public.  Indeed, property in that exact location had been tagged both before and after this illegal seizure.

78.    After Defendants' arrival, Defendant Santos and/or other John Doe Defendants admitted that property that had been "tagged" pursuant to Sections 29-19.3(b) and 19.4 on the previous day, had since been removed.

79.     Nevertheless, Defendants seized and destroyed untagged property, including the property of Plaintiffs Smith and Russell.

80.     Various property was seized and destroyed during this raid.  Whether the property was seized or destroyed was left to the sole discretion of the Defendants and/or their agents.

81.     Defendants and/or their agents rummaged through Mr. Smith's belongings discarding some of it into a garbage bag and only placing part of it into the bin which should have been used to impound all of the seized property.  Among the items belonging to Mr. Smith that were seized and/or destroyed included bedding and a tent.

82.     Mr. Smith made attempts to retrieve his seized property.  Again, after a series of phone calls Defendants insisted that Mr. Smith had not described the seized property with enough detail to satisfy Defendants, despite Mr. Smith having described the seized tent by color and brand name.

83.     None of Mr. Smith's property was ever returned.

84.     Defendants also rummaged through Ms. Russell's tent, discarding some items while storing others.  Items seized or destroyed from Ms. Russell's tent include: two air mattresses (one large mattress with a built in air pump and the other full-sized); one electric air pump; bedding; and an area rug.

85.    Defendants also rummaged through another tent that, while lawfully belonging to Ms. Russell, was treated as Plaintiff De-Occupy's communal tent and referred to as a "free store."   Defendants discarded some items while storing others.   Items seized or destroyed from Plaintiff De-Occupy's tent include:   men's, women's and children's clothing, toys, books, and toiletries.

86.    The seized property was never returned.

87.    Post-seizure notice(s) or inventory of the seized items was neither provided to any Plaintiff (or any member of Plaintiff De-Occupy Honolulu) nor posted in any conspicuous area as required by Chapter 29 Article 18 following the August 8 raid.

88.    No hearing has ever been offered and/or provided to any Plaintiff or member(s) of Plaintiff De-Occupy concerning the seized and/or destroyed property; and no attempt has ever been made by the City or any other Defendant, their agencies or anyone acting on their behalf, to replace or refund the property or otherwise compensate Plaintiffs.

**September 6, 2012**

89.    On September 6, 2012, in protest of the various egregious actions taken against members of De-Occupy and other homeless Honolulu citizens (including those described above in this Complaint), Plaintiff Russell had painted and erected

a sign quoting the Ninth Circuit Court of Appeals opinion styled *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012).  Exhibit 6.

90.    That opinion, released on September 5, 2012, condemns many of the actions that had been and continue to be taken against De-Occupy members, including the Plaintiffs, by Defendants.  And, accordingly, as of September 6, 2012, the sign was not "tagged" as required by Sections 29-19.3(b) or 29-19.4 of the Revised Ordinances of Honolulu.  Indeed, such tagging was impossible because the opinion had not been released more than 24 hours earlier.  No notice was given that the property was subject to seizure.

91.    Nevertheless, on September 6, 2012, Defendants conducted another raid on Thomas Square.  Defendants seized and destroyed the untagged property, including Ms. Russell's sign.  Exhibit 6 at 39:30.

92.    The Plaintiffs who were present, including Ms. Russell, were seized and detained away from their property.  Id.

93.    Ms. Russell was not provided any meaningful opportunity to be heard before any administrative, judicial, or non-judicial panel, board, or decision maker before her property was seized and/or destroyed.  There was no judicial determination of wrongdoing before the seizure or destruction of property.

94.    The seizure and destruction of the property was not authorized by the Revised Ordinances of Hawaii.  The property had not been "stored" at that location

as defined by Sections 29-19.3(b) (defining "stored property" as property that has not been removed 24 hours after having been "tagged" as required by Section 29-19.4). And, the property did not interfere with the safe or orderly management of the premises or pose a threat to the health, safety, or welfare of the public. Indeed, property in that exact location had been tagged both before and after this illegal seizure.

95.    Post-seizure notice(s) or inventory of the seized items was neither provided to Ms. Russell nor posted in any conspicuous area as required by Chapter 29 Article 18.

96.    No hearing has ever been offered and/or provided to Ms. Russell concerning the seized and/or destroyed property, and no attempt has ever been made by the City or any other Defendant, their agencies, or anyone acting on their behalf to compensate Ms. Russell for seized or destroyed or unreturned the property.

**October 9, 2012**

97.    On or about October 9, 2012, Plaintiff Russell had painted and erected Tulsi Gabbard political signs on what the De-Occupy members called the "Free Speech" Wall. The signs had a large "X" painted across the then-candidate's name, in protest of Ms. Gabbard's policies pertaining to the homeless. Exhibit 7.

98.    Ms. Russell had retrieved those signs from the rubbish container at Thomas Square.

99.    The signs were not "tagged" as required by Sections 29-19.3(b) or 29-19.4 of the Revised Ordinances of Honolulu.  No notice was given that the property was subject to seizure.

100.    Nevertheless, on October 9, 2012, Defendant Chun seized and destroyed Ms. Russell's signs.  Exhibit 7 at 15:35.

101.    Ms. Russell, who videotaped the seizure, asked Defendant Chun why he was taking Ms. Russell's artwork and also why he was taking "untagged" property. Defendant Chun ignored Ms. Russell and walked away with the signs.   Indeed, upon information and belief, Defendant Chun attempted to have *Ms. Russell* arrested for "theft."  Exhibit 7 at 15:35.

102.    In fact, Defendant Chun and/or another Defendant did after the initial seizure, with the mental culpability required of fraud, misrepresent who owned the signs, misinforming Ms.  Russell that the signs belonged to the "Gabbard Campaign."

103.    Defendants did agree or implicitly agree to defraud Ms. Russell, and the misrepresentation was an action in furtherance of that agreement.

104.    At the time of the statement, Defendants did not know how Ms. Russell came into possession of the signs.

105.    As a result of this fraud, Ms. Russell walked away from the signs.  At no time, did Ms. Russell relinquish ownership of the signs and, even if she had, it

would have resulted not from any desire to do so, but from the fraudulent actions of the Defendants.

106.   Ms. Russell was not provided any meaningful opportunity to be heard before any administrative, judicial, or non-judicial panel, board, or decision maker before her property was seized and/or destroyed.  There was no judicial determination of wrongdoing before the seizure or destruction of property.

107.   The seizure and destruction of the property was not authorized by the Revised Ordinances of Hawaii.  The property had not been "stored" at that location as defined by Sections 29-19.3(b) (defining "stored property" as property that has not been removed 24 hours after having been "tagged" as required by Section 29-19.4).  And, the property did not interfere with the safe or orderly management of the premises or pose a threat to the health, safety, or welfare of the public.  Indeed, property in that exact location had been tagged both before and after this illegal seizure.

108.   Post-seizure notice(s) or inventory of the seized items was neither provided to Ms. Russell nor posted in any conspicuous area as required by Chapter 29 Article 18.

109.   No hearing has ever been offered and/or provided to Ms. Russell concerning the seized and/or destroyed property, and no attempt has ever been made by the

City or any other Defendant, their agencies, or anyone acting on their behalf to compensate Ms. Russell for the seized or destroyed or unreturned property.

### November 21, 2012

110.   On November 21, 2012, the day before Thanksgiving, all or some of the Defendants and/or their agents participated in another raid at Thomas Square. Exhibit 8, 9.

111.   Plaintiff Russell's tent was erected on the sidewalk at Beretania Street along with several others.  Ms. Russell's tent was decorated with protected speech.  Id.

112.   The "free speech" tent was seized and ripped by the Defendants.  Id.

113.   The tent contained Ms. Russell's personal property.  Other personal property was also seized from Ms. Russell. The property seized from Ms. Russell includes:

> a.  Five chairs;
>
> b.  A blue tarp;
>
> c.  Two video cameras; and
>
> d.  Five other stowed tents.

114.   The chairs had been "tagged" the previous day.  However, Defendants did not impound those chairs.  Instead Defendants destroyed the chairs.

115.   The blue tarp had not been tagged.  The blue tarp was, nevertheless, also destroyed by Defendants.

116.   A partial notice of the seizure was left.  None of the destroyed property was listed on the notice.  And, only one of the two video cameras was listed on the notice.  The notice also had originally stated that what is believed to be the "free speech" tent was seized.  However, that was changed to state "ripped" tent after the Defendants effectively destroyed the tent.  Exhibit 8, 9.

117.   Mr. Christopher Smith had erected four pallets that being used as tables.  These tables were used to disseminate protected speech to the public.  Two camping chairs were behind the table and were used by Mr. Smith and other members of De-Occupy to disseminate the protected speech materials.

118.   These items were not "tagged" and were, nevertheless, destroyed by Defendants.

119.   In addition, two untagged camping chairs were leaning against the rock wall on Thomas Square.  These chairs were located outside the area around which Defendants, their employees, contractors, agents or servants had originally erected yellow tape to detain the Plaintiffs from their property.  Exhibit 8.

120.   Apparently unhappy that counsel's investigator was videotaping Defendants' actions, Defendants extended the yellow tape used to detain Plaintiffs and the investigator further away from Plaintiffs' property.  Exhibit 8 at 7:30.  And, in doing so, Defendants enclosed even more of Plaintiffs' property, seizing and destroying property within this new boundary.

121.   In an effort to save the newly enclosed property, members of De-Occupy began to remove the property to a location outside the newly enclosed area.

122.   De-Occupy members were unable to remove the two camping chairs, belonging to Mr. Smith, from the newly enclosed area.   Those chairs were destroyed.

123.   In addition, Ms. Russell had five stowed tents in a garbage bag that was located within the newly enclosed boundary.   Of the five stowed tents, only one had been tagged.

124.   These tents were successfully removed from the newly enclosed area by De-Occupy members.   However, someone acting on Defendants' behalf threw the garbage bag of tents over the wall at Thomas Square and back into the newly enclosed area.

125.   Defendant Chun seized all five tents despite the fact that four of them were not tagged.   And, only four were listed on the notice provided to Ms. Russell.   However, the other tent appears to have been included on a separate notice of the seizure.

126.   Ms. Russell had also been using another untagged camping chair on public property.   Ms. Russell was using the chair to erect a protest sign.   Defendants also destroyed this chair.   Exhibit 8.

127.   None of the property owners, including Ms. Russell and Mr. Smith, were provided any meaningful opportunity to be heard before any administrative, judicial, or non-judicial panel, board, or decision maker before their property was seized and/or destroyed.   There was no judicial determination of wrongdoing before the seizure or destruction of property.

128.   The seizure and destruction of the property was not authorized by the Revised Ordinances of Hawaii.  Much of the property had not been "stored" at that location as defined by Sections 29-19.3(b) (defining "stored property" as property that has not been removed 24 hours after having been "tagged" as required by Section 29-19.4).   And, the property did not interfere with the safe or orderly management of the premises or pose a threat to the health, safety, or welfare of the public.   Indeed, property in that exact location had been tagged both before and after this illegal seizure.

129.   Post-seizure notice(s) or inventory of many of the seized items was neither provided to any Plaintiff (or any member of Plaintiff De-Occupy Honolulu) nor posted in any conspicuous area as required by Chapter 29 Article 18 following the this raid.

130.   No hearing has ever been offered and/or provided to any Plaintiff or member(s) of Plaintiff De-Occupy concerning the seized and/or destroyed property; and no attempt has ever been made by the City or any other Defendant,

their agencies or anyone acting on their behalf, to replace or refund the property or otherwise compensate Plaintiffs.

131.   Despite Plaintiffs' attempts to have the property returned, it was only after the hearing of January 17, 2013, and following a finding that no adequate procedure for the return of the property existed and a specific directive to return Plaintiffs' property seized on December 20, 2012 that Ms. Russell's property was returned.   Upon information and belief, Mr. Smith's property has not been returned.

### December 20, 2012

132.   After the filing of the initial Complaint and Motion for a Temporary Restraining Order in this case, the parties reached an agreement in lieu of the potential issuance of a Temporary Restraining Order.   In relevant part, that agreement requires city workers to exercise "reasonable care" to prevent damage or destruction to seized property.   The agreement was memorialized in a Court Order entered December 19, 2012.

133.   Nevertheless, the very next day and on December 20, 2012, Defendant Shimizu supervised a raid on Thomas Square.  Exhibit 10.

134.   During that raid, Plaintiff Dominic James' yellowish-gold tent was seized. City Workers stuffed the tent into a bin without removing at least two of the tent's poles.  Id.

135.   Those poles could have easily been removed.  Indeed, the City Workers did remove one pole and properly collapsed it.

136.   The seizure and/or storage of the tent in such manner by the City Workers operating under the supervision of Defendant Shimizu caused the tent to be damaged.

137.   Mr. James was only able to retrieve the tent after this Court ruled that the procedures for retrieving stored property were insufficient.   When he finally reacquired possession of his property, the fabric of the tent was torn and at least one pole was broken.  Exhibit 11.

138.   No hearing has ever been offered or provided to Mr. James concerning the seized and/or destroyed property; and no attempt has ever been made by the City or any other Defendant, their agencies or anyone acting on their behalf, to replace or refund the property or otherwise compensate Mr. James.

### <u>Defendant City is liable for the actions of the individual Defendants.</u>

139.   Defendants Santos, Moriwaka, Chun, and/or Shimizu and/or one or more John Does 1-50 violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights in seizing and destroying the property described above.  Defendants have also violated Plaintiffs' rights pursuant to ancillary provisions of Article 1 of the Hawaii Constitution as well as the "law of the splintered paddle," which is ratified at Article 9, section 10 of the Hawaii Constitution.

140.   Defendants Santos, Moriwaka, Chun and/or Shimizu and/or one or more John Does 1-50 committed these acts pursuant to Defendant City's policy, practice, or customs, which constitute the standard operating procedure.  Indeed, insofar as the individual Defendants are heads of executive agencies, Defendant City has specifically provided them with carte blanche authority to adopt and promulgate rules and policies pertaining to these raids and the seizure of property.

141.   Alternatively, Defendant City's policy, practice, or customs, which constitute the standard operating procedure caused the violative acts and/or Plaintiffs' damages because, in addition to having passed the unconstitutional ordinances, Defendant City's practice or custom is to fail, neglect, or decline to oversee its employees or offer guidelines or policies to any or all of its employees in regards to administration, operation, or maintenance of the seizure of property pursuant to the ordinances – guidelines or policies which could easily be implemented to ensure that the rights of Plaintiffs or any other citizen would not be violated.

142.   Alternatively, Defendants Santos, Moriwaka, Chun and/or Shimizu and/or one or more John Does 1-50 were or are officials with final policy-making authority and/or the seizures of persons or property, destruction of property, and/or interference with the Plaintiffs' exercise of protected speech constitutes an act of official governmental policy.

143.   Alternatively, Defendants Santos, Moriwaka, Chun and/or Shimizu and/or one or more John Does 1-50, employed by the City, have final policy-making authority and ratified a subordinate's unconstitutional decision to seize persons or property, destroy property, and/or interfere with the Plaintiffs' exercise of protected speech.  The subordinate is also named as one or more of the John Doe 1-50 Defendants.

## Plaintiffs' Exhibits.

144.   Plaintiffs have attached a disc containing the exhibits referenced within the body of this complaint.

## FIRST CAUSE OF ACTION

### Violation of Fourth Amendment

145.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

146.   Defendants' seizures of Plaintiffs' property as set forth above constitute unreasonable seizures in violation of the Fourth Amendment to the United States Constitution and the current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

147.   Defendants' destruction of Plaintiffs' property and/or failure to return or to return the property in a usable condition also constitute unreasonable seizures in violation of the Fourth Amendment to the United States Constitution and the

current cause of action is also within this Court's jurisdiction pursuant to 42 U.S.C.

§ 1983.

## SECOND CAUSE OF ACTION

### Due Process Violation

148.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

149.   Plaintiffs' property was seized and/or destroyed often without affording Plaintiffs notice and always without affording Plaintiffs any meaningful opportunity to be heard before or after the seizure or destruction.

150.   Defendants' seizures of Plaintiffs' property as set forth above without due process of law constitute violations of the Fourteenth Amendment to the United States Constitution and the current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

151.   Defendants' destruction of Plaintiffs' property and/or failure to return or to return the property in a usable condition without due process of law constitute violations of the Fourteenth Amendment to the United States Constitution and the current cause of action is also within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

### First Amendment Violation

152.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

153.   Defendants actions constitute a violation of the First Amendment of the United States Constitution as Defendants have interfered with and chilled speech and activities protected by the First Amendment to the United States Constitution. This cause of action is also within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION

### Takings Clause

154.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

155.   Plaintiffs' property was seized and/or disposed of without offering just compensation for the taking.  Plaintiffs have never received any compensation for this property.

156.   Defendants' disposal of and/or failure to return or to return the property in a usable condition as set forth above constitute violations of Fifth Amendment's "takings clause" made applicable to the States by the Fourteenth Amendment to the United States Constitution.  The current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## FIFTH CAUSE OF ACTION

### Conspiracy

157.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

158.   Defendants, in their official or individual capacities, have agreed and/or acted in concert amongst themselves or with others to violate the constitutional rights of the Plaintiffs.   Multiple acts have been conducted in furtherance of this conspiracy and the current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## SIXTH CAUSE OF ACTION

### Failure to Train and Supervise

159.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

160.   Defendants failed to adequately train and supervise their officials, employees, and agents so as to prevent the seizure and destruction of Plaintiffs' property, which resulted in the violations of the First, Fourth and Fourteenth Amendments the current cause of action is also within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

161.   Defendants' failure to train, despite the number and frequency of raids at Thomas Square, amounts to deliberate indifference to the rights of persons with whom Defendants came into contact, including those of the Plaintiffs.

162.   The deficiency in training Defendants Santos, Moriwaka, Chun, and John Does 1-50 was an actual cause of the constitutional deprivations and injuries suffered by Plaintiffs.

## SEVENTH CAUSE OF ACTION

**Hawaii Constitution – Unreasonable Seizure**

163.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

164.   Defendants violated Article 1, sections 6 and 7 of the Hawaii Constitution.

## EIGHTH CAUSE OF ACTION

**Hawaii Constitution – Property and Due Process Protections**

165.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

166.   Defendants violated Article 1, sections 2, 5, and 8 of the Hawaii Constitution.

## NINTH CAUSE OF ACTION

**Hawaii Constitution – Freedom of Speech**

167.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

168.   Defendants violated Article 1, section 4 of the Hawaii Constitution.

## TENTH CAUSE OF ACTION

**Hawaii Constitution – Law of the Splintered Paddle**

169.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

170.   Defendants violated Article 9, section 10 of the Hawaii Constitution, mamala-hoe kanawai ("Let every elderly person, woman and child lie by the roadside in safety").

## ELEVENTH CAUSE OF ACTION

### Conversion

171.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

172.   Plaintiffs have or had (at the time of seizure and/or destruction) title and/or the right to possess the property unlawfully seized and/or destroyed by the Defendants.  Defendants' actions in seizing and/or destroying the property and/or failing to return the property in a usable condition constitutes conversion.

173.   Plaintiffs are damaged as a result of Defendants actions and this Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## TWELFTH CAUSE OF ACTION

### Replevin

174.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

175.   Plaintiffs have or had (at the time of seizure and/or destruction) title and/or the right to possess the property unlawfully seized and/or destroyed by the Defendants.  Defendants' actions in seizing and/or destroying the property and/or failing to return the property in a usable condition is the basis for replevin relief.

176.   This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## THIRTEENTH CAUSE OF ACTION

### Negligence

177.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

178.   The damage, destruction and or failure to return Plaintiffs' property was forseeable and proximately caused by the negligence, gross negligence and/or negligent omissions of Defendants or their official, employees and/or agents.

179.   As a result of the negligence, gross negligence, carelessness and/or negligent omissions of Defendants, their officials, employees and/or agents, Plaintiffs have sustained monetary damages.

180.   This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## FOURTEENTH CAUSE OF ACTION

### Negligent Supervision and Training

181.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

182.   Defendant City and its officials, employees and/or agents acting within the scope of their employment negligently supervised and/or trained and/or failed to supervise or train the individual Defendants, who were unfit for the performance of their duties as those duties relate to Plaintiffs and their property throughout the relevant time periods alleged herein, thereby causing Plaintiffs to suffer foreseeable injury, including monetary damages.

183.   This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## FIFTEENTH CAUSE OF ACTION

### Trespass to Chattels

184.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

185.   Plaintiffs have or had (at the time of seizure and/or destruction) title and/or the right to possess the property unlawfully seized and/or destroyed by the Defendants.   Defendants have intentionally interfered with Plaintiffs' lawful possession and/or use of property and those actions constitute trespass to chattels.

186.   Plaintiffs are damaged as a result of Defendants actions and this Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## SIXTEENTH CAUSE OF ACTION

### Fraud

187.   Paragraphs 1 through 143 are incorporated as though fully stated herein.

188.   On October 9, 2012, Plaintiff Catherine Russell had (at the time of seizure and/or destruction) title and/or the right to possess "Tulsi Gabbard" signs across which she had painted an "X" as an exercise of free speech.   The signs were not "tagged."   Nevertheless, Defendant Chun seized the signs.   When Ms. Russell protested, Defendants Chun, Santos, Morikawa, Shimizu and/or John Does did misrepresent the title of those signs to Ms. Russell, at least implicitly threatening

Ms. Russell with arrest and/or civil penalty. After hearing those misrepresentations, Ms. Russell feared arrest and walked away from the signs, which are believed to have been unlawfully destroyed by the Defendants. These actions constitute fraud which resulted in an unlawful deprivation of Ms. Russell's property and/or chilled Ms. Russell's protected speech.

**189.** Plaintiffs are damaged as a result of Defendants actions and this Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. Plaintiffs demand trial by jury;

2. Declaratory judgment affirming that Chapter 29, Article 19 of the Revised Ordinances of Honolulu is unconstitutional on its face or as applied to Plaintiffs;

3. Declaratory judgment affirming that Defendants' actions have violated and/or continue to violate Plaintiffs' rights pursuant to the First, Fourth, and Fourteenth Amendments of the United States Constitution, the ancillary provisions of the Hawaii Constitution, and/or Article 9, section 10 of the Hawaii Constitution;

4. A temporary restraining order enjoining Defendants and/or their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from:

1. Seizing property . . . absent an objectively reasonable belief that it is [actually] abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; and

2. Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.

*Lavan v. City of Los Angeles*, 693 F.3d 1022, 1024 (9th Cir. 2012);

3.  Absent an immediate threat to public health or safety, any property of the homeless [including De-Occupy members] that is seized [and] that is not hazardous or contraband, may not be destroyed without prior written notice that such property will be seized and destroyed and a constitutionally adequate pre- [and] post-deprivation remedy provided to recover such property.

*Pamela Kincaid, et. al. v. City of Fresno, et. al.*, No. 1:06-cv-1445, 2006 WL 3542732 (E.D.Cal. December 8, 2006) (attached to Memorandum in Support of Motion for Preliminary Injunction, filed contemporaneously herewith).   And, compelling those persons identified above to:

"'leave a notice in a prominent place for any property taken on the belief that it is [actually] abandoned, including advising where the property is being kept and when it may be claimed by the rightful owner.'"

*Lavan*, 693 F.3d at 1024  (*quoting Tony Lavan v. City of Los Angeles*, No. 11-CV-2874, 2011 WL 1533070, at *5-6 (C.D.Cal. Apr. 22, 2011) (attached to Memorandum in Support of Motion for Preliminary Injunction, filed contemporaneously herewith).

5.      Preliminary and/or permanent injunctive relief enjoining and/or compelling the same conduct articulated in the requested Temporary Restraining Order.

6.      Compensatory damages;

7.      Punitive damages;

8.      Such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

9.      Attorney's fees, statutory fees and costs pursuant to 42 U.S.C. § 1988.

Dated: Honolulu, HI; March 15, 2013.

Respectfully submitted,

*s/Richard L. Holcomb*
Richard Holcomb
Brian Brazier