**February 15, 2012**

1.      On February 15, 2012, there was a raid at Thomas Square.

2.      Plaintiff Christopher Smith was detained away from his property during this raid.

3.      This property included a dog bowl, a bull horn, dog food, spray paint cans, markers, brushes, acrylic paint, and/or stencils, a gas can, an orange tent, and mats and tarps.

4.      Another De-Occupy member removed the property from Thomas Square to private property located across Beretania Street, specifically Hawaiian Braces.

5.       Defendants Santos, Chun, and Morikawa left Thomas Square and went to Hawaiian Braces.

6.      The person physically present at Hawaiian Braces gave permission for the property to stay at Hawaiian Braces as long as it was gone by the close of business.

7.      Defendant Chun called or had the person at Hawaiian Braces call the orthodontist who owns Hawaiian Braces.

8.      After that telephone conversation, the property was removed from the private property by city workers.

9.      City workers were instructed to discard various items contained within the personal property.

10. Some of that property was placed into a garbage truck.

11. The property placed into a garbage truck included a gas can, an orange tent, and various mats and tarps.

12. The property that was not discarded was seized.

13. There was no judicial determination of wrongdoing before the property was seized or destroyed.

14. Further, city workers and/or one or all of the Defendants told Mr. Smith that the property was being held pursuant to the "found property ordinance."

15. Despite attempts by Mr. Smith to reclaim the property, much of the property, including dog food and a dog food bowl, was never returned.

16. When Mr. Smith attempted to obtain the property, he was told that he did not describe the property with enough specificity.

17. Some of the property was eventually months later.

18. Post-seizure notice(s) or inventory of the seized items was not provided to Mr. Smith nor posted in any conspicuous area.

19. . No hearing has ever been offered and/or provided to Mr. Smith concerning the seized and/or destroyed property; and no attempt has ever been made by the City, its agents, and anyone acting on its behalf, or from any other Defendant to compensate Mr. Smith for the destroyed or unreturned property.

20. These events are shown in Plaintiffs Exhibits 1 and 2.

## March 29, 2012

21.     On March 29, 2012 a raid was conducted at Thomas Square.

22.     Several tents were erected on the sidewalk of Beretania Street in front of Thomas Square.

23.     Various property was seized and destroyed during this raid.

24.     Among the property seized and destroyed was a tent to which Ms. Rumpungworn claimed ownership.

25.     The tent was not impounded.  Instead it was discarded into a garbage truck.

26.     Ms. Rumpungworn pleaded with Defendant Chun to remove or allow her to remove the tent and/or personal property from the garbage truck.

27.     Mr. Chun moved his finger in a circular motion, instructing the driver of the truck to initiate the mechanism that compacts rubbish in the bed of the truck.

28.     The compacting mechanism was initiated and the tent was destroyed in the garbage truck.

29.     There was no judicial determination of wrongdoing before the seizure or destruction of property.

30.     Post-seizure notice(s) or inventory of the seized items was neither provided to Ms. Rumpungworn nor posted in any conspicuous area.

31.     No hearing has ever been offered and/or provided to Ms. Rumpungworn concerning the seized and/or destroyed property; and no attempt has ever been

made by the City, its agents, and anyone acting on its behalf, or from any other Defendant to compensate Ms. Rumpungworn for the destroyed or unreturned property.

32.    These events are shown in Exhibits 3A and 3B.

### June 28, 2012

33.    On June 28, 2012 a raid was conducted at Thomas Square.

34.    Tents were erected on the sidewalk of Beretania Street.  Personal property was located in the tent.

35.    Among those tents was a tent belonging to Ms. Russell.  Ms. Russell's personal property was located inside the tent.

36.    There was no judicial determination of wrongdoing before the seizure or destruction of property.

37.    Ms. Russell's tent and/or personal property was "tagged".

38.    Ms. Russell attempted to have her seized property obtained for months.

39.    Plaintiffs' Exhibit 15 are e-mails that show some correspondence between Ms. Russell and Mr. Chun.

40.    Some of the property was eventually returned to Ms. Russell.

41.    Ms. Russell did receive a notice that property had been seized.  However, the notice did not describe all of the property taken from Ms. Russell.

42.     No hearing has ever been offered and/or provided to Ms. Russell concerning the seized and/or destroyed property; and no attempt has ever been made by the City, its agents, and anyone acting on its behalf, or from any other Defendant to compensate Ms. Russell for the destroyed or unreturned property.

43.     These events are shown in Plaintiffs' Exhibits 4, 17, and 18.

### August 8, 2012

44.     On August 8, 2012 a raid was conducted at Thomas Square.

45.     Several tents were erected on the sidewalk of Beretania Street in front of Thomas Square.

46.     Among those tents was Ms. Russell's.

47.     Personal property was inside the tents.

48.     Ms. Russell's personal property was inside her tent.

49.     There was no judicial determination of wrongdoing before the seizure or destruction of property.

50.     The property had not been tagged 24 hours before the seizure.

51.     After Defendants' arrival, Defendant Santos and/or other city workers admitted that property that had been "tagged" pursuant to Sections 29-19.3(b) and 19.4 on the previous day, had since been removed.

52.     Nevertheless, Defendants seized and destroyed untagged property, including the property of Plaintiff Russell.

53.    City workers rummaged through Ms. Russell's tent, discarding some items while storing or impounding others.

54.    Another tent had been erected that was treated as communal property of Plaintiff De-Occupy.

55.    This tent had not been tagged.

56.    City workers rummaged through that tent and discarded some items while storing others.

57.    The seized property was never returned.

58.    Post-seizure notice(s) or inventory of the seized items was neither provided to either Plaintiff nor was it posted in any conspicuous area.

59.    No hearing has ever been offered and/or provided to any Plaintiff or member(s) of Plaintiff De-Occupy concerning the seized and/or destroyed property; and no attempt has ever been made by the City or any other Defendant, their agencies or anyone acting on their behalf, to replace or refund the property or otherwise compensate Plaintiffs.

60.    These events are shown in Plaintiffs' Exhibits 5, 19, and 20.

**September 6, 2012**

61.    On September 6, 2012, there was a raid at Thomas Square.

62.     On September 6, 2012, there was sign erected at Thomas Square that quoted the Ninth Circuit Court of Appeals opinion styled *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012).

63.     The sign was not "tagged" 24 hours before the raid.

64.     City Workers seized and destroyed the sign.

65.     The sign belonged to and/or was created by Ms. Russell.

66.     There was no judicial determination of wrongdoing before the seizure or destruction of property.

67.     Post-seizure notice(s) or inventory of the seized items was neither provided to Ms. Russell nor posted in any conspicuous area as required by Chapter 29 Article 18.

68.     No hearing has ever been offered and/or provided to Ms. Russell concerning the seized and/or destroyed property, and no attempt has ever been made by the City or any other Defendant, their agencies, or anyone acting on their behalf to compensate Ms. Russell for seized or destroyed or unreturned the property.

69.     These events are shown in Plaintiffs' Exhibit 6.

## October 9, 2012

70.     On or about October 9, 2012, there was a raid conducted at Thomas Square.

71.    At least one Tulsi Gabbard campaign sign was erected at Thomas Square. The sign had an "X" painted or otherwise marked across then-candidate, Tulsi Gabbard's name.

72.    The signs were not "tagged" as required by Sections 29-19.3(b) or 29-19.4 of the Revised Ordinances of Honolulu.  No notice was given that the property was subject to seizure.

73.    Ms. Russell claimed ownership of and initially protested the seizure of the signs.

74.    Ms. Russell videotaped the seizure.

75.    Ms. Russell asked Defendant Chun why he was taking Ms. Russell's artwork and also why he was taking "untagged" property.

76.    Defendant Chun ignored Ms. Russell and walked away with the sign(s).

77.    Defendant Chun seized and destroyed the sign(s).

78.    There was no judicial determination of wrongdoing before the seizure or destruction of the sign.

79.    At some point, Defendant Chun attempted to have *Ms. Russell* arrested for "theft" pertaining to her claim of ownership of the sign(s).

80.    Post-seizure notice(s) or inventory of the seized items was neither provided to Ms. Russell nor posted in any conspicuous area

81.     No hearing has ever been offered and/or provided to Ms. Russell concerning the seized and/or destroyed sign(s), and no attempt has ever been made by the City or any other Defendant, their agencies, or anyone acting on their behalf to compensate Ms. Russell for the seized or destroyed or unreturned property.

82.     These events are shown in Plaintiffs' Exhibits 7, 21, 22, and 23.

### November 21, 2012

83.     On November 21, 2012, the day before Thanksgiving, a raid was conducted at Thomas Square.

84.     A tent was erected on the sidewalk of Beretania Street in front of Thomas Square.  There was writing on the tent.

85.     The tent belonged to Ms. Russell.

86.     The tent was seized and ripped by city workers.

87.     The tent contained Ms. Russell's personal property.

88.     Other personal property was also seized

89.     Some of that personal property belonged to Ms. Russell.

90.     The personal property that was seized and belonged to Ms. Russell includes:

    a.  Five chairs;

    b.  A blue tarp;

    c.  Two video cameras; and

    d.  Five other stowed tents.

91.    The chairs had been "tagged" the previous day.

92.    However, the chairs were not impounded.  Instead, they were discarded by city workers, who placed the chairs into the back of a garbage truck.

93.    The blue tarp had not been tagged.  The blue tarp was also discarded into the back of a garbage truck by city workers.

94.    A partial notice of the seizure was left.

95.    None of the destroyed property was listed on the notice.

96.    Only one of the two video cameras was listed on the notice.

97.    The notice also had originally stated that what is believed to be the "free speech" tent was seized.

98.    However, that was changed to state "ripped" tent after the Defendants effectively destroyed the tent.

99.    Plaintiff Christopher Smith had also erected four pallets that were being used as tables.

100.   These tables were used to disseminate information to the public.

101.   Two camping chairs were behind the table and were used by Mr. Smith and other members of De-Occupy to disseminate the information.

102.   These items were not "tagged."

103.   In addition, two untagged camping chairs were leaning against the rock wall on Thomas Square.

104.   These chairs were located outside the area around which the city workers had originally erected yellow.

105.   However, city workers extended the yellow tape and required Plaintiffs, Investigator Christopher Baker, and other members of the public to evacuate the newly expanded area.

106.   City workers seized and discarded property within this new boundary.

107.   Members of De-Occupy began to remove the property to a location outside the newly enclosed area.

108.   De-Occupy members were unable to remove the two camping chairs that leaned against the rock wall and that were enclosed within the newly surrounded area.

109.   Those chairs belonged to Mr. Smith.

110.   Those chairs were destroyed.

111.   In addition, five stowed tents were in a garbage bag that was located within the newly enclosed boundary.

112.   Ms. Russell owned the five tents.

113.   Of the five stowed tents, only one had been tagged.

114.   These tents were successfully removed from the newly enclosed area by De-Occupy members.

115.   However, someone acting on the City's behalf threw the garbage bag of tents over the wall at Thomas Square and back into the newly enclosed area.

116.   A city worker seized all five tents despite the fact that four of them were not tagged.

117.   That city worker was Defendant Chun.

118.   Only four of those tents were listed on the notice provided to Ms. Russell.

119.   However, the other tent appears to have been included on a separate notice of the seizure.

120.   Ms. Russell had also been using another camping chair on public property.

121.   That camping chair was untagged.

122.   Ms. Russell was using the chair to erect a protest sign.

123.   City workers also destroyed this chair.

124.   There was no judicial determination of wrongdoing before the seizure or destruction of any of this property.

125.   Post-seizure notice(s) or inventory of many of the seized items was neither provided to any Plaintiff (or any member of Plaintiff De-Occupy Honolulu) nor posted in any conspicuous area as required by Chapter 29 Article 18 following the this raid.

126.   No hearing has ever been offered and/or provided to any Plaintiff or member(s) of Plaintiff De-Occupy concerning the seized and/or destroyed

property; and no attempt has ever been made by the City or any other Defendant, their agencies or anyone acting on their behalf, to replace or refund the property or otherwise compensate Plaintiffs.

127.  Despite Plaintiffs' attempts to have the property returned, it was only after the hearing of January 17, 2013 which addressed the raid of December 20, 2012 that Ms. Russell's property was returned.

128.  At that hearing, there was a judicial finding that no adequate procedure for the return of the property existed and, the Court issued a specific directive to return Plaintiffs' property seized on December 20, 2012.

129.  Mr. Smith's property has not been returned.

130.  These events are shown in Plaintiffs' Exhibits 8, 9, 14, 24 and 25.

## December 20, 2012

131.  After the filing of the initial Complaint and Motion for a Temporary Restraining Order in this case, the parties reached an agreement in lieu of the potential issuance of a Temporary Restraining Order.  In relevant part, that agreement requires city workers to exercise "reasonable care" to prevent damage or destruction to seized property.  The agreement was memorialized in a Court Order entered December 19, 2012.

132.  Nevertheless, the very next day and on December 20, 2012, Defendant Shimizu supervised a raid on Thomas Square.

133.   During that raid, Plaintiff Dominic James' yellowish-gold tent was seized.

134.   City Workers stuffed the tent into a bin without removing at least two of the tent's poles.

135.   Those poles could have easily been removed.  Indeed, the City Workers did remove one pole and properly collapsed it.

136.   Mr. James was only able to retrieve the tent after this Court ruled that the procedures for retrieving stored property were insufficient.

137.   When Mr. James finally reacquired possession of his property, the fabric of the tent was torn and at least one pole was broken.

138.   No hearing has ever been offered or provided to Mr. James concerning the seized and/or destroyed property; and no attempt has ever been made by the City or any other Defendant, their agencies or anyone acting on their behalf, to replace or refund the property or otherwise compensate Mr. James.

139.   These events are shown in Exhibits 10 and 11.