IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DE-OCCUPY HONOLULU; CATHERINE RUSSELL; CHRISTOPHER SMITH; ANDREW SMITH; MADORI RUMPUNGWORN; DOMINIC JAMES; and JOHN DOES 1-50; <br><br> Plaintiffs, <br><br> vs. <br><br> CITY AND COUNTY OF HONOLULU; WESTLEY CHUN, in his personal and official capacity; TRISH MORIKAWA, in her personal and official capacity; LARRY SANTOS, in his personal and official capacity; KEN SHIMIZU, in his personal and official capacity; and JOHN DOES 1-50, <br><br> Defendants. | CIVIL NO. 12-00668 JMS-KSC <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

## I. INTRODUCTION

Plaintiffs De-Occupy Honolulu ("De-Occupy"), Catherine Russell,

Christopher Smith, Andrew Smith, Madori Rumpungworn, and Dominic James

(collectively, "Plaintiffs") are part of the "Occupy" movement that has taken place

throughout various cities.  Plaintiffs have maintained a constant presence at Honolulu's Thomas Square for over a year, where they have erected tents, signs, and other artwork.  Plaintiffs bring this action against Defendants City and County of Honolulu (the "City") and Westley Chun, Trish Morikawa, Larry Santos, and Ken Shimizu in their personal and official capacities ("Individual Defendants") (collectively, "Defendants"), who have conducted, participated, and/or overseen several impoundments of Plaintiffs' property at Thomas Square.  Defendants have conducted these impoundments pursuant to Chapter 29, Articles 18 and 19 of the Revised Ordinances of Honolulu ("ROH") ("Articles 18 and 19"), which provide that the City may seize personal property left on public property after providing twenty-four hours notice.  Plaintiffs assert that these ordinances and impoundments violate the First, Fourth, Fifth, and Fourteenth Amendment,[1] the Hawaii Constitution, and also assert related state law claims.

Currently before the court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") on the basis that it fails to assert a plausible claim for relief.  Based on the following, the court GRANTS in part and

---

[1] The First, Fourth, and Fifth Amendments apply to states and localities via incorporation by the Fourteenth Amendment.  *See, e.g.*, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 n.43 (1982) (First Amendment); *Baker v. McCollan*, 443 U.S. 137, 142 (1979) (Fourth Amendment); *Vance v. Barrett*, 345 F.3d 1083, 1088 n.4 (9th Cir. 2003) (Fifth Amendment).

DENIES in part Defendants' Motion.

## II. <u>BACKGROUND</u>

### A.   **Factual Background**

The SAC asserts various claims based on Defendants' activities in enforcing Articles 18 and 19.  The court first outlines the relevant provisions of these ordinances, and then addresses the allegations of the SAC.

#### *1.   Articles 18 and 19*

Article 18 is directed to having sidewalks available for use by pedestrians.  ROH § 29-18.1 provides that "only a pedestrian may use the pedestrian use zone," the boundaries of which the City may mark.  *See* ROH § 29-18.6.  This prohibition does not apply to individuals "who are engaged in expressive activities or who are using tables or other portable outdoor furniture or items for the purpose of displaying literature or other expressive material or otherwise directly facilitating expressive activities."  ROH § 29-18.4.  Pursuant to ROH § 29-18.5, "[a]ny person violating any provision of this article shall, upon conviction, be subject to a maximum penalty of $50.00."

Article 19 is directed to prohibiting stored personal property on public property.  The purpose of Article 19 is to "maintain public areas in clean, sanitary, and accessible condition, to prevent harm to the health or safety of the public, to

prevent the misappropriation of public property for personal use, and to promote the public health, safety and general welfare by ensuring that public property remains readily accessible for its intended uses." ROH § 29-19.1.

To that end, ROH § 29-19.3 prohibits persons from storing "personal property" on "public property." "Personal property" is defined as "any and all tangible property, and includes, but is not limited to, items, goods, materials, merchandise, furniture, equipment, fixtures, structures, clothing, and household items." ROH § 29-19.2. "Public property" is defined as "all property that is owned, managed or maintained by the city, and shall include, but not be limited to any street, sidewalk, replacement sidewalk, medial strip, space, ground, mall, building, structure, public park, and any other property of the city." *Id.*

ROH §§ 29-19.3 and 29-19.4 outline when the City may impound personal property located on public property. Pursuant to ROH § 29-19.3(a), the City may impound at any time "personal property placed on public property [that] interferes with the safe or orderly management of the premises or poses a threat to the health, safety, or welfare of the public." And pursuant to ROH § 29-19.3(b), the City may impound personal property on public property after giving twenty-four hours written notice requiring its removal. ROH § 29-19.4(a) provides that the written notice:

4

shall be deemed to have been served if a copy of the written notice is served on the person storing the personal property or is posted prominently and conspicuously on the stored personal property.  The written notice shall contain the following:

> (1) A description of the personal property to be removed (such description may refer to an attached photograph).
> (2) The location of the personal property.
> (3) The date and time the notice was posted.
> (4) The section of the ROH that is being violated.
> (5) A statement that the personal property will be impounded if not removed within 24 hours.
> (6) The location where the removed property will be stored.
> (7) A statement that impounded property will be sold or otherwise disposed of if not claimed within 30 days after impoundment.
> (8) A statement that the property owner shall be responsible for all costs of removal, storage and disposal.

Once personal property is impounded, ROH § 29-19.5(a) requires the City to store it, and the owner of the impounded property "shall be assessed moving, storage, and other related fees and costs" and "shall bear the responsibility for the risk of any loss or damage to the impounded property."

If the City wishes to dispose of the impounded items, "[a]t least 30 days prior to disposal of impounded personal property, the city shall serve notice in writing apprising the owner of the personal property of the description and location of the impounded personal property and of the intent of the city to sell, donate, or

otherwise dispose of the impounded property." ROH § 29-19.5(b). Alternatively, the City may auction, sell by negotiation, keep by the City, or donate to any other government agency or charitable organization impounded personal property. ROH § 29-19.5(c).

Prior to disposal, an owner may repossess his impounded property "upon submitting satisfactory proof of ownership or entitlement and payment of all unpaid rent, debts, and charges owing and all handling, storage, appraisal, advertising, and other expenses incurred by the city in connection with the proposed disposal of the impounded property." ROH § 29.19-7.

### 2.    *Allegations in the SAC*

As alleged in the SAC, Defendants have conducted multiple "raids" on Plaintiffs' encampment at Thomas Square in which they have seized property without providing the required twenty-four hours notice, destroyed property without impounding it, and provided no opportunity for a hearing for Plaintiffs to argue against the seizure and/or destruction. Doc. No. 80, SAC ¶¶ 5, 33. The SAC further details the events of particular raids occurring on February 15, 2012, March 29, 2012, June 28, 2012, August 8, 2012, September 6, 2012, October 9, 2012, November 21, 2012, and December 20, 2012. At these raids, Defendants have allegedly, among other things:

- seized property that had not been "tagged" with notice and/or that had been moved to private property, *id.* ¶¶ 36-40 (February 15, 2012), ¶ 63 (June 28, 2012), ¶ 77 (August 8, 2012), ¶¶ 110-26 (November 21, 2012);

- seized and/or destroyed signs (one protesting actions taken by the City against the homeless and another sign protesting a candidate for political office), even though such signs had not previously been tagged, *id.* ¶¶ 89-91 (September 6, 2012), ¶¶ 97-100 (October 9, 2012);

- discarded items they believed not worth preserving and/or that had not previously been tagged, *id.* ¶¶ 41-42 (February 15, 2012), ¶¶ 51-53 (March 29, 2012), ¶ 61 (June 28, 2012), ¶¶ 79, 84, 85 (August 8, 2012), ¶ 91 (September 6, 2012), ¶¶ 110-26 (November 21, 2012);

- failed to take due care in seizing tagged items, resulting in their destruction, *id.* ¶¶ 134-36 (December 20, 2012);

- failed to provide post-seizure notices or inventory of the seized items, and/or subsequently refused to return items on the basis that Plaintiffs did not adequately describe seized items (even though they had done so), *id.* ¶¶ 45-46 (February 15, 2012), ¶¶ 67, 70-72 (June 28, 2012), ¶¶ 82, 87 (August 8, 2012), ¶ 95 (September 6, 2012), ¶ 108 (October 9, 2012), ¶¶ 116, 129 (November 21, 2012);

7

- failed to provide any hearing concerning the seized and/or destroyed property, *id.* ¶¶ 47, 58, 62, 73, 76, 88, 93, 106, 127, 138 (all raids); and

- offered no compensation for destroyed and/or unreturned property, *id.* ¶¶ 47, 58, 73, 88, 96, 109, 130, 138 (all raids).

**B.     Procedural Background**

On December 12, 2012, Plaintiffs filed this action, and the SAC asserts claims titled: (1) Violation of Fourth Amendment; (2) Due Process Violation; (3) First Amendment Violation; (4) Takings Clause; (5) Conspiracy; (6) Failure to Train and Supervise; (7) Hawaii Constitution -- Unreasonable Seizure; (8) Hawaii Constitution -- Property and Due Process Protections; (9) Hawaii Constitution -- Freedom of Speech; (10) Hawaii Constitution -- Law of the Splintered Paddle; (11) Conversion; (12) Replevin; (13) Negligence; (14) Negligent Supervision and Training; (15) Trespass to Chattels; and (16) Fraud.  Doc. No. 80.

On April 1, 2013, Defendants filed their Motion to Dismiss.  Doc. No. 85.  Plaintiffs filed an Opposition on April 15, 2013, Doc. No. 91, and Defendants filed a Reply on April 29, 2013.  Doc. No. 94.  A hearing was held on May 17, 2013.

# III. STANDARDS OF REVIEW

## A.   Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## B.      Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. *Id.* (citation and quotation signals omitted). However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42

F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims." *Hydrick v. Hunter*, 449 F.3d 978, 988 (9th Cir. 2006) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## IV.  ANALYSIS

Defendants argue that the SAC fails to assert a plausible claim for relief for numerous reasons.[2]  The court addresses Defendants' arguments in turn.

---

[2]  At the May 17, 2013 hearing, Defendants raised arguments that were not addressed in the briefing on the Motion to Dismiss, including that Plaintiffs' facial constitutional challenges fail as a matter of law.  The court does not address arguments not raised in the parties' briefing. Plaintiffs did clarify, however, that they are asserting only an as-applied challenge as to their Fourth Amendment claim, and are asserting both facial and as-applied challenges as to their First and Fourteenth Amendment claims.

## A.     Claims Against Individual Defendants

The SAC asserts claims against the Individual Defendants in both their personal and official capacities.  Doc. No. 80, SAC ¶¶ 17-20.  Defendants argue that the court should dismiss the claims against the Individual Defendants because the SAC does not adequately assert personal-capacity federal claims, and all official capacity claims are redundant of the claims against the City.

As to federal law claims, "[p]ersonal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  To state a claim against an official in his personal capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  As described below, the SAC plausibly alleges that the Individual Defendants participated in numerous violations of Plaintiffs' constitutional rights.  The court therefore DENIES Defendants' Motion to Dismiss the SAC to the extent it asserts federal claims seeking damages against Individual Defendants in their personal capacities.[3]

As to the claims against Individual Defendants in their official

---

[3]  As discussed at the May 17, 2013 hearing, none of the Individual Defendants is still employed with the City.  As a result, Plaintiffs concede that they are not entitled to injunctive relief against them.

capacities, it is well settled that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under [*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)], . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Graham*, 473 U.S. at 167 n.14.  Rather, "[c]laims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002) (internal citations omitted); *see also Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff*, 533 F.3d 780, 799 (9th Cir. 2008) ("An official capacity suit against a municipal officer is equivalent to a suit against the entity.").  As a result, where both the public entity and an official are named in a lawsuit, a court may dismiss the individual named in his official capacity as a redundant defendant.  *See Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citations omitted)); *see, e.g.*, *Wong v. City & Cnty. of Honolulu*, 333 F. Supp. 2d 942, 947 (D. Haw. 2004) (dismissing both federal and state law claims against individuals in their official capacities).

Because the official-capacity claims are redundant of the claims

against the City, the court GRANTS Defendants' Motion to Dismiss all claims against Individual Defendants in their official capacities.

**B.      Standing of De-Occupy to Assert Claims for Damages**

Defendants argue that De-Occupy lacks standing to assert claims seeking damages.  At the May 17, 2013 hearing, Plaintiffs conceded that De-Occupy can seek damages on behalf of itself only and not its members.  *See also United Food & Commercial Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 553 (1996) (explaining that an association does not have standing to seek damages on behalf of its members because such relief requires the participation of individual members in the lawsuit).  The SAC asserts such injury to De-Occupy -- the SAC asserts that during the raids, communal property of De-Occupy was impermissibly seized and/or destroyed.  *See* Doc. No. 80, SAC ¶¶ 42, 85.  The court DENIES Defendants' Motion to Dismiss De-Occupy's claim of relief for damages.

**C.      Punitive Damages as to the City on 42 U.S.C. § 1983 claims**

Defendants argue that the City cannot be held liable for punitive damages arising out of a § 1983 claim.  *See* Doc. No. 84-2, Defs.' Mot. at 12. Because Plaintiffs correctly concede that they cannot recover punitive damages

from the City on these claims,[4] Doc. No. 91, Pls.' Opp'n at 14, *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), the court GRANTS Defendants' Motion to Dismiss Plaintiffs' claims against the City for punitive damages on their § 1983 claims.

**D.    Arguments as to Particular Claims of the SAC**

Defendants argue that each claim of the SAC[5] should be dismissed either for failure to allege sufficient facts to state a plausible claim as required by *Iqbal/Twombly*, or for lack of sufficient legal basis.  The court first addresses the sufficiency of the allegations, and then addresses Defendants' legal arguments.

### 1.    Sufficiency of Allegations for Counts I-III, VI, VII, XI, XIII, XVI

For numerous counts of the Complaint, Defendants argue, in largely conclusory fashion, that the SAC fails to include sufficient factual allegations to state plausible claims for relief.  Defendants primarily rely on the fact that each claim incorporates by reference the SAC's detailed factual allegations of eight separate raids without identifying which particular allegations are relevant to each

---

[4]  Indeed, at the May 17, 2013 hearing, Plaintiffs conceded that they cannot (and are not attempting to) recover punitive damages against the City as to both their federal and state law claims.  Thus, no claims for punitive damages against the City remain.

[5]  Defendants do not substantively address three Hawaii state constitutional claims (Counts VII-IX of the SAC), and at the May 17, 2013 hearing, the parties agreed that their arguments on Plaintiffs' parallel federal constitutional claims apply with equal force to these claims.

claim.

Iqbal explains that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Instead, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*  Under this framework, this is not a case where the SAC asserts only conclusory statements -- the SAC includes numerous factual allegations.  And considering the SAC in its entirety, it takes little effort to determine the factual basis for each claim asserted.[6] The court therefore determines whether the SAC includes sufficient factual allegations to support the claims for which Defendants raise this argument.

### a.    Counts I-III, XI, and XIII

The SAC outlines numerous alleged instances where Plaintiffs' property was seized, stored, and/or destroyed without Defendants even following the basic notice requirements outlined in Article 19.  These allegations state plausible claims that Defendants violated Plaintiffs' Fourth Amendment rights (Count I),[7] and the due process clause of the Fourteenth Amendment (Count II),

---

[6] And if Defendants were unsure as to the *scope* of certain claims, they should have raised such arguments in their Motion to Dismiss (or sought for clarification from Plaintiffs).

[7] As to the Fourth Amendment claim, Defendants further make a legal argument -- that Plaintiffs must allege a reasonable expectation of privacy to their property.  But this argument has been flatly rejected by *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012),

(continued...)

and support claims for conversion (Count XI), and replevin (Count XIII).[8]

And specific to the First Amendment claim (Count III), the SAC alleges that Defendants seized and destroyed Plaintiffs' signs protesting the City's homeless policies and a political candidate, as well as tables and chairs used to distribute materials.  Doc. No. 80, SAC ¶¶ 89-91, 97-100, 117-18.  These allegations raise the inference that Defendants' actions "would chill or silence a person of ordinary firmness from future First Amendment activities.'"[9]  *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).  The court therefore DENIES Defendants' Motion to Dismiss as to Counts I-III, XI, and XIII.

---

[7](...continued)
which held that the reasonableness of a plaintiff's "expectation of privacy is irrelevant as to the question [of] whether the Fourth Amendment protects [a plaintiff's] unabandoned property from unreasonable seizures."

[8]  Although a replevin claim may stand only as to those items that Defendants seized and did not destroy, *see Chong v. Young*, 39 Haw. 527, 529 (1952) ("In an action in replevin the burden is upon the plaintiff to show that he is entitled to immediate and exclusive possession of the property claimed."), the SAC adequately alleges that Defendants wrongfully seized and stored particular possessions of Plaintiffs.  Any ambiguity regarding whether particular items were stored or destroyed appears to be a product of the raids themselves and not a pleading inadequacy (the SAC asserts that Defendants failed to provide post-seizure notices or inventory of the seized items).  Further, that Defendants argue that they are willing to now return the seized property does not suggest that the SAC fails to assert a plausible replevin claim.

[9]  Defendants did not raise any arguments as to whether Plaintiffs could assert *particular* First Amendment claims.  Without briefing by the parties, the court does not address the viability of different theories of First Amendment violations (retaliation, facial, as-applied, etc.).
Defendants do, however, make several legal, one-sentence arguments.  *See* Doc. No. 84-2, Defs.' Mot. at 17.  Because these arguments are wholly conclusory and lack adequate explanation, the court does not address them here.

b. *Conspiracy (Count V)*

The SAC asserts that Defendants "have agreed and/or acted in concert amongst themselves or with others to violate the constitutional rights of the Plaintiffs," and that "[m]ultiple acts have been conducted in furtherance of this conspiracy."  Doc. No. 80, SAC ¶ 158.  Based on the following, the court finds that the SAC fails to state a plausible conspiracy claim pursuant to § 1983.[10]

To allege a conspiracy in violation of § 1983, a plaintiff must assert: (1) an agreement between the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in furtherance of the conspiracy; and (3) a constitutional violation.  *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998).  Mere conclusory allegations of conspiracy (*i.e.*, a bare allegation that defendants "conspired" with each other) are insufficient to state a claim.  *Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997); *see Olsen v. Idaho Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (stating that a plaintiff must plead "specific facts to support the existence of the claimed conspiracy") (citation omitted).  Rather, a plaintiff must allege "which defendants conspired, how they conspired and how the conspiracy led to a

---

[10]  At the May 17, 2013 hearing, Plaintiffs clarified that their claims for conspiracy (Count V) and failure to train or supervise (Count VI) are brought pursuant to 42 U.S.C. § 1983 and do not assert independent state law claims.

18

deprivation of his constitutional rights even though he does not identify which officer said or did what at which particular time." *Harris*, 126 F.3d at 1196.

Although the SAC outlines when certain Individual Defendants participated in particular raids, it fails to answer which Defendants participated in which raids, each Defendant's role in the particular raids, and which Defendants had an agreement to deprive Plaintiffs of their constitutional rights. With these unanswered questions, the SAC fails to state a plausible conspiracy claim. The court GRANTS Defendants' Motion to Dismiss Count V without prejudice.

### c. *Failure to Train or Supervise (Count VI)*

The SAC alleges that "Defendants failed to adequately train and supervise their officials, employees, and agents so as to prevent [the constitutional violations]," which "amounts to deliberate indifference to the rights of persons with whom Defendants come into contact, including those of the Plaintiffs." Doc. No. 80, SAC ¶¶ 160-61. The court rejects Defendants' argument that Plaintiffs have failed to allege a plausible claim for relief pursuant to 42 U.S.C. § 1983.

As explained in *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011), municipalities cannot be vicariously liable under § 1983, but instead are "responsible only for 'their *own* illegal acts.'" (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). A § 1983 plaintiff must therefore prove that an "official

19

municipal policy" caused a plaintiff's injury. *Id.* (citing *Monell*, 436 U.S. at 691).

Only in "limited circumstances" can such an "official municipal policy" arise from "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights." *Id.* "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). Thus, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (brackets omitted).

Proving "deliberate indifference" is not easy. *Connick* reiterated that "'[d]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 1360 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). Disregarding "a known or obvious consequence" means "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[.]" *Id.* If such notice exists, then a municipality "may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* (citing *Bryan*

20

*Cnty.*, 520 U.S. at 407).  In turn, to prove "actual or constructive notice" of a constitutionally-significant gap in training, it is "ordinarily necessary" to demonstrate "a pattern of similar constitutional violations by untrained employees."[11]  *Id.*

The SAC adequately alleges the elements of a failure to train claim. As explained above, the SAC asserts numerous violations of Plaintiffs' constitutional rights, which occurred over eight separate raids on Plaintiffs' Thomas Square encampment.  The SAC further asserts that each of the Individual Defendants are not only supervisors within their department, *see* Doc. No. 80, SAC ¶¶ 17-20, but directly supervised and participated in these raids.  Individual Defendants' direct oversight of the raids, combined with the pattern of alleged constitutional violations at these raids, is sufficient to suggest deliberate indifference as to the City.  *See Connick*, 131 S. Ct. at 1360 ("Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for

---

[11]  In comparison, the "single-incident theory" is possible only in a narrower range of circumstances.  *Connick*, 131 S. Ct. at 1360.  The situation is "rare" -- "the unconstitutional consequences of failing to train" must be "patently obvious" before a municipality can be liable under § 1983 without proof of a pre-existing pattern of violations.  *Id.*  And a violation of a protected right must be a "highly predictable consequence" of a decision not to train.  *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409).  Because the SAC fails to allege any basis for a single-incident theory of liability -- and indeed, such theory does not appear to apply to these facts -- the court assumes that Plaintiffs are proceeding under the multiple-incident theory of liability.

the consequences of their action -- the 'deliberate indifference' -- necessary to

trigger municipal liability." (quotations and citations omitted)).  The court

therefore DENIES Defendants' Motion to Dismiss Count VI of the SAC.

> d.  *Fraud (Count XVI)*

The SAC asserts that on October 9, 2012, Russell had retrieved from a

rubbish container political signs for Tulsi Gabbard, on which she drew a large "X"

in protest of Gabbard's policies pertaining the homeless.  Doc. No. 80, SAC

¶¶ 97-98.  Later that day, Chun allegedly seized and destroyed Russell's signs,

ignoring Russell's questions as to why he was taking untagged property.  *Id.*

¶ 101.  Instead, Chun, and/or Chun, Santos, Morikawa, and Shimizu together

misrepresented to Russell that the signs belonged to the "Gabbard Campaign,"

*id.* ¶¶ 101-02, 188, which the SAC asserts was an implicit threat to arrest or impose

a civil penalty on Russell.  *Id.* ¶ 188.  As a result of the misrepresentations, Russell

walked away from the signs, which were destroyed.  *Id.* ¶¶ 105, 188.  Defendants

argue that these allegations are insufficient to meet the heightened pleading

requirements that apply to claims of fraud.  The court agrees.

Although the SAC includes details regarding the time, place, and

nature of the alleged fraud, the SAC fails to allege all the elements of a fraud claim

and leaves certain details lacking.  Under Hawaii law, the elements of a fraud claim

are that: "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." *Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 386, 14 P.3d 1049, 1067 (2000) (internal quotation marks and citations omitted).  Reading Paragraphs 102 and 188 of the SAC together, there appears to be some conflict as to which Defendant(s) made the alleged misrepresentations -- paragraph 102 asserts that "Defendant Chun and/or another Defendant" told Russell that the signs belong to the "Gabbard Campaign," while paragraph 188 asserts that *all* of the Individual Defendants made this misrepresentation.  Given this ambiguity, it is unclear which Defendants made the misrepresentation, and when such conduct occurred.  The SAC also fails to allege that any of these Defendants knew that their statements regarding the signs were false (*i.e.*, that Russell retrieved them from the rubbish and was the lawful owner of them).  As a result, this claim falls short of Rule 9(b)'s pleading requirements.

The court therefore GRANTS Defendants' Motion to Dismiss Count XVI of the SAC without prejudice.

///

///

23

### 2.    *Defendants' Legal Arguments*

The court addresses each of Defendants' legal arguments as to the remaining claims.

### a.    *Takings Clause (Count IV)*

The SAC asserts that Defendants' seizure, disposal, and/or failure to return Plaintiffs' property in a usable condition violated the Takings Clause of the Fifth Amendment.  Doc. No. 80, SAC ¶¶ 155-56.  Defendants argue the SAC fails to allege a plausible claim for failure to allege that the "taking" was for "public use."  Doc. No. 84-2, Defs.' Mot. at 18-19.  The court agrees.

The Fifth Amendment provides that "private property [shall not] be taken for public use without just compensation."  U.S. Const. Amend. V.  The Supreme Court has defined "public use" broadly.  *See Kelo v. City of New London*, 545 U.S. 469, 483 (2005) (noting that the Supreme Court's "public use jurisprudence has . . . eschewed rigid formulas and intensive scrutiny in favor of affording legislatures broad latitude in determining what public needs justify the use of the takings power"); *Haw. Housing Auth. v. Midkiff*, 467 U.S. 229, 240 (1984) (holding that the scope of the "public use" requirement of the Taking Clause is "coterminous with the scope of the sovereign's police powers," and equating eminent domain power with police power).

24

"Public use" has not, however, been construed so broadly as to encompass the government's acquisition of property as the result of a lawful forfeiture.  For example, *Bennis v. Michigan*, 516 U.S. 442 (1996), addressed whether a state's sale of a car pursuant to an indecency statute[12] constituted a "public use" for purposes of the Takings Clause.  After determining that the sale did not violate the Fourteenth Amendment, *Bennis* concluded that the sale did not violate the Fifth Amendment's Takings Clause either:

> [I]f the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State.  The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.

*Id.* at 452; *See also Tate v. Dist. of Columbia*, 627 F.3d 904, 909 (D.C. Cir. 2010) (holding that impoundment and sale of a plaintiff's vehicle as a result of unpaid traffic fines did not "constitute a taking for public use" because "if the [government's] impoundment of Tate's vehicle did not deprive her of due process . . . then there was no unlawful taking and no compensation due for the lawful taking that did occur").

---

[12]  The vehicle had been impounded after the owner's husband was found with a prostitute in the vehicle.  *Bennis*, 516 U.S. at 453.

Applying these principles, if Plaintiffs establish their Fourth Amendment claim, then Defendants' interference with their property rights -- the seizure, storage and/or destruction of their personal property -- was unlawful. Such *unlawful* interference with Plaintiffs' property is not the proper subject of a Takings Clause claim.  *See Lingle v. Chevron U.S.A., Inc*., 544 U.S. 528, 543 (2005) (The Takings Clause only "requires compensation in the event of otherwise proper interference amounting to a taking.").  Yet if the Fourth Amendment claim fails, then the Takings Clause claim still fails because Defendants lawfully acquired Plaintiffs' personal property "under the exercise of governmental authority other than the power of eminent domain."  *Bennis*, 516 U.S. at 452.  *See also Sanchez v. City of Fresno*, 2012 WL 6719556, at *16 (E.D. Cal. Dec. 26, 2012) (applying this caselaw and rationale to dismiss without leave to amend Takings Clause claim directed to ordinance allowing immediate destruction of personal property found in public areas).  As a result, Plaintiffs' Takings Clause claim fails under either theory of liability.

The court therefore GRANTS Defendants' Motion to Dismiss Count IV of the SAC.  Because amending this claim would be futile, this dismissal is without leave to amend.

     b.     *Hawaii Constitution -- Law of the Splintered Paddle (Count X)*

The SAC asserts that Defendants violated the "law of the splintered paddle," Article 9, section 10 of the Hawaii Constitution. Doc. No. 80, SAC ¶ 170. Defendants argue, and the court agrees, that the law of the splintered paddle is not the proper basis for a substantive claim for relief.

Not all pronouncements in the Hawaii constitution create a private right of action. The Hawaii Supreme Court has explained:

> A constitutional provision is self-executing if it meets the following test adopted by the United States Supreme Court:
>
> > A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.
>
> [*Davis v. Burke*, 179 U.S. 399, 403 (1900)], quoting T. Cooley, Constitutional Limitations 99-100 (6th ed. 1890). Thus, a constitutional provision which only establishes a general principle is not self-executing and requires more specific legislation to make it operative.

*State v. Rodrigues*, 63 Haw. 412, 414, 629 P.2d 1111, 1113 (1981) (footnote omitted).

Article 9, section 10 of the Hawaii Constitution provides:

The law of the splintered paddle, mamala-hoe kanawai,

27

> decreed by Kamehameha I -- Let every elderly person, woman and child lie by the roadside in safety -- shall be a unique and living symbol of the State's concern for public safety.
>
> The State shall have the power to provide for the safety of the people from crimes against persons and property.

As is clear from this language, the law of the splintered paddle serves only as a "symbol of the State's concern for public safety." In other words, it provides a general principle and is not self-executing. Indeed, the second sentence of the provision vests power in the State, not individuals, "to provide for the safety of the people from crimes against persons and property."

The court therefore GRANTS Defendants' Motion to Dismiss as to Count X of the SAC. Because amending this claim would be futile, this dismissal is without leave to amend.

c.    *Negligence (Count XIII)*

The SAC asserts that the "damage, destruction and or failure to return Plaintiffs' property was foreseeable and proximately caused by the negligence, gross negligence and/or negligent omissions of Defendants or their official[s], employees and/or agents." Doc. No. 80, SAC ¶ 178. Defendants argue that this claim fails because absent allegations of malice, non-judicial government officials are subject to a qualified or conditional privilege.

"Under Hawaii state law, nonjudicial government officials performing

a public duty enjoy qualified or conditional immunity when sued under state law." *Dowkin v. Honolulu Police Dep't*, 2010 WL 4961135, at *8 (D. Haw. Nov. 30, 2010) (citing *Towse v. State*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1981)). This immunity does not apply, however, "if the official was motivated by malice and not by an otherwise proper purpose." *Id.* (citing *Kajiya v. Dep't of Water Supply*, 2 Haw. App. 221, 629 P.2d 635, 640 (1981); *Medeiros v. Kondo*, 55 Haw. 499, 522 P.2d 1269, 1271-72 (1974)). "Malice" means "the intent, without justification or excuse, to commit a wrongful act," "reckless disregard of the law or of a person's legal right," and "ill will; wickedness of heart." *Id.* (citing *Awakuni v. Awana*, 115 Haw. 126, 141, 165 P.3d 1027, 1042 (2007)). As a result, Plaintiffs must allege malice for their negligence claim to stand.

Although the SAC does not use the term "malice" in its allegations, it alleges numerous events from which malice may be inferred as to certain Defendants, including, for example, that (1) Defendants Santos, Chun, and Morikawa chased Plaintiffs onto private property, coerced the private property owner to request Plaintiffs' removal, and then seized and destroyed their belongings, Doc. No. 80, SAC ¶¶ 38-40; and (2) Chun destroyed Rumpungworn's tent despite her pleas to retrieve her property. *Id.* ¶¶ 51-52. The SAC does not, however, assert any specific allegations as to Shimizu from which the court can

29

infer malice.  The court therefore GRANTS the Motion to Dismiss the negligence claim as to Shimizu without prejudice, and DENIES the Motion as to the other Defendants.

### d.    Negligent Supervision and Training (Count XIV)

The SAC alleges that the City and its officials, "acting within the scope of their employment negligently supervised and/or trained and/or failed to supervise or train the individual Defendants, who were unfit for the performance of their duties as those duties relate to Plaintiffs and their property."  Doc. No. 80, SAC ¶ 182.  Defendants argue that this claim must be dismissed for failure to allege that Defendants were acting outside the scope of their employment.

"To state a claim for negligent supervision/failure to control under Hawaii law, a plaintiff must allege that the employees who committed the wrongful acts were acting outside the scope of their employment."  *Dawkins v. City of Honolulu*, 761 F. Supp. 2d 1080, 1093 (D. Haw. 2010) (citing *Pulawa v. GTE Hawaiian Tel*, 112 Haw. 3, 143 P.3d 1205, 1220 (2006)).  "A negligent supervision claim is mutually exclusive with a claim based on respondeat superior, because the latter requires that the employee have acted within the scope of his employment."  *Id.* (citing *Wong-Leong v. Hawaiian Indep. Refinery, Inc*., 76 Haw. 433, 879 P.2d 538, 543-44 (1994)).

30

The SAC does not assert that any employees were acting outside the scope of their employment, and therefore does not assert a claim for negligent supervision and training.  In opposition, Plaintiffs argue that they need discovery "to ascertain whether the individual defendants were acting within the scope of their employment or outside the scope of their employment."  Doc. No. 91, Pls.' Opp'n at 27.  Such need for discovery, however, does not release Plaintiffs from their duty to allege plausible claims for relief.  And to the extent that through discovery Plaintiffs may discern the basis for additional claims, they may seek leave to amend the SAC as allowed by Rules 15 and 16.  The court GRANTS Defendants' Motion to Dismiss Count XIV without prejudice.

>    e.    *Trespass to Chattels (Count XV)*

The SAC asserts that Defendants have "intentionally interfered" with Plaintiffs' lawful possession and/or use of their personal property, which constitutes a trespass to chattels.  Doc. No. 80, SAC ¶ 185.  Defendants argue that this claim should be dismissed because Hawaii courts have not recognized such claim, and in any event the allegations are conclusory and Defendants have qualified immunity.

At this time and without more thorough briefing from the parties, the court declines to find that Hawaii courts would reject a trespass to chattels as a

matter of law.  Although the court is aware of no published Hawaii case addressing

such claim, the Restatement (Second) of Torts § 217 outlines such claim and

Hawaii courts have relied on the Restatement as persuasive authority in numerous

instances.[13]  The court further rejects that the allegations of the SAC are too

conclusory and/or fail to allege malice (at least as to Chun, Morikawa, and Santos)

for the same reasons explained above.  The court therefore DENIES the Motion as

to the City, Chun, Morikawa, and Santos, and GRANTS the Motion as to Shimizu

without prejudice.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS in part and DENIES part

Defendants' Motion to Dismiss the SAC.  Remaining in this action are Counts I-

III, VI-IX, XI, and XII of the SAC as to all Defendants, and Counts XIII and XV

as to all Defendants except Shimizu.  The remaining federal claims (Counts I-III)

stand as to the City to the extent they seek compensatory damages and injunctive

relief only, and as to the Individual Defendants in their personal capacities to the

---

[13]   *See, e.g.*, *Hac v. Univ. of Haw.*, 102 Haw. 92, 106, 73, P.3d 46, 60 (2003) (discussing
and adopting Restatement (Second) of Torts' formulation for intentional infliction of emotional
distress claim); *Touchette v. Ganal*, 82 Hawaiʻi 293, 298-99, 922 P.2d 347, 352-53 (1996)
(stating that Hawaii follows § 315 of the Restatement (Second) of Torts regarding special
relations tort liability); *Smith v. Cutter Biol., Inc., a Div. of Miles Inc.*, 72 Haw. 416, 430, 823
P.2d 717, 725 (1991) (discussing alternative liability in § 433B of the Restatement (Second) of
Torts); *see also Bynum v. Magno*, 106 Haw. 81, 86 n.12, 101 P.3d 1149, 1154 n.12 (2004) ("This
court has many times relied on the Restatement (Second) of Torts as persuasive authority.").

extent they seek damages.

By June 10, 2013, Plaintiffs may file a Third Amended Complaint as to Count V (conspiracy pursuant to 42 U.S.C. § 1983), Count XIV (negligent supervision and training), and Count XVI (fraud), as well as to Counts XIII (negligence) and Count XV (Trespass to Chattels) as to Shimizu.  Plaintiff is notified that a Third Amended Complaint will supersede the SAC.  *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the court will treat the SAC as nonexistent.  *Ferdik*, 963 F.2d at 1262.  Leave to amend is limited to the claims addressed in this Order; if Plaintiffs wish to assert any new claims, they must comply with Rules 15 and/or 16.  If Plaintiffs fail to file a Third Amended

///

///

///

///

///

///

///

///

Complaint by June 10, 2013, this action will proceed as to the claims remaining in the SAC.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, May 21, 2013.



      /s/ J. Michael Seabright
      J. Michael Seabright
      United States District Judge

*De-Occupy Honolulu et al. v. City & Cnty. of Honolulu et al.*, Civ. No. 12-00668 JMS-KSC, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Second Amended Complaint