IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DE-OCCUPY HONOLULU; CATHERINE RUSSELL; CHRISTOPHER SMITH; ANDREW SMITH; MADORI RUMPUNGWORN; DOMINIC JAMES; and JOHN DOES 1-50;<br><br>           Plaintiffs,<br><br>   vs.<br><br>CITY AND COUNTY OF HONOLULU; WESTLEY CHUN, in his personal and official capacity; TRISH MORIKAWA, in her personal and official capacity; LARRY SANTOS, in his personal and official capacity; KEN SHIMIZU, in his personal and official capacity; and JOHN DOES 1-50,<br><br>           Defendants.<br>_____ | CIVIL NO. 12-00668 JMS-KSC<br><br>ORDER DENYING PLAINTIFFS' SUPERCEDING MOTION FOR PRELIMINARY INJUNCTION, DOC. NO. 85, ON PLAINTIFFS' FACIAL CONSTITUTIONAL CHALLENGES |

**ORDER DENYING PLAINTIFFS' SUPERCEDING MOTION FOR PRELIMINARY INJUNCTION, DOC. NO. 85, ON PLAINTIFFS' FACIAL CONSTITUTIONAL CHALLENGES**

**I.   INTRODUCTION**

Plaintiffs De-Occupy Honolulu, Catherine Russell, Christopher Smith, Andrew Smith, Madori Rumpungworn, and Dominic James ("Plaintiffs") are part of the "Occupy" movement that has taken place throughout various cities.

Plaintiffs have maintained a constant presence at Honolulu's Thomas Square for over a year, where they have erected tents, signs, and other artwork.  Plaintiffs bring this action against Defendants City and County of Honolulu (the "City") and Westley Chun, Trish Morikawa, Larry Santos, and Ken Shimizu in their personal and official capacities (collectively, "Defendants"), who have conducted, participated, and/or overseen several impoundments of Plaintiffs' property at Thomas Square.  Defendants have conducted these impoundments pursuant to Chapter 29, Articles 18 and 19 of the Revised Ordinances of Honolulu ("ROH"), which provide that the City may seize personal property left on public property after providing twenty-four hours notice.  Plaintiffs assert that these ordinances and impoundments violate the First, Fourth, Fifth, and Fourteenth Amendments, and the Hawaii Constitution, and assert related state law claims.

Currently before the court is Plaintiffs' Superceding Motion for Preliminary Injunction, Doc. No. 85, in which Plaintiffs argue that they are entitled to injunctive relief because ROH Art. 19 ("Article 19") on its face violates the First Amendment and the due process clause of the Fourteenth Amendment.  Although Plaintiffs also initially raised as-applied challenges, the parties subsequently agreed that they will enter into a Stipulated Injunction addressing these claims.  As a result, the court addresses Plaintiffs' facial challenge only, and DENIES Plaintiffs'

Superceding Motion for Preliminary Injunction on the facial challenges.

## II. BACKGROUND

### A. Factual Background

The only claims at issue for purposes of the Motion for Preliminary Injunction are Plaintiffs' claims that Article 19 is facially invalid.

Article 19 is directed to prohibiting stored personal property on public property. The purpose of Article 19 is to "maintain public areas in clean, sanitary, and accessible condition, to prevent harm to the health or safety of the public, to prevent the misappropriation of public property for personal use, and to promote the public health, safety and general welfare by ensuring that public property remains readily accessible for its intended uses." ROH § 29-19.1.

To that end, ROH § 29-19.3 prohibits persons from storing "personal property" on "public property." "Personal property" is defined as "any and all tangible property, and includes, but is not limited to, items, goods, materials, merchandise, furniture, equipment, fixtures, structures, clothing, and household items." ROH § 29-19.2. "Public property" is defined as "all property that is owned, managed or maintained by the city, and shall include, but not be limited to any street, sidewalk, replacement sidewalk, medial strip, space, ground, mall, building, structure, public park, and any other property of the city." *Id.*

ROH §§ 29-19.3 and 29-19.4 outline when the City may impound personal property located on public property. Pursuant to ROH § 29-19.3(a), the City may impound at any time "personal property placed on public property [that] interferes with the safe or orderly management of the premises or poses a threat to the health, safety, or welfare of the public." And pursuant to ROH § 29-19.3(b), the City may impound personal property on public property after giving twenty-four hours written notice requiring its removal. ROH § 29-19.4(a) provides that the written notice:

> shall be deemed to have been served if a copy of the written notice is served on the person storing the personal property or is posted prominently and conspicuously on the stored personal property. The written notice shall contain the following:
> (1) A description of the personal property to be removed (such description may refer to an attached photograph).
> (2) The location of the personal property.
> (3) The date and time the notice was posted.
> (4) The section of the ROH that is being violated.
> (5) A statement that the personal property will be impounded if not removed within 24 hours.
> (6) The location where the removed property will be stored.
> (7) A statement that impounded property will be sold or otherwise disposed of if not claimed within 30 days after impoundment.
> (8) A statement that the property owner shall be responsible for all costs of removal, storage and disposal.

Once personal property is impounded, ROH § 29-19.5(a) requires the City to store it, and the owner of the impounded property "shall be assessed moving, storage, and other related fees and costs" and "shall bear the responsibility for the risk of any loss or damage to the impounded property."

If the City wishes to dispose of the impounded items, "[a]t least 30 days prior to disposal of impounded personal property, the city shall serve notice in writing apprising the owner of the personal property of the description and location of the impounded personal property and of the intent of the city to sell, donate, or otherwise dispose of the impounded property." ROH § 29-19.5(b). Alternatively, the City may auction, sell by negotiation, keep by the City, or donate to any other government agency or charitable organization impounded personal property. ROH § 29-19.5(c).

Prior to disposal, an owner may repossess his impounded property "upon submitting satisfactory proof of ownership or entitlement and payment of all unpaid rent, debts, and charges owing and all handling, storage, appraisal, advertising, and other expenses incurred by the city in connection with the proposed disposal of the impounded property." ROH § 29.19-7.

///

///

**B.     Procedural Background**

On December 12, 2012, Plaintiffs filed this action, and their Second Amended Complaint asserts claims titled: (1) Violation of Fourth Amendment; (2) Due Process Violation; (3) First Amendment Violation; (4) Takings Clause; (5) Conspiracy; (6) Failure to Train and Supervise; (7) Hawaii Constitution -- Unreasonable Seizure; (8) Hawaii Constitution -- Property and Due Process Protections; (9) Hawaii Constitution -- Freedom of Speech; (10) Hawaii Constitution -- Law of the Splintered Paddle; (11) Conversion; (12) Replevin; (13) Negligence; (14) Negligent Supervision and Training; (15) Trespass to Chattels; and (16) Fraud.  Doc. No. 80.

On April 1, 2013, Plaintiffs filed their Superceding Motion for Preliminary Injunction.  Doc. No. 85.  Defendants filed an Opposition on April 15, 2013, Doc. No. 90, and Plaintiffs filed a Reply on April 29, 2013.  Doc. No. 95.  At a May 10, 2013 status conference, the parties agreed that although Plaintiffs had raised both facial and as-applied challenges to Article 19, the parties would be able to reach an agreement regarding a stipulated injunction as to Plaintiffs' as-applied claims, leaving only the facial challenge for the court to decide.  On May 15, 2013, Defendants submitted supplemental briefing on the facial due process challenge. Doc. No. 122.  A hearing was held on May 17, 2013.

## III. **STANDARD OF REVIEW**

"A preliminary injunction is an extraordinary and drastic remedy [that] is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation and quotation signals omitted). To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). So long as all four parts of the *Winter* test are met, "a preliminary injunction [may] issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132.

## IV. **ANALYSIS**

To be entitled to preliminary injunctive relief under *Winter*, Plaintiffs must "make a showing on all four prongs." *Id.* Based on the following, the court finds that Plaintiffs have failed to establish that they are entitled to preliminary

7

injunctive relief as to any of their facial challenges at this time because Plaintiffs have failed to establish at least one prong for each claim.

**A.   First Amendment**

Plaintiffs seek preliminary injunctive relief on the basis that Article 19 is "overly broad and/or serves as a prior restraint to vigils or demonstrations lasting more than 24 hours" and therefore violates the First Amendment.  Doc. No. 85-1, Pls.' Mot. at 14.  Plaintiffs are not likely to succeed on this facial challenge.

   *1.   Overbreadth*

The overbreadth doctrine protects against the chill of constitutionally protected speech that may arise from a threat of enforcement of an overbroad law. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (en banc) ("*Redondo Beach*").  "In a facial challenge to a law's validity under the First Amendment, the 'law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* (quoting *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010)).  Plaintiffs "need not necessarily introduce admissible evidence of overbreadth, but generally must at least 'describe the instances of arguable overbreadth of the contested law.'" *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (9th Cir. 2008)).

A content-neutral ordinance such as Article 19[1] is subject to intermediate scrutiny under the "time, place, and manner" test. *See id.* at 945. Under this test, "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

Applying these principles, Article 19 -- to the extent it regulates speech[2] -- is a reasonable "time, place, and manner" restriction.[3] First, Article 19 is justified without reference to the content of any speech -- Article 19 prohibits the storage of private property on public property so that public property is available for use by all persons. Second, Article 19 is narrowly tailored to prohibit the

---

[1] At the May 17, 2013 hearing, Plaintiffs conceded that Article 19 is content-neutral.

[2] Article 19 does not directly regulate speech, instead, it prohibits personal property from being stored on public property for more than twenty-four hours. It may arguably regulate speech, however, to the extent it prevents an individual from engaging in expression using personal property on public property for more than twenty-four hours. Because the court finds that the Article 19 does not meet the "time, place, and manner" test, the court assumes without deciding that Article 19 in fact regulates speech for purposes of the analysis.

[3] That Article 19 regulates speech on public sidewalks, which "'occup[y] a special position in terms of First Amendment protection,'" *Redondo Beach*, 657 F.3d at 944, does not change the analysis. Courts nonetheless apply the "time, place, and manner" to such regulations. *See, e.g.*, *id.*; *Snyder v. Phelps*, 131 S. Ct. 1207, 1218 (2011).

storage of private property on public property -- Article 19 does not ban all personal property on public property, only personal property left on public property for more than twenty-four hours. *Ward*, 491 U.S. at 798 (explaining that an ordinance "need not be the least restrictive or least intrusive means of" achieving the government's goals, but it may not "burden substantially more speech than is necessary"). As a result, Article 19 affects at most only a minute sliver of protected speech -- individuals who wish to engage in protected speech for more than twenty-four hours using personal property to engage in such speech. Third, given the small amount of protected speech affected, Article 19 still leaves open numerous alternative channels for protected speech. *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

        The court therefore finds that Plaintiffs are not likely to succeed on their facial overbreadth challenge and are therefore not entitled to preliminary injunctive relief on this claim. *See, e.g.*, *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776-77 (9th Cir. 2011) (determining that where claimant failed to establish likelihood of success on the merits, the court "need not consider the remaining three" elements for preliminary injunctive relief).

///

///

### 2. *Prior Restraint*

The prior restraint doctrine provides that "a law cannot condition the free exercise of First Amendment rights on the unbridled discretion of government officials." *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 687 (9th Cir. 2010) (quoting *Desert Outdoor Adver. v. City of Moreno Valley,* 103 F.3d 814, 818 (9th Cir. 1996) (internal quotation marks omitted)). "Unbridled discretion challenges typically arise when discretion is delegated to an administrator, police officer, or other executive official," as opposed to a legislative body. *Id.* (quoting *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1042 (9th Cir. 2009)). The prior restraint doctrine generally applies in the licensing context, requiring an "official to provide an explanation for his decision." *Id.* (quoting *Long Beach Area Peace Network*, 574 F.3d at 1025).

The prior restraint doctrine does not apply to Article 19. Article 19 neither creates a permitting structure, nor gives any City officials unbridled discretion in determining when to impound items of personal property. Rather, Article 19 outlines that the City may impound personal property left on public property only if it poses a threat the "health, safety, or welfare of the public," or only after giving twenty-four hours notice. ROH § 29-19-3. The court therefore finds that Plaintiffs are not likely to succeed in establishing that Article 19 is an

impermissible prior restraint, and are therefore not entitled to preliminary injunctive relief on this claim.

**B.     Due Process -- Lack of Hearing**

Plaintiffs assert that Article 19 violates the due process clause of the Fourteenth Amendment because it offers no opportunity for hearing, whether before or after the seizure of personal property.

Under the Fourteenth Amendment, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of laws." U.S. Const. amend. XIV. "Property" for purposes of the Fourteenth Amendment includes an individual's personal possessions. *See Fuentes v. Shevin*, 407 U.S. 67, 84 (1972). Where a protected interest is implicated, the relevant question is "what procedures constitute 'due process of law.'" *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1031 (9th Cir. 2012) (quoting *Ingraham v. Wright*, 430 U.S. 651, 672 (1977)).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "This inquiry [] examine[s] the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon v.*

12

*Burch*, 494 U.S. 113, 126 (1990). As *Mathews* outlines, determination of what process is due is a fact-specific inquiry requiring consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Applying these principles, there is no dispute that Plaintiffs have a property interest in their possessions that are impounded and stored pursuant to Article 19. *See Lavan*, 693 F.3d at 1031 (determining that plaintiffs have a property "interest in the continued ownership of their personal possessions"). Thus, the relevant question is whether Plaintiffs have a likelihood of success in establishing that Article 19 violates the Fourteenth Amendment for failure to provide either a pre- or post- deprivation hearing. Considering the *Mathews* factors, the court finds that Plaintiffs have not carried their burden.

First, the court recognizes that a strong private interest exists in Plaintiffs' continued ownership of their possessions, especially given that the possessions impounded under Article 19 may be everything that a homeless

individual owns. *See, e.g.*, *id.* at 1032 ("For many of us, the loss of our personal effects may pose a minor inconvenience. However, . . . the loss can be devastating for the homeless." (quoting *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1559 (S.D. Fla. 1992)); *see also Kincaid v. City of Fresno*, 2006 WL 3542732, at *37 (E.D. Cal. Dec. 8, 2006) ("[A] homeless person's personal property is generally all he owns; therefore, while it may look like 'junk' to some people, its value should not be discounted." (quotations and citations omitted)).

Yet Article 19 includes several safeguards to prevent the erroneous deprivation of Plaintiffs' property, including that the City must: (1) provide twenty-four hours written notice before items are seized, ROH §§ 29-19.3(b), 29-19.4(a); (2) provide post-seizure notice describing the items that have been taken and the location where they may be retrieved, ROH § 29-19.5(b);[4] and (3) hold seized items for at least thirty days before destruction. *Id.* Thus, at every step -- pre-seizure, post-seizure, and pre-destruction -- the City is required to "announce its intentions" and allow Plaintiffs the opportunity to either move their items away from public property to avoid seizure or retrieve them post-seizure.[5]

---

[4] This post-seizure notice must be served on the owner of the impounded property if known, or "posted for three consecutive days on the public property where the property was stored or seized" if the owner is not known. ROH § 29-19.5(b).

[5] Article 19 stands in stark contrast to other ordinances allowing immediate seizure and
(continued...)

*See Lavan*, 693 F.3d at 1032 ("[T]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." (quoting *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008)). By giving these opportunities to prevent permanent deprivation of Plaintiffs' possessions, the process outlined in Article 19 appears wholly reasonable, *see Lavan*, 693 F.3d at 1032 ("[D]ue process requires law enforcement "to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." (quoting *City of West Covina v. Perkins,* 525 U.S. 234, 240 (1999)), and Plaintiffs offer no explanation of how a hearing would add any additional value to prevent the erroneous deprivation of personal property.[6] Indeed, to avoid seizure of their

---

[5](...continued)
destruction of property, which were determined to violate due process. *See, e.g.*, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982) ("[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."); *Lavan*, 693 F.3d at 1033 ("The district court did not abuse its discretion when it found a likelihood of success on Appellees' Fourteenth Amendment claims, as the City admits it failed utterly to provide any meaningful opportunity to be heard before or after it seized and destroyed property belonging to Skid Row's homeless population."); *Propert v. Dist. of Columbia*, 948 F.2d 1327, 1335 (D.C. Cir. 1991) ("Although [a municipality] may have a strong interest in the prompt removal of supposed junk vehicles from the streets, its interest in the immediate destruction of such vehicles is far from apparent."); *Kincaid*, 2006 WL 3542732, at *38 ("The City's process, or lack thereof, creates not just the risk, but the certainty of erroneous deprivation.").

[6] The court recognizes that some broad language in *Stypmann v. City & Cnty. of San Francisco*, 557 F.2d 1338, 1344 (9th Cir. 1977), suggests that a hearing is generally required, whether pre- or post-seizure. *See id.* ("Seizure of property without prior hearing has been

(continued...)

property, Plaintiffs may simply remove their items from public property within twenty-four hours of notice being posted, and to avoid their destruction, Plaintiffs may simply seek their return from the City. Given these multiple opportunities to prevent permanent deprivation, a hearing, whether pre- or post-seizure, would add little to prevent an erroneous deprivation.

Also weighing against additional procedures is that the City has a substantial interest in ensuring that public property is available for use by everyone. Article 19 articulates its purpose as to "maintain public areas in clean, sanitary, and accessible condition, to prevent harm to the health or safety of the public, to prevent the misappropriation of public property for personal use, and to promote the public health, safety and general welfare by ensuring that public property remains readily accessible for its intended uses." ROH § 29-19.1. Article

---

[6](...continued)
sustained only where the owner is afforded prompt post-seizure hearing at which the person seizing the property must at least make a showing of probable cause."). The court does not construe *Stypmann*, however, as requiring a "hearing" in the formal sense where Article 19 provides twenty-four hours notice before the seizure, and further provides that the owner of impounded property may simply obtain its return by establishing proof of ownership. Under such circumstances, a hearing would add nothing to prevent an erroneous deprivation, which in any event could be adequately addressed through state tort law. *See Catron v. City of St. Petersburg*, 2009 WL 3837789, at *8 (M.D. Fla. Nov. 17, 2009) (determining that state tort law provided adequate due process for any negligent loss of seized property under ordinance similar to the City's ordinance in this action) (citing *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981) (finding a pre-deprivation hearing unworkable because a state cannot predict the negligent loss of property), *overruled by Daniels v. Williams*, 474 U.S. 327, 336 (1986), (finding that no Section 1983 liability arises out of a government official's negligent act)).

19 balances this interest with Plaintiffs' rights to their possessions through the multiple opportunities given for Plaintiffs to avoid seizure and/or destruction of their property. A hearing -- either pre- or post-seizure -- would certainly increase the administrative burden of ensuring that public property is available for use by the entire public, and as explained above, would add little procedural safeguard of preventing erroneous deprivation of stored property on public property.

Considering these *Mathews* factors together, the court finds that Plaintiffs are not likely to succeed on their claim that Article 19 requires a pre- or post-deprivation hearing. As a result, Plaintiffs are not entitled to preliminary injunctive relief on this claim.

**C.    Due Process -- Fee Requirement for Return of Impounded Items**

Plaintiffs assert that Article 19's requirement that owners pay certain fees[7] before repossessing their property violates due process. Because Plaintiffs have not established the likelihood of irreparable harm on this claim, the court rejects that Plaintiffs are entitled to preliminary injunctive relief.[8]

---

[7] Specifically, ROH § 29-19.8 provides that a person may repossess their seized property upon "payment of all unpaid rent, debts, and charges owing and all handling, storage, appraisal, advertising, and other expenses incurred by the city in connection with the proposed disposal of the impounded property." ROH 29-19.5 also provides that "the owner shall be assessed moving, storage, and other related fees and costs" of impounded property.

[8] Because Plaintiffs have not established irreparable harm, the court does not address the likelihood of success on the merits on this claim. *See Alliance for Wild Rockies*, 632 F.3d at

(continued...)

19 balances this interest with Plaintiffs' rights to their possessions through the multiple opportunities given for Plaintiffs to avoid seizure and/or destruction of their property. A hearing -- either pre- or post-seizure -- would certainly increase the administrative burden of ensuring that public property is available for use by the entire public, and as explained above, would add little procedural safeguard of preventing erroneous deprivation of stored property on public property.

Considering these *Mathews* factors together, the court finds that Plaintiffs are not likely to succeed on their claim that Article 19 requires a pre- or post-deprivation hearing. As a result, Plaintiffs are not entitled to preliminary injunctive relief on this claim.

**C.    Due Process -- Fee Requirement for Return of Impounded Items**

Plaintiffs assert that Article 19's requirement that owners pay certain fees[7] before repossessing their property violates due process. Because Plaintiffs have not established the likelihood of irreparable harm on this claim, the court rejects that Plaintiffs are entitled to preliminary injunctive relief.[8]

---

[7] Specifically, ROH § 29-19.8 provides that a person may repossess their seized property upon "payment of all unpaid rent, debts, and charges owing and all handling, storage, appraisal, advertising, and other expenses incurred by the city in connection with the proposed disposal of the impounded property." ROH 29-19.5 also provides that "the owner shall be assessed moving, storage, and other related fees and costs" of impounded property.

[8] Because Plaintiffs have not established irreparable harm, the court does not address the likelihood of success on the merits on this claim. *See Alliance for Wild Rockies*, 632 F.3d at

(continued...)

Although Article 19 requires the payment of fees, in their supplemental briefing and at the May 17, 2013 hearing, counsel for the City represented that the City has not charged any fees (including charges for handling, storage, etc.) to property owners seeking return of their impounded personal property. Indeed, the City cannot charge fees at this time -- such fees and costs must be first approved and "fixed" by the City Council. Specifically, the Revised Charter of Honolulu (2000) § 3-112 provides that "[t]he council shall by ordinance fix the fees and charges for all services rendered by the city and for the use of city property and facilities, except as otherwise provided by this charter." In other words, before the City can charge any fees on property owners in relation to Article 19, the City Council will first need to take action, and the City Council thus far has failed to do so.

In light of these facts, Plaintiffs cannot establish irreparable harm at this time -- the City cannot seek fees unless and until the City Council fixes such fees, and whether and when such event occurs is entirely speculative. Because

---

[8](...continued)
1135; *see also Amylin Pharm., Inc. v. Eli Lilly & Co.*, 456 Fed. Appx. 676, 679 (9th Cir. 2011) ("To support injunctive relief, harm must not only be irreparable, it must be imminent; establishing a threat of irreparable harm in the indefinite future is not enough. Rather, a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." (quotations and citations omitted)). Given the court's finding of no possibility of irreparable harm, this Order should not be construed as providing any determination of the merits of this claim.

Plaintiffs cannot establish irreparable harm on this claim, Plaintiffs are not entitled to preliminary injunctive relief. Of course, if the City takes steps to fix the fees and/or otherwise charges fees to property owners seeking repossession of the impounded property, Plaintiffs may renew their request for preliminary injunctive relief on this claim.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## V. CONCLUSION

Based on the following, the court DENIES Plaintiffs' Superceding Motion for Preliminary Injunction, Doc. No. 85, to the extent it seeks relief based on facial constitutional challenges.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 21, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*De-Occupy Honolulu et al. v. City & Cnty. of Honolulu et al.*, Civ. No. 12-00668 JMS-KSC, Order Denying Plaintiffs' Superceding Motion for Preliminary Injunction, Doc. No. 85, on Plaintiffs' Facial Constitutional Challenges