UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| DE-OCCUPY HONOLULU; CATHERINE RUSSELL; CHRISTOPHER SMITH; ANDREW SMITH; MADORI RUMPUNGWORN; DOMINIC JAMES, AND JOHN DOES 1-50,<br><br>              Plaintiffs,<br><br>       vs.<br><br>CITY AND COUNTY OF HONOLULU; WESTLEY CHUN, in his personal and official capacity; TRISH MORIKAWA, in her personal and official capacity; LARRY SANTOS, in his personal and official capacity; KEN SHIMIZU, in his personal and official capacity; and JOHN DOES 1-50,<br><br>              Defendants. | CIVIL NO. CV 12-00668 JMS-KSC<br><br>MEMORANDUM IN SUPPORT OF MOTION |

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

Defendants City and County of Honolulu, Westley Chun, Trish Morikawa, and Kenneth Shimizu ("City Defendants") seek summary judgment in their favor on all remaining claims set forth in Plaintiffs' Third Amended Complaint ("TAC") as follows:

1.       All claims against the individual defendants in their personal and individual capacities;

2.       Plaintiffs' "as applied" First Amendment challenge;

3.       Plaintiffs' "as applied" Fourth Amendment challenge;

4.      Plaintiffs' "as applied" Fourteenth Amendment challenge;

5.      Plaintiffs' 42 U.S.C. § 1983 "conspiracy" and "failure to train/supervise" claim;

6.      Plaintiffs' pendant state tort claims sounding in "conversion," "replevin," "negligence," "trespass to chattels," and "fraud" claims.

There are no genuine issues of material fact and the City Defendants are entitled to judgment as a matter of law.

## RELEVANT AND UNDISPUTED FACTS

The Court is versed in the operative provisions of the City and County of Honolulu's "Stored Property" Ordinance, Ordinance 11-29 (2012), codified in Revised Ordinances of Honolulu (1990), as amended, ("ROH") § 29-19.1, et seq. ("SPO").  See Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Second Amended Complaint, filed on 05/21/2013, CM/ECF Doc. No. 125, at 3-6.  The purpose of the SPO is to "maintain public areas in clean, sanitary, and accessible condition, to prevent harm to the health or safety of the public, to prevent the misappropriation of public property for personal use, and to promote the public health, safety and general welfare by ensuring that public property remains readily accessible for its intended uses." ROH § 29-19.1.

The City's Department of Facility Maintenance ("DFM") is the primary agency charged with the enforcement of the SPO.  Its former director was Defendant Westley Chun ("Chun").  <u>See</u> Declaration of Westley Chun, filed on 05/06/2013, CM/ECF Doc. No. 109-1 ("Chun Decl."), at ¶ 9, attached hereto as Exhibit A.  Assisting DFM with SPO enforcement and coordinating with third-party social services organizations that assist individuals who may be impacted by SPO enforcement was the former County Housing Coordinator for the Mayor's Office of Housing, Defendant Trish Morikawa ("Morikawa").  <u>See</u> Declaration of Trish Morikawa, filed on 05/06/2013, CM/ECF Doc. No. 109-2 ("Morikawa Decl."), at ¶ 2, attached hereto as Exhibit B.  Mr. Kenneth Shimizu ("Shimizu") became the "acting" Director of DFM when Mr. Chun left the City.  <u>See</u> Declaration of Kenneth Shimizu, filed on 05/06/2013, CM/ECF Doc. No. 109-4 ("Shimizu Decl."), at ¶ 1, attached hereto as Exhibit C.

During the relevant time period set forth in the TAC, the City's enforcement of the SPO was "complaint driven."  <u>See</u> Westley Chun's Response to Plaintiff De-Occupy Honolulu's First Request for Answers to Special Interrogatories ("Chun Interrog. Response") at ¶ 5, attached hereto as Exhibit E.  <u>See also</u> Trish Morikawa's Response to Plaintiff De-Occupy

Honolulu's First Request for Answers to Special Interrogatories ("Morikawa Interrog. Response") at ¶ 5, attached hereto as Exhibit F.

As residents of the City lodged complaints about personal property/stored private property on public property, the City's Office of Housing prioritized the complaints, coordinated with third-party social services providers, and scheduled SPO enforcement actions. Morikawa Interrog. Response at ¶ 5.

Enforcement actions take place at several locations involving employees from DFM and the City's Department of Park and Recreation ("DPR"). City employees "tag" stored property with a "Removal Notice" and after 24 hours, a "Storage and Disposal Notice" is issued on personal property that have not been removed from public property. Id.

Generally, because of health and safety concerns, flammable materials, perishable items (i.e., food), wet and damaged/broken items, miscellaneous building materials were not stored, as they pose safety and health concerns if these types of items were stored at city facilities. Further, because wet and perishable items cause all other stored personal property to "infect" the other items in the storage bins with mold and other spoilage, such wet and perishable items were not stored. Id. See also Chun Interrog. Response at ¶ 5.

4

Plaintiffs CATHERINE RUSSELL ("Russell"), CHRISTOPHER SMITH ("Smith"), MADORI RUMPUNGWORN ("Rumpungworn"), DOMINIC JAMES ("James") are members of Plaintiff DE-OCCUPY HONOLULU ("DOHON").  Each individual plaintiff predicates his, her, its claims only against certain City Defendants for events occurring on specific SPO enforcement dates.

| Plaintiff | Defedant(s) | SPO Enforcement Date |
|-----------|-------------|----------------------|
| Russell | Chun only | 06/28/2012[*], 08/08/2012[*], 09/06/2012, 10/09/2012, 11/21/2012 |
| Smith | Chun, Morikawa only | 02/15/2012, 11/21/2012 |
| Rumpungworn | Chun only | 03/29/2012 |
| James | Shimizu only | 12/20/2012 |
| DOHON | Chun, Morikawa only | 02/15/2012, 08/08/2012, 10/11/2012, 11/21/2012 |

**Plaintiff Russell**:  Plaintiff Russell's claims against the City Defendants are based on events that occurred during five (5) SPO

---

[*] Ms. Russell admits in her deposition that on these SPO enforcement dates, she was not physically present at Thomas Square.  Thus, she has no personal knowledge as to what happened on these two (2) enforcement dates and has no personal knowledge as to what Mr. Chun did or did not do on these SPO enforcement dates.  See Deposition of Catherine Russell ("Russell Depo.") at 71-72, attached hereto as Exhibit N.

enforcement dates, two of which she was not physically present at Thomas Square.  On the September 6, 2012 enforcement date, she complains that the City seized a "sign" made of plywood on which a quote from a recent Ninth Circuit Court decision was painted.  <u>See</u> Russell's Response to City Defendants' Request for Answers to Interrogatories ("Russell Interrogs. Response") at ¶ 1, attached hereto as Exhibit I.  On the October 9, 2012 enforcement date, she complains that Mr. Chun "fraudulently" seized a "Tulsi Gabbard campaign sign" that she "found" and which she "owned." <u>Id.</u>  Finally, on the November 21, 2012 enforcement date, she complains that the City wrongfully seized her "folding chair.  <u>Id.</u>  Sum total of these three (3) items amount to $30.00.  <u>Id.</u>

Plaintiff Russell is the only plaintiff who asserts a "fraud" claim in this case.  Her "fraud" claim is based solely on the events that occurred on October 9, 2012.  Russell Depo. at 108.  Plaintiff Russell asserts that she "owned" the Gabbard campaign sign because she "found it."  <u>Id.</u> at 110.  She admits, however, that she did not call the Gabbard campaign with respect to the "found" sign.  <u>Id.</u>  She justified her decision not to contact the Gabbard campaign about the sign because the "elections were over."  <u>Id.</u>[1]

---

[1]  Actually, the general election occurred on November 6, 2012.  There was at least a month remaining in the general election campaign.

In her deposition, Plaintiff Russell admits that the De-Occupy Honolulu movement continues.  According to her, it has "expanded out to other houseless areas . . . Reaching out to educate and organize the houseless population."  Indeed, Plaintiff Russell testified as follows:

> Q. Is there a reason why you're not active?
>
> A. I need to focus in on the lawsuits, administrative hearings.  I got burnt out.  I needed a break.
>
> Q. So, the fact that there's currently no tents at the corner of Ward and Beretania doesn't mean that the movement, if you will, has since disbanded?
>
> A. Not even close.

Russell Depo. at 49.

Plaintiff Russell admits that Ms. Morikawa and Mr. Shimizu are not personally and individually liable to her.  Russell's Response to City Defendants' Request for Answers to Interrogatories at ¶¶ 8 and 9.

**Plaintiff Smith**:  Plaintiff Smith's claims against the City Defendants arise out of the alleged seizure and destruction of a dog bowl, a package of dog food, two (2) construction pallets[2] and two (2) folding camp chairs

---

[2]  In his deposition, Plaintiff Smith testified that he did not purchase the pallets; he "obtained [them]."  He did not know how he came to possess them, but he is now seeking compensation for them in this lawsuit. Deposition of Christopher Smith ("Smith Depo.") at 74, attached hereto as Exhibit O.

during SPO enforcement on February 15 and November 21, 2012,

respectively.  <u>See</u> Smith's Response to City Defendants' Request for

Answers to Interrogatories ("Smith Interrog. Response") at ¶ 1, attached

hereto as Exhibit J.

In addition, in response to his lawyer's questions regarding precisely

what Plaintiff DOHON does as an organization and as a "movement,"

Plaintiff Smith testified as follows:

> Q. Does De-Occupy disseminate information to the public?
>
> A. Yes.
>
> Q. Does De-Occupy talk to people in the public?
>
> A. Yes.
>
> Q. Does De-Occupy share its political and social views with people in the public?
>
> A. Yes.
>
> Q. Does De-Occupy try to persuade people of their views on these social and political issues?
>
> A. Yes.
>
> Q. In other words, they try to move people in the direction, that direct?
>
> A. Correct.

Smith Depo. at 160-161.

Plaintiff Smith admits that Mr. Shimizu is not personally and individually liable to him.  Smith Interrog. Response at ¶ 9.

**Plaintiff Rumpungworn**:  Plaintiff Rumpungworn's claims against the City Defendants arise out of the alleged seizure and destruction of one tent on March 29, 2012.  See Rumpungworn's Response to City Defendants' Request for Answers to Interrogatories ("Rumpungworn Interrog. Response") at ¶ 1, attached hereto as Exhibit K.  In her deposition, Plaintiff Rumpungworn admits that the subject tent was found in one of the trees fronting Thomas Square and that the tent was placed in the City's rear-end loader.  She further admits that she does not know if the tent was her tent or "communal property," or if anything was inside of the tent when it was placed in the rear-end loader.  See Deposition of Madori Rumpungworn ("Rumpungworn Depo.") at 46-48, 70-71, attached hereto as Exhibit P.

Plaintiff Rumpungworn admits that Ms. Morikawa and Mr. Shimizu are not personally and individually liable to her.  Rumpungworn Interrog. Response at ¶¶ 8 and 9.

**Plaintiff James**:  Plaintiff James's claims against the City Defendants arise solely out of events occurring on December 20, 2012.  During SPO enforcement on December 20th, Plaintiff James alleges that his "yellowish-

gold tent" was seized and stored.  He then claims that the tent was "functionally destroyed" when he sought its return a few weeks later.  <u>See</u> James's Response to City Defendants' Request for Answers to Interrogatories ("James Interrog. Response") at ¶ 1, attached hereto as Exhibit L.

The City Defendants point out, however, that the Court has already made an assessment of the evidence regarding the alleged damage to Plaintiff James's tent during the December 20th SPO enforcement and storage of the subject tent.  <u>See</u> Order Granting in Part and Denying in Part Plaintiffs' Motion for Sanctions, Enforcement of Agreement, and/or Temporary Restraining Order, filed on 01/24/2013, CM/ECF Doc. No. 48, at 3 ("As to Plaintiffs' complaint that the City . . . fail[ed] to exercise 'due care to prevent destruction or harm to seized property," the court has reviewed Plaintiffs' Exhibits 1 and 2 and finds that the video does not support this claim.").

At this point, however, the Court or the City Defendants will never know the condition of the subject tent because after Plaintiff James retrieved the tent from the City in January 2014, it was thrown away. Deposition of Dominic James ("James Depo.") at 81.

Plaintiff James admits that Mr. Chun and Ms. Morikawa are not personally and individually liable to him.  James Interrog. Response at ¶¶ 7 and 8.  His claims are directed solely against Mr. Shimizu.  Id. at ¶ 9. However, Plaintiff James admitted in his deposition that he does not know any facts that support his claims against Mr. Shimizu.  James Depo. at 52. Plaintiff James also admits that he is not making any claims against Mr. Shimizu sounding in "conspiracy," "conversion," and "replevin."  James Interrog. Response at ¶¶ 17, 18, 19.

**Plaintiff DOHON**:  Plaintiff DOHON is an unincorporated association whose members have "occupied" the public sidewalk and corner of Beretania Street and Ward Avenue fronting Thomas Square.  All of the individual plaintiffs are members of Plaintiff DOHON.

According to its responses to the City Defendants' Request for Answers to Interrogatories, Plaintiff DOHON's claims against the City Defendants are based on events involving four (4) SPO enforcement occurring on February 15, 2012, August 8, 2012, October 11, 2012, and November 21, 2012.   See DOHON's Response to City Defendants' Request for Answers to Interrogatories ("DOHON Interrog. Response") at ¶¶ 1, 3, 5, attached hereto as Exhibit M.

Further, in response to the City Defendants' interrogatory requests to Plaintiff DOHON to "identify with specificity the factual basis that support your claims" sounding in "conspiracy," "conversion," "replevin," "negligence," and "trespass to chattel," Plaintiff DOHON responded by objecting that the interrogatory "requests information concerning allegations in the complaint: that do not relate directly to complaints made [by] Plaintiff DeOccupy." See DOHON Interrog. Response at ¶¶ 18, 19, 20, 21, 22. Plaintiff DOHON also referred the City Defendants to the allegations set forth in TAC and other pleadings filed in the case. Id.

Plaintiff DOHON admits that only Mr. Chun and Ms. Morikawa are personally and individually liable to it.  DOHON Interrog. Response at ¶¶ 7, 8, and 9.

## STANDARD OF REVIEW

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  See also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving

party has carried its burden under Rule 56 [(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87 (1986) (citation and internal quotation signals omitted). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barbuda, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587. See also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir.2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

Here, Plaintiffs cannot sustain their burden in presenting the Court with genuine issues of material facts so as to preclude summary judgment on all remaining claims set forth in the TAC.

## ARGUMENT

A.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDMGENT IN THEIR FAVOR ON ALL STATE AND FEDERAL CLAIMS AGAINST THEM.

As discussed below, the City Defendants ask that the Court grant summary judgment in favor of Messrs. Chun, Shimizu and Ms. Morikawa ("Individual Defendants") with respect to all clams (state and federal) asserted against them.

1.      **Summary Judgment Based on Admissions**:

Plaintiff Russell admits that Ms. Morikawa and Mr. Shimizu are not personally and individually liable to her.  Russell Interrog. Response at ¶¶ 8 and 9.  Thus, as to Plaintiff Russell, judgment in favor of Ms. Morikawa and Mr. Shimizu must be entered.

Plaintiff Smith admits that Mr. Shimizu is not personally and individually liable to him.  Smith Interrog. Response at ¶ 9.  Thus, as to Plaintiff Smith, judgment in favor of Mr. Shimizu must be entered.

Plaintiff Rumpungworn admits that Ms. Morikawa and Mr. Shimizu are not personally and individually liable to her.  Rumpungworn Interrog.

Response at ¶¶ 8 and 9.  Thus, as to Plaintiff Rumpungworn, judgment in favor of Ms. Morikawa and Mr. Shimizu must be entered.

Plaintiff James admits that Mr. Chun and Ms. Morikawa are not personally and individually liable to him.  James Interrog. Response at ¶¶ 7 and 8.  Thus, as to Plaintiff James, judgment in favor of Mr. Chun and Ms. Morikawa must be entered.

Thus, the only defendant against whom Plaintiff James has cognizable claims is Mr. Shimizu.  But by Plaintiff James's own admission, he is unable to point to any facts that support any of his claims against Mr. Shimizu.  James Depo. at 52.  Plaintiff James also admits that he is not making any claims against Mr. Shimizu sounding in "conspiracy," "conversion," and "replevin."  James Interrog. Response at ¶¶ 17, 18, 19. The Court must, therefore, grant summary judgment in favor of Mr. Shimizu on all claims set forth in the TAC as a matter of law.

Plaintiff DOHON admits that Mr. Shimizu is not personally and individually liable to it.  DOHON Interrog. Response at ¶ 9.  Thus, as to Plaintiff DOHON, judgment in favor of Mr. Shimizu must be entered.

Plaintiff DOHON only asserts claims against Mr. Chun and Ms. Morikawa.  It admits, however, that it is not asserting claims sounding in "conspiracy," "conversion," "replevin," "negligence," and "trespass to

chattel" against them.  Thus, summary judgment in favor of Mr. Chun and Ms. Morikawa on these state tort claims must be entered as a matter of law based on Plaintiffs' own admissions.

### 2.   Summary Judgment on Plaintiffs' State Tort Claims Based on Qualified/Conditional Immunity.

Plaintiffs have asserted the following state tort claims against the Individual Defendants in their personal capacities:  "Conversion – Ninth Cause of Action," "Replevin – Tenth Cause of Action," "Negligence – Eleventh Cause of Action," "Trespass to Chattels – Twelfth Cause of Action," and "Fraud – Thirteenth Cause of Action."  Consistent with their own admissions, the following Plaintiffs have pending state tort claims against the respective Individual Defendant(s):

| | |
|---|---|
| Plaintiff Russell | Mr. Chun, only |
| Plaintiff Smith | Mr. Chun and Ms. Morikawa |
| Plaintiff Rumpungworn | Mr. Chun, only |
| Plaintiff James | Mr. Shimizu, only |
| Plaintiff DOHON | Mr. Chun and Ms. Morikawa |

Even if their own admissions are not enough to have the Court grant summary judgment against Plaintiffs and in favor of the City Defendants as detailed above, summary judgment in favor of the Individual Defendant(s)

on the pendant state tort claims must be granted by operation of the qualified or conditional immunity privilege.

Under Hawaii law, nonjudicial officials performing a public duty are shielded from liability for tortious acts and enjoy qualified or conditional immunity when sued under state law.  Dowkin v. Honolulu Police Dep't, 2010 WL 4961135, at *8 (D. Haw. Nov. 30, 2010); Towse v. State, 64 Haw. 624, 631, 647 P.2d 696, 702 (1981).  The qualified or condition immunity privilege does not apply, however, "if the official was motivated by malice and not by an otherwise proper purpose."  Id., citing Kajiya v. Dep't of Water Supply, 2 Haw. App. 221, 629 P.2d 635, 640 (1981); Medeiros v. Kondo, 55 Haw. 499, 522 P.2d 1269, 1271-72 (1974)).  "Malice" means "the intent, without justification or excuse, to commit a wrongful act," "reckless disregard of the law or of a person's legal right," and "ill will; wickedness of heart." Id., citing Awakuni v. Awana, 115 Haw. 126, 141, 165 P.3d 1027, 1042 (2007)).  "Malice" must be demonstrated by **clear and convincing evidence**.  Towse, 64 Haw. 630-631, 647 P.2d at 702-703.

Here, as to all of the state tort claims asserted against the Individual Defendants, Plaintiffs do not and cannot present any "clear and convincing" evidence of "malice" to avoid application of the qualified or conditional immunity privilege.  For example, Plaintiff Russell's conclusory complaint

that Mr. Chun "wrongfully" or "fraudulently" "destroyed" the Gabbard campaign sign hardly supports a "clear and convincing" showing of "malice."

The undisputed facts before the Court regarding this incident are set forth in Mr. Dean Masuno's declaration, attached hereto as Exhibit D, which details precisely what happened in that particular event.  The Gabbard campaign sign was the property of the Gabbard campaign.  Declaration of Dean Masuno, filed on 05/06/2013, CM/ECF Doc. No. 109-6 ("Masuno Decl."), at ¶ 2.  When Mr. Chun described the condition of the campaign sign (which was still revelant because the general election was about a month away.  It was not "over," as Plaintiff Russell testified in her deposition), Mr. Masuno said that the campaign's sign was not being used for its intended purpose.  Id. at ¶ 3.  Mr. Masuno thus asked Mr. Chun to take the sign away.  Id.  Plaintiffs, specifically Plaintiff Russell, cannot present any **clear and convincing evidence** that demonstrates that Mr. Chun's conduct in this instance was "without justification or excuse" or was committed with "reckless disregard of the law."[3]

---

[3]  Pursuant to Fed. R. Evid. 201(b)(1) and (2), the Court should take judicial notice of the fact that just a few months prior to the "Gabbard campaign sign" destruction incident that occurred in October 2012, a similar "campaign sign" destruction incident occurred in August 2012 involving the

Likewise, with respect to the alleged destruction of Plaintiff Rumpungworn's tent (which she herself testified that she does not even know if it was in fact her tent), it is not disputed that the tent that Mr. Chun placed in the rear-end loader on March 29, 2012, was in a tree fronting Thomas Square.  This posed a safety hazard to pedestrians and park users.  Chun  Decl. at ¶ 13.  Mr. Chun's actions under these circumstances cannot be construed as "malicious" so as to deny the application of the qualified/conditional immunity privilege.

As to Ms. Morikawa's conduct involving Plaintiffs Smith and DOHON, the only evidence before the Court are generalized, conclusory statements that Ms. Morikawa "supervised" and "conducted the raids."  There is no clear and convincing evidence that her conduct in any of the SPO enforcement actions involved in this case was tantamount to "reckless disregard of the law," "ill will," or "wickedness of heart."

As to Mr. Shimizu's conduct in December 2012, involving Plaintiff James's yellow/gold tent, the Court already reviewed Plaintiffs' own

---

contested Honolulu mayoral campaign between Kirk Caldwell and Ben Cayetano.  Incidents involving destruction of campaign signs were, accordingly, "hot topic" news in Honolulu during this time period.  It should not come as surprise, therefore, that the Gabbard campaign sign situation arose in the first instance.

evidence (a video of the storage and retrieval of the tent) and found that there was nothing to support a finding that the City Defendants "fail[ed] to exercise 'due care to prevent destruction or harm to seized property." The evidence before the Court, therefore, cannot amount to "clear and convincing evidence" of "malice."

The qualified/conditional privilege must apply in this case as a matter of law and the undisputed facts. Plaintiffs have not and cannot present to the Court with "clear and convincing" admissible evidence of malice. Summary judgment must be entered in favor of the Individual Defendants on all of the state tort claims by operation of the privilege.

3.    **Summary Judgment on Plaintiffs' Federal Claims Based on Qualified Immunity.**

The United States Court of Appeals for the Ninth Circuit employs a three-part test in determining whether state officials are entitled to qualified immunity. See Skoog v. County of Clackamas, 469 F.3d 1221, 1229 (9th Cir. 2006). The court must first answer a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [Defendant's] conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If the answer is no, qualified immunity applies to the conduct. If the answer is yes, the court proceeds to the second level of analysis.

The second prong of the qualified immunity analysis determines whether the right allegedly violated was "clearly established" at the time the state official acted.  Id. at 201–02.  This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201.  A claim of a constitutional violation in a generalized sense is insufficient; instead, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  If the answer to this question is no, qualified immunity applies to the conduct.  If the answer is yes, the court turns to the third and final prong.

The final question the court must ask is "whether the [Defendant] could have believed, 'reasonably but mistakenly . . . that [his] conduct did not violate a clearly established constitutional right.' "  Skoog, 469 F.3d at 1229 (quoting Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001)).  "[S]ummary judgment is appropriate only if Defendants are entitled

to qualified immunity on the facts as alleged by the non-moving party."

Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007) (citing

Barlow v. Ground, 943 F.2d 1132, 1136 (9th Cir.1991)).

Finally, this Court must be guided by clear and established law in this

circuit: "When a city council enacts an ordinance, officers are entitled to

assume that the ordinance is a valid and constitutional exercise of

authority." Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir.

1994). If an officer reasonably relies on the council's duly enacted

ordinance, then that officer is entitled to qualified immunity. Id. at 1210.

See also Acosta v. City of Costa Mesa, slip op. No. 10-56854 (9th Cir.

May 3, 2013).

Under this framework, there are no genuine issues of material fact

that preclude summary judgment in favor of each respective Individual

Defendant on the federal constitutional claims.[4] Assuming the facts

asserted in the TAC in the light most favorable to Plaintiffs, as this Court

must on this Motion for Summary Judgment, Plaintiffs cannot establish a

violation of their First Amendment right under the "chilling" theory of liability.

The undisputed facts demonstrate that Plaintiffs' continued exercise of

---

[4] See, infra, at 24, regarding the lack of merit on each federal constitutional claim set forth in the TAC.

protected speech has not been curtailed or chilled at all. Both Plaintiffs Russell and Smith testified that the De-Occupy Honolulu movement is "not even close" to coming to an end. Russell Depo. at 49. Moreover, De-Occupy Honolulu, according to Plaintiff Smith, continues to express, communicate, and disseminate to the general public its members' political and social views on issues such as homelessness. Smith Depo. at 160-161. It can hardly be said that Plaintiffs' First Amendment rights have been "chilled."

Likewise, Plaintiffs cannot establish a violation of their Fourth and Fourteenth Amendment rights. See, infra. The City's SPO enforcement actions involve the "24 hour tag/notice," then "impoundment" and "storage" of personal property stored on public property. The City and County of Honolulu's ordinance is far from the City of Los Angeles's "seize and immediately destroy" program described in Lavan v. City of Los Angeles, 693 F.3d 1022 (9th Cir. 2012), cert. denied, __ U.S. __, 133 S. Ct. 2855 (2013). Indeed, the Lavan court concluded that even under the Los Angeles scheme, the seizure of the homeless plaintiffs' personal property was **lawful**. It was the immediate destruction of the property under the city's scheme that was constitutionally abhorrent under the Fourth Amendment. Id. at 1030-1032.

Under the Fourteenth Amendment due process analysis, as applied, written "Storage Notices" were provided before "stored personal property" on public property was impounded.  The record in this case demonstrates that written notices on each day of SPO enforcement were provided on the "stuff" that was on the sidewalk fronting Thomas Square.  Further, there was no "post-deprivation" destruction of personal property under the SPO, as the ordinance on its face requires "storage."  Indeed, on its face, the SPO allows "disposal" of stored personal property only after written notice is provided.  See ROH § 29-19.5(b), (c).  Due process concerns are addressed under the SPO on its face and as applied in this case.

As such, qualified immunity should immunize the Individual Defendants from personal/individual liability.  If, however, the Court believes that Plaintiffs' constitutional rights were violated, the Court must then determine whether the rights allegedly violated were "clearly established" at the time the City's officials acted.

Here, all of Plaintiffs' constitutional claims are fundamentally hinged on alleged unlawful "seizure" of their personal property as analyzed in the Lavan decision that was issued on **September 5, 2012**.  Prior to the Lavan decision, the Ninth Circuit Court decisions did not "clearly establish" Fourth Amendment "seizure" jurisprudence absent the "reasonable expectation of

privacy" framework.  See, e.g., United States v. Jones, 565 U.S. __, 132 S. Ct. 945 (2012).  Clearly, pre-Lavan judicial guidance suggested that at the very least an "expectation of privacy" analysis.  Whether persons who placed personal property on public property could successfully assert a "reasonable expectation of privacy" in his/her property appeared to be a plausible basis to justify lawful Fourth Amendment "seizure" in the first instance because they had no reasonable expectation of privacy.  After September 5, 2012, however, the Lavan court made clear that "reasonable expectation of privacy" was no longer relevant.

Under these circumstances, it cannot be said that it was "clearly established" the Plaintiffs' constitutional rights were violated.  Further, the facts of this case do not support a finding that it would have been clear to these "reasonable officers" that their respective conduct involved in the enforcement of the SPO was unlawful in the situation that they confronted. Individual Defendants' respective conduct in enforcing the SPO was entirely reasonable and they are entitled to immunity.  Under the Skoog framework, this Court should grant summary judgment in favor of the Individual Defendants based on qualified immunity.

B.     PLAINTIFFS' "AS APPLIED" CONSTITUTIONAL CLAIMS PREDICATED ON THE FIRST, FOURTH AND FOURTEENTH AMENDMENTS CANNOT SURVIVE SUMMARY JUDGMENT.

Plaintiffs assert that when the City Defendants enforced the recently enacted SPO, they violated Plaintiffs' federal and state constitutional rights based on the First, Fourth and Fourteenth Amendments (and their state counterparts).[5]  Based on their own testimony and admissions, Plaintiffs' "as applied" constitutional claims cannot and should not survive summary judgment, as there are no genuine issues of material fact and the City Defendants are entitled to judgment as a matter of law.

1.     **First Amendment**.

Based on the allegations set forth in the TAC, Plaintiffs assert an "as applied" "chilling" First Amendment claim.  See TAC at ¶ 156 ("Defendants [sic] actions constitute a violation of the First Amendment of the United States Constitution as Defendants have interfered with and chilled speech and activities protected by the First Amendment to the United States Constitution.").[6]

---

[5]  The constitutional analytical framework applied in connection with the federal constitutional claims should also apply to the state constitutional counterparts.

[6]  Plaintiffs have never asserted a First Amendment "retaliation" claim against the City Defendants.  They have never alleged that the City

To succeed on their claim that government officials "chilled" their First Amendment rights, Plaintiffs "must provide evidence showing that [the defendant] 'deterred or chilled [the plaintiffs'] political speech and such deterrence was a substantial or motivating factor in [the defendants'] conduct.' " Menotti v. City of Seattle, 409 F.3d 113, 1155 (9th Cir. 2005) (quoting Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994). In making a First Amendment "chilling" claim, plaintiffs are obligated to prove that the "officials' actions would have chilled or silenced 'a person of ordinary firmness from future First Amendment activities,' not that their speech and petitioning were 'actually inhibited or suppressed.' " White v. Lee, 227 F.3d 1214, 1241 (9th Cir. 2000) (quoting Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Here, Plaintiffs' First Amendment activity has not been inhibited, chilled, or silenced at all. Even after continuous SPO enforcements and enforcement under the newly enacted "Sidewalk-Nuisance" ordinance, Plaintiffs and their cohorts have vociferously exercised their First Amendment rights in traditional public fora, and on social media. See, e.g.,

---

Defendants took adverse "retaliatory" action against them because of their exercise of protected speech. Mendocino Envtl. Ctr. v. Mendocino County, 14 F.3d 457 (9th Cir. 1994).

www.deoccpyhonolulu.org; www.facebook.com/OccupyHonolulu; www.dougnote.com.  Plaintiffs Russell and Smith admit that they continue to exercise and participate in First Amendment activities.  See Russell Depo. at 49; Smith Depo. at 160-161.  Plaintiffs' First Amendment rights have not been "chilled" at all.  Based on the undisputed facts, the City Defendants are entitled to summary judgment on Plaintiffs' "as applied" "chilling" First Amendment claim.

      2.      **Fourth Amendment**.

The gravamen of Plaintiffs' "as applied" Fourth Amendment constitutional claim against the City Defendants is the alleged "unreasonable seizure" and/or "destruction" of their personal property that remain on the public sidewalk.  See TAC at ¶¶ 149-150.

Under the Fourth Amendment prohibition of "unreasonable searches and seizures," U.S. Const. amend IV, a seizure has been found to occur whenever "there is some meaningful interference with an individual's possessory interests in that property."  Soldal v. Cook County, 506 U.S. 56, 62 (1992).  "No more is necessary to trigger the Fourth Amendment's reasonableness requirement."  Lavan v. City of Los Angeles, 693 F.3d 1022 (9th Cir. 2012), cert. denied, __ U.S. __ (2013).  A seizure is deemed

unreasonable if the government's legitimate interest in the search or

seizure does not outweigh the individual's interest in the property seized.

In Lavan, the Ninth Circuit held that the City of Los Angeles "seize

and destroy" program that called for the immediate destruction of

abandoned or unabandoned personal property left on the city's sidewalks

was constitutionally unreasonable under Fourth Amendment jurisprudence.

The Lavan court criticized the "summary seizure" and "destruction" of

homeless persons' property, finding that the city employees' immediate

destruction of the property, without first providing notice or an opportunity to

be heard, rendered an otherwise lawful seizure unreasonable.  Id. at 1030-

1032.

Likewise, in Watters v. Otter, 955 F. Supp. 2d 1178 (D. Idaho 2013),

the United States District Court for the District of Idaho, analyzed the State

of Idaho no-camping statute, which is strikingly similar to the City's SPO.

The Watters court concluded that the "seizure" of personal property on

public land under the Idaho statutory scheme that provided notice, storage,

no immediate destruction, and allowed for retrieval of the property is

entirely lawful and constitutional under Fourth Amendment, post-Lavan

jurisprudence.  Further, the Watters court applied the "community

caretaking" exception to the Fourth Amendment.

This is precisely the case here in connection with the alleged events at issue in the TAC.  The City Defendants submit that the Court should conclude that their enforcement of the SPO on the dates at issue in the TAC was lawful under <u>Lavan</u> and <u>Watters</u>.  Plaintiffs' Fourth Amendment rights were not violated in the SPO impoundment of their personal property.  The City Defendants' conduct was reasonable and survive Fourth Amendment scrutiny.

3.　　**Fourteenth Amendment**.

Plaintiffs complain that their Fourteenth Amendment due process rights, "as applied" to the enforcement of the SPO on the days in question, were violated.  Plaintiffs, however, do not provide any material facts to support their conclusory argument that their due process rights were violated.  For example, Plaintiff Russell admits that with respect to the June 2012 and August 2012 SPO enforcement dates she was not physically present at Thomas Square.  Thus, she cannot and does not provide any admissible evidence to support her claim that her Fourteenth Amendment rights were violated during SPO enforcement on those days.  SPO tags were posted on the property and Storage and Disposal Notices were also

issued the following day.  Chun Decl. at ¶¶ 14, 15.[7]  She received "due process notice" and did in fact exercise her right to retrieve her property.  Plaintiff Russell cannot now complain that her "due process" rights were violated under these circumstances.  If she has not received her personal property from the City after its storage, she may resort to state law remedies to seek compensation for any damages.  She does not, however, have a factual basis to support a constitutional due process violation.

In assessing whether Plaintiffs' due process rights were in fact violated, the Court must examine the "totality of the circumstances."  See Miranda v. City of Cornelius, 429 F.3d 858, 866 (9th Cir. 2005); Watters, 955 F. Supp. 2d at 1190.  Here, based on the "total circumstances," Plaintiffs do not present any admissible evidence that their Fourteenth Amendment rights were violated.  They received notices, had the opportunity to retrieve their personal property, and may even resort to state

---

[7]  The City Defendants respectfully refer to the exhibits attached to their Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction (Second), filed on 04/15/2013, CM/ECF Doc. No. 90, which are the "tags" issued on the relevant SPO enforcement days at issue in this case.  Rather than duplicate the already voluminous record, the City Defendants respectfully incorporate by reference the already authenticated exhibits and documents herein.  If the Court, however, will require the City Defendants to attach the same documents to this Motion for Summary Judgment, the City Defendants will do so.

law remedies if they believe their property was wrongfully "destroyed."

They do not have a Fourteenth Amendment "as applied" claim as a matter

of law.

    C.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN
            FAVOR OF THE CITY DEFENDANTS ON PLAINTIFFS'
            "CONSPIRACY" AND "FAILURE TO TRAIN/SUPERVISE"
            § 1983 CLAIMS.

    1.    **§ 1983 Conspiracy Claim**.

Because Plaintiffs do not provide any specific factual allegations that

details the basis of their § 1983 conspiracy claim, this claim fails as a

matter of law and fact.  To allege a cognizable § 1983 conspiracy claim, a

plaintiff must assert: (1) an agreement between the defendants to deprive

the plaintiff of a constitutional right; (2) an overt act in furtherance of the

conspiracy; and (3) a constitutional violation.  See Gilbrook v. City of

Westminster, 177 F.3d 839, 856-57 (9th Cir. 1999); Margolis v. Ryan, 140

F.3d 850, 853 (9th Cir. 1998).  Mere conclusory allegations of conspiracy

(i.e., a bare allegation that defendants "conspired" with each other) are

insufficient to state a claim.  Harris v. Roderick, 126 F.3d 1189, 1195 (9th

Cir. 1997).  See also Olsen v. Idaho Bd. of Med., 363 F.3d 916, 929 (9th

Cir. 2004) (plaintiff must plead "specific facts to support the existence of the

claimed conspiracy") (citation omitted).  A plaintiff must allege "which

defendants conspired, how they conspired and how the conspiracy led to a

deprivation of his constitutional rights even though he does not identify which officer said or did what at which particular time." <u>Harris</u>, 126 F.3d at 1196.

In responding to the City Defendants' interrogatory request on the § 1983 "conspiracy" claim, Plaintiff DOHON stated that the requested information "do not relate directly to complaints made [by] Plaintiff DeOccupy."  DOHON Interrog. Response at ¶ 18.  Likewise, Plaintiff Russell similarly admits that the requested information does not "relate directly to complaints made [by her.]"  Russell Interrog. Response at ¶ 17. <u>See also</u> Smith Interrog. Response at ¶ 17 (same); Rumpungworn Interrog. Response at ¶ 17 (same); James Interrog. Response at ¶ 17 (same).

Further, each Plaintiff, in response to the interrogatory request on this precise claim, does not provide any detail as to who participated in a conspiratorial act, who deprived whom of any constitutional rights, what constitutes the "overt act" for purposes of a cognizable § 1983 conspiracy claim.  As such, the Court must grant summary judgment in favor of the City Defendants on this claim as a matter of law.

2.  **§ 1983 "Failure to Train/Supervise Claim**.

The City cannot be held liable under § 1983 on the theory of respondeat superior. <u>See Monell v. Dep't of Social Servs.</u>, 436 U.S. 658,

690 (1978).  Rather, "Congress intended to hold municipalities liable only when 'action pursuant to official municipal policy of some nature caused a constitutional tort.' "  Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir.1999) (quoting Monell, 436 at 691).

Only in "limited circumstances" can such an "official municipal policy" arise from a "local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights."  Connick v. Thompson, __ U.S. __, 131 S. Ct. 1350,1359 (2011).  As Connick instructs, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  Id., citing Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985).  Hence, a "municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.' "  Id., quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989).

"Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Connick, 131 S. Ct. at 1360, quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 410 (1997).  Disregarding "a known or obvious consequence" means "city policymakers are on actual or constructive notice that a particular omission in their training program

causes city employees to violate citizens' constitutional rights[.]"  Id.  If such notice exists, then a municipality "may be deemed deliberately indifferent if the policymakers choose to retain that program."  Id., citing Bryan Cnty., 520 U.S. at 407.  In turn, to prove "actual or constructive notice" of a constitutionally-significant gap in training, it is "ordinarily necessary" to demonstrate "a pattern of similar constitutional violations by untrained employees."  Id.

Based on Plaintiffs' own testimony and responses to discovery requests, they are unable to present the Court with genuine issues of material facts to support a cognizable § 1983 failure to train/supervise claim.  There is no credible, admissible, relevant evidence to demonstrate that Mr. Chun, Ms. Morikawa, Mr. Shimizu, or anyone at the City was "deliberately indifferent" to the need to train and/or supervise city employees tasked with SPO enforcement and that the lack of "training" actually caused constitutional violations by city employees.

Further, other than Plaintiffs' generalized complaints about alleged constitutional rights violations, there is nothing in the record to demonstrate that anyone else who was subject to SPO enforcement throughout the City and County of Honolulu complained that their constitutional rights were violated so as to put the City on notice of the need for further training or

more supervision.  Indeed, in seeking to impose sanctions against the City

Defendants in December 2013 for violating terms of the SPO and

stipulations entered in this case, Plaintiffs failed to demonstrate any such

violations in terms of SPO tag and impoundment procedures.  .  See Order

Granting in Part and Denying in Part Plaintiffs' Motion for Sanctions,

Enforcement of Agreement, and/or Temporary Restraining Order, filed on

01/24/2013, CM/ECF Doc. No. 48.

As discussed above, each SPO enforcement date at issue complied

with the requirements of the SPO – 24 hour notice tag, followed by

impoundment of personal property that remained on public property at least

24 hours later.  As discussed above, the City Defendants did not violate

Plaintiffs' First, Fourth, and Fourteenth Amendment rights.  SPO

enforcement actions were conducted in professional and humane manner.

Morikawa Decl. at ¶ 2.

This Court must conclude that Plaintiffs have failed to present any

evidence of "deliberate indifference" in terms of training and/or supervision.

The § 1983 failure to train/supervise claim must fail.

### D.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE CITY DEFENDANTS ON PLAINTIFFS' STATE TORT CLAIMS AS A MATTER OF LAW.

Based on Plaintiffs' own admissions, the pendant state law claims cannot survive summary judgment.  For example, Plaintiff Russell admits that information regarding the "conversion," "replevin," and "trespass to chattel" claims "do not relate directly to complaints made [by] Plaintiff Russell."  Russell Interrog. Response at ¶¶ 18, 19, 21.  <u>See also</u> Smith Interrog. Response at ¶¶ 18, 19, 21 (same); Rumpungworn Interrog. Response at ¶¶ 18, 19, 21 (same); James Interrog. Response at 18, 19, 21 (same).

Further, their responses to the discovery requests regarding the negligence claim merely restate the elements of the tort, do not provide relevant and admissible facts or evidence to articulate a cognizable claim to survive summary judgment, and merely refer to the pleadings and other court filings made in this case.

This is insufficient to withstand scrutiny under Fed. R. Civ. P. 56.  The Court, accordingly, must grant summary judgment on the pendant state tort claims as a matter of law.

With respect to Plaintiff Russell's "fraud" claim, her response to Interrogatory No. 22 fails to satisfy the requirements to support a fraud

claim under Hawaii law.  Under Hawaii law, the elements of a fraud claim

are that: "(1) false representations were made by defendants, (2) with

knowledge of their falsity (or without knowledge of their truth or falsity), (3)

in contemplation of plaintiff's reliance upon these false representations, and

(4) plaintiff did rely upon them."  Shoppe v. Gucci Am., Inc., 94 Haw. 368,

386, 14 P.3d 1049, 1067 (2000) (internal quotation marks and citations

omitted); Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768

P.2d 1293, 1301 (1989).

First, Plaintiff Russell is mistaken as to her "right to possess" the

subject campaign sign.  As Mr. Masuno attests in his declaration, the

Gabbard Campaign owned its campaign signs.  Masuno Decl. at ¶ 2.  Her

defacing the sign was not using the sign for its intended purpose.  Id. at

¶ 3.  Precise what Mr. Chun "misrepresented" to Plaintiff Russell is not

known.  Further, her interrogatory response indicates that several persons

made misrepresentations to her – Messrs. Chun, Santos, Shimizu, Ms.

Morikawa and "John Does."  This cannot satisfy the particularity

requirement under Fed. R. Civ. P. 9(b).  Finally, there is nothing in the

record to create an issue of fact regarding whether Mr. Chun, or anyone

knew that the statements made regarding the campaign sign was "false."

This claim cannot survive summary judgment.  The Court should so conclude.

## CONCLUSION

For the reasons set forth herein, the City Defendants respectfully request that the Court grant this Motion in its entirety.  Plaintiffs' cannot and do not present any genuine issues of material fact on their claims set forth I the TAC and judgment in favor of the City Defendants, collectively and individually, should be entered as a matter of law.

DATED:  Honolulu, Hawaii, April 16, 2014.

DONNA Y. L. LEONG
Corporation Counsel

*/s/  Ernest H. Nomura*

ERNEST H. NOMURA
DAWN D.M. SPURLIN
LAURA YOSHIDA
Deputies Corporation Counsel

Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
WESTLEY CHUN, TRISH MORIKAWA,
AND KENNETH SHIMIZU