## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| De-Occupy Honolulu;<br>Catherine Russell;<br>Christopher Smith;<br>Madori Rumpungworn;<br>Dominic James; and<br>John Does 1-50,<br><br>        Plaintiffs,<br>  vs.<br><br>City and County of Honolulu;<br>Westley Chun;<br>Trish Morikawa;<br>Ken Shimizu; and<br>John Does 1-50,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. CV 12-00668 JMS-KSC<br><br>DECLARATION OF RICHARD L.<br>HOLCOMB IN SUPPORT OF MOTION<br>FOR ATTORNEYS' FEES AND<br>EXPENSES |

## DECLARATION OF RICHARD L. HOLCOMB
## IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

1.    I am an attorney duly licensed to practice law in the State of Hawai'i and before the District Court for the District of Hawai'i as well as the Ninth Circuit Court of Appeals.  This declaration is made to the best of my knowledge and based on personal knowledge of the matters set forth herein.

2.      I am an attorney of record for the Plaintiffs in the above-captioned case.

3.      I prepared the foregoing Memorandum in Support of the Motion for Attorneys' fees and believe that all of the factual averments in that Memorandum are true and accurate to the best of my knowledge. This includes but is not limited to the Statement of Facts and Procedural History portion(s) of the Memorandum.

## THE SETTLEMENT AGREEMENT

4.      Pursuant to the Settlement Agreement, Plaintiffs will receive $1000. I calculated the disbursements for each Plaintiff based on this settlement amount. Each Plaintiff received full compensation for the items they claimed were destroyed or never returned. Moreover, the disbursements are for the full value that they claimed they had paid for the items, including where applicable the Hawaii GET tax. I calculated the amounts from the review of Plaintiffs' depositions with the exception of Ms. Russell, whose disbursement I calculated from her response to interrogatories. The remaining amount was disbursed to institutional Plaintiff, De-Occupy Honolulu.

## BIOGRAPHICAL INFORMATION

5.      I attended David Lipscomb University, a small liberal arts college, from 1992 through 1996. I received an academic scholarship and earned a B.S. in

Business Administration. I graduated with a 3.24 G.P.A. and maintained nearly a 4.0 G.P.A. in my junior and senior years.

6. From 2001 to 2004, I attended the University of Tennessee College of Law, where I won three Academic Achievement Awards and appeared on the Dean's List Honor Roll regularly. I graduated with a 3.44 G.P.A., earning my J.D.

7. I was a law clerk for Attorney Richard L. Gaines at Eldridge and Gaines in Knoxville, TN from August 2001 to May 2005. There, I researched a number of legal issues, including constitutional issues. In addition to drafting motions and legal memoranda, I also substantially drafted a number of appellate briefs that, after finalization, were submitted in the Tennessee Court of Criminal Appeals and the Sixth Circuit Court of Appeals.

8. I was admitted to the Tennessee bar in 2005 and, as far as I know, remain a member in good standing in Tennessee, the United States District Courts for the Eastern and Middle Districts of Tennessee and the Sixth Circuit Court of Appeals.

9. From May 2005 until June of 2008, I was employed as an associate attorney by the Law Offices of James A. H. Bell, P.C. in Knoxville, TN. There I litigated a number of constitutional issues and represented defendants in all aspects of various state and federal criminal, quasi-criminal and

administrative proceedings many of which were "high profile."[1]   I researched, drafted, and argued motions, memoranda and briefs (appellate and otherwise) on behalf of a variety of clients.  I elicited testimony from witnesses at depositions, evidentiary hearings and sentencing.  I also argued before the federal courts in a number of cases and before Tennessee appellate courts.  My most rewarding experience was when I initiated and served as lead counsel in a case that ultimately led to Tennessee's Drug Tax Act being declared unconstitutional.

10.   From June 2008 to June 2009, I managed my own practice and was again affiliated with Eldridge and Gaines.  I essentially performed the same functions as I did at Mr. Bell's firm.  However, I was solely responsible for the cases as well as the administrative duties necessitated by my practice.

11.   In May of 2009, I moved with my family to Honolulu.  In June, I started working as an associate at Dubin Law Offices in Honolulu.  There, I primarily drafted memoranda and appellate briefs addressing a wide variety of civil litigation issues.

12.   I took the Hawaii bar exam in July of 2009 and was admitted to the Hawaii Bar and this Court in November 2009.

---

[1] In most of the "high profile" cases, I served as co-counsel for Mr. Bell.

13.  In March of 2010, I started my own firm, which is now Holcomb Law, LLLC.  Since that time, I have represented people accused with OVUII, and have represented people in a wide range of civil and civil rights litigation, including challenging constitutional violations and other violations of federal law.  This litigation includes but is not limited to Hawaii's flagship Second Amendment cases and cases (such as this) advocating the fair and dignified treatment of Honolulu's homeless citizens, of which this Court is well aware.

14.  I have challenged the conduct of the City in seizing citizens' property pursuant to both this "Stored Property Ordinance" and the "Sidewalk Nuisance Ordinance" in at least three cases before this Court.  The City has settled or are in final negotiations to settle two of those cases.  In the third, the Plaintiff's and Defendant's Motions for Summary Judgment are scheduled to be heard on August 12, 2014.  I am aware of no other lawyer in Hawaii (or elsewhere) with this degree of experience in challenging such seizures and the destruction of citizens' property.

15.  I also litigate a number of consumer rights cases before this Court, including cases involving violations of the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act.

16.    I am admitted to the Ninth Circuit Court of Appeals and have drafted the briefs and argued before an appellate panel in December 2012, in a very important Second Amendment case originating from this Court.

17.    I have been nationally and regionally published:

Richard L. Holcomb and David B. Smith, *Challenging Pretrial Lis Pendens on Substitute Property*, THE CHAMPION, April 2008, at 36.
Richard L. Holcomb, *Preventing Post-Hudson Pitfalls*, THE CHAMPION, May 2007, at 28.

Richard L. Holcomb and James A.H. Bell, *The Controlled Substance Tax: Analysis, Argument & Attack*, THE CHAMPION, March 2006, at 28.

Richard L. Holcomb, *"Ethical" Tolling?*, FOR THE DEFENSE, April-May 2006, at 5.

Richard L. Holcomb, *Sex Crimes are A-Changing*, FOR THE DEFENSE, October-November 2006, at 6.

18.    I have been invited to lecture at a number of Continuing Legal Education seminars, including:  lectures in 2006 addressing Tennessee's Drug Tax, in Memphis, Nashville, and Knoxville, where attendees received two hours CLE credits; a lecture in 2007 addressing "dog sniffs" and conditional pleas in Memphis and Nashville, where attendees received 1.5 hours CLE credit; and a lecture in Honolulu, HI addressing "Police Liability," and more specifically, *Monell* and qualified immunity in 2013 where attendees received VCLE credits.

19.   I have remained active in a variety of Professional Associations, serving on the Board of Directors and as Chairperson for the Drug Tax Committee for the Tennessee Association of Criminal Defense Lawyers.  I currently serve as Hawaii's state delegate for the National College of DUI Defense.  I was an active member of the National Association of Criminal Defense Lawyers. I remain an active member of the American Association for Justice and the F Warriors alumni group for the renowned Trial Lawyers' College.  I am an active member of the National Association of Consumer Advocates.  I am an active member of the Federal Bar Association.  I am also an obligatory member of the Hawaii State Bar Association.

20.   I have consistently sought to improve my skills as a lawyer, devoting hundreds of hours and thousands of dollars each year to continuing education, even though I do not receive "credit" for most of that ongoing education.  I have traveled the country in pursuit of becoming a better lawyer.  For example, in September 2013, I graduated from Gerry Spence's Trial Lawyers College, a renowned month long program in Dubois, WY. Two weeks later, I attended Pete Barry's intensive three day FDCPA Bootcamp in San Francisco, CA.  I was also invited to and completed an invitation-only three day intensive cross-examination seminar with the esteemed Terry MacCarthy in Tulsa, OK.  I also attended the Federal Bar

Association's recent Honolulu CLE event, where Judge Seabright moderated.  Most recently, I attended the FBA's CLE regarding settlement conferences where Judge Chang was a speaker.  In September, I will be attending the American Association for Justice's Deposition College in Denver, CO.

<u>BASIS FOR REQUESTED RATE</u>

21.  For purposes of calculating attorneys' fees in this action, I have therefore determined a reasonable hourly rate for my services in this district, as further described below.

22.  Looking to all available sources, including the *Laffey* Matrix, published and unpublished cases from this Court and other courts, the prevailing cost of living in Hawai'i, and the novelty of the case involved, I have selected $355/hour as a reasonable hourly rate in this matter.

23.  I have attached a true and exact copy of the *Laffey* Matrix as **Exhibit One**.

24.  As described extensively in the accompanying memorandum, I believe this to be a reasonable rate for my services in a case such as this.  I have dedicated my career to pursuing cases for actual human beings who were being exploited and abused by government or corporate entities and/or prosecuted, often unjustly, by state and federal governments.  People that I have represented in cases similar to the instant case cannot find legal

representation because few lawyers will take a righteous case if it means numerous hours of under- or un-compensated effort, especially if it is unpopular (as is this one) or not newsworthy.  The courts may consider this to be a "little" case because significant damages are not at stake, but I find it difficult to accept that tyrannically abridging the First, Fourth and Fourteenth Amendments of the Bill of Rights in a systemic way, against our most vulnerable citizens, and over a long period of time can ever be a "little" case or unworthy of the courts' attention, even in the absence of significant financial damages.

25.     Moreover, I am struggling to operate a law firm and support my family in the American city with perhaps the highest costs of living, taxation, and other expenses.   I have attached as **Exhibit Two** a true and exact copy of the United States Census Bureau's report showing that Honolulu's cost of living is only surpassed by that of Manhattan.

26.     I have attached as **Collective Exhibit Three** a true and exact copy of the Civil Beat's "Price of Paradise" series that discusses not only the high costs of living in Hawaii, but also the consequences of that cost.  Where federal law requires that businesses be attracted, particularly to a certain type of industry, such as civil rights law, the so called "price of paradise" is too

high.  I believe that attorneys' fees must be adjusted to at least those of attorneys' mainland counterparts.

27.  As a solo practitioner with an otherwise full caseload, because of its magnitude, this case has also placed a tremendous strain on my practice and family life.

28.  A fee structure that punishes lawyers for focusing their efforts on significant, systematic societal harms committed by government forces creates a significant dilemma for the civil rights attorney: do I move to a jurisdiction where the cost of living is lower so that I can pursue those cases diligently? Or, do I simply refuse to accept cases when I know that I will be grossly underpaid for the time and effort that I necessarily expend to fight for the rights of the "little guy" in the "little" case.  I have made significant efforts to alter my practice in such a way that I can focus primarily on civil rights violations and the prosecution of other violations of federal law.  I currently have four other cases pending before this Court where damages are very low or even non-existent.  In each of these cases, my clients and I seek social reform and/or constitutional compliance.  However, at the rate previously awarded to me, I am highly discouraged from accepting other cases involving constitutional violations where my compensation cannot be

supplemented by a contingency fee on a damages award, particularly those such as this, that require an extraordinary amount of work.

29.   I believe the rate that I am requesting, *i.e.*, $355 per hour, is a fee I could demand from paying clients and, therefore, is required to be awarded in civil rights cases.

30.   I have attached the Declaration of Kevin O'Grady and rely on in in part to support my requested fees.  Mr. O'Grady demands a minimum of $350 per hour in matters as straightforward as quasi-criminal TRO hearings.   I estimate that I average close to $350 per hour in representing citizens accused of OVUII (DUI).   Attorney Brazier and I share a case, simply challenging HPD's failure to disclose information pursuant to a Hawaii Information Practices Act request, that is billed hourly at a rate of $250 per hour.  Should I alter my practice and/or abandon my morals, I could demand a $350 hourly fee.

31.   Nevertheless, I have been previously awarded $200 per hour by this Court in another civil rights case.  That case was not nearly as complex as this as it did not ultimately involve the sheer volume of evidence (particularly cumbersome video recorded evidence) and/or the number of constitutional violations and/or plaintiffs as this case involves.  I believe that $200 per hour leaves me grossly underpaid.

32.     Interestingly, the Magistrate Judge in that previous case relied on a five-year-old *Pacific Business News* article entitled "Mainland-Hawaii Salary Gap Grows" in setting my rate (which was reduced by nearly 50% with little or no explanation).  I have attached a true and exact copy of that article as **Exhibit Four**.  There, a "partner," with undefined skills and experience is said to bill at $250 per hour five years ago.

33.     The gist of that article is that Hawaii is losing the brightest and most skilled labor force to mainland competition because salaries are too low.  This phenomenon is dubbed the "price of paradise."  In other words, counsel is not being *attracted* to Hawaii but *deterred* from practicing here.  In the face of a federal law such as 42 U.S.C. §§ 1983 and 1988, this price is too high.

34.     The article states "[t]he legal profession in Honolulu pays an average of $78,270 a year, while the national average is $92,268, about 15 percent less, although that's a slight improvement over 2005, when the difference was 17 percent."  It is unclear whether that "gap" has increased or decreased in the past five years.  And, the gap is actually less than 15% as the article goes on to state "Honolulu attorneys make an average of $85,092 and on the Neighbor Islands they make even less, about $76,000, according to the Labor Department."  Thus, the first statement clearly included non-attorney "legal profession[als]."  Nevertheless, without explanation my requested

rates was not reduced by a mere 15%, but instead the reduction approached 50%!

35. Moreover, I was not even awarded the rate that "partners" supposedly billed five years ago. I cannot fathom why I, as a solo practitioner (who must not only do the work of a "partner" and an associate attorney in its entirety, but also perform all administrative duties, without the benefit of an extensive staff or associates to assist me) would not be paid what an undefined "partner" billed five years ago. Instead, without explanation, the magistrate awarded me $185 per hour which was then raised to $200 per hour by Judge Seabright. I should have at least been awarded what a "partner" billed five years ago. It is impermissible to assign a lower rate to a solo practitioner just because the solo practitioner must rely largely on "lead counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114-15 (9th Cir. 2008). And, none of the "big firm" partners will even take the cases that I have routinely taken leaving, most often indigent, victims of constitutional violations underrepresented in Hawaii.

36. Remarkably, the City does not even believe that the rate that I was previously awarded is fair or equitable. I have attached as **Exhibit Five** a true and exact copy of the *Pacific Business News* Article entitled "City Will Spend Over $1 Million in Rail-Related Attorneys' Fees" showing that,

starting three years ago, the City paid its own independent lawyers from Honolulu law firms (Kobayashi, Sugita & Goda, and Carlsmith Ball) between $295 and $495 per hour.  In other words, the bottom-rung associate at those firms are billed at $295 per hour, despite their obvious inexperience. Those attorneys are not any more experienced in rail cases or any other cases than Plaintiffs' counsel.  The requested rates were within or even less than those rates paid by the City to its own outside counsel.

37.  I have reviewed the websites for both law firms named in the article attached as **Exhibit Four**.  Kobayashi, Sugita and Goda's website reveals that they have eighteen partners and ten associates.  The partners range in experience from 49 years (Mr. Kobayashi) to 7 years (Jonathan Moore, who was licensed in Louisiana in 2007).  The associates range in experience from 0 to 7 years' experience. Notably, these attorneys were awarded fees in *Ko Olina Development*, *LLC v. Centex Homes*, 2011 WL 1235548 (March 29, 2011), cited in and attached to Plaintiffs' Motion.   It is clear from that opinion that, not only did the attorneys strategically petition this Court for rates less than those they actually charge, but that this Court reduced their requested fees further, imposing what appears to be the $350 "senior attorney" cap on Mr. Kobayashi.  The structure of Carlsmith Ball's website makes it difficult to analyze the varying degrees of their associates' and partners' experience.

However, there appear to be 77 attorneys employed at Carlsmith Ball with widely diverse levels of experience.

38.    I believe that civil rights attorneys deserve a rate consistent with what the City pays its outside attorneys.  First, insofar as this Court could find that rail litigation is somehow "more complex" the complexity is subsumed in the lodestar calculation as those attorneys will necessarily bill more hours.  Second, the United States Supreme Court has specifically stated that civil rights cases should be treated the same as and rates not reduced from other complex cases such as "anti-trust litigation," *Blum v. Stenson*, 465 U.S. 886, 893 (1984), and the Ninth Circuit has specifically rejected the isolation of a certain type of case in a certain area for determining fee rates under fee-shifting statutes.  *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053-54 (9th Cir. 2009) (rejecting Fourth Circuit's definition of "relevant community" which looked solely to other LHWCA cases in the same region in favor of a more broad definition).  Third, the Hawaii Supreme Court has not found "rail" cases to be any more complex than other cases.  *Kaleikini v. Yoshioka, et. al.*, No. SCAP-11-0000611 (Haw. May 2, 2013).  A true and exact copy of the *Kaleikini* opinion is attached as **Exhibit Six**.

39.    As set forth in the accompanying memorandum, I have conducted an exhaustive review of attorneys' fees awarded by this Court.  This Court has

established a "cap" on senior attorney awards in civil rights cases at or about $350 per hour.  The cap appears to not be based on empirical data, rates actually billed by the movant attorneys, or published rates of other firms. Instead, this Court's "knowledge" of the prevailing market rate appears to trump any and all contradictory evidence.   Less experienced attorneys' rates are reduced below this ultimate ceiling.

40.    I believe this system of awarding rates to be unfair and impermissible.  I am requesting only the rate at which I can demand in today's market. Moreover, the rate I am requesting is squarely within the range of rates to which the City pays its own outside attorneys.

<u>HOURS EXPENDED</u>

41.    I have reviewed and approved the time and charges set forth in the itemization of work performed in this case, and affirm to the best of my knowledge that the time spent and expenses incurred were reasonable and necessary under the circumstances.

42.    I have attached as **Exhibit Seven** a true and exact copy of my timesheet in chronological order.  I have extensively reviewed the record of this case, the correspondence between myself, counsel and my clients.  I believe the entries to be accurate and as detailed as possible.

43.   I have attached as **Exhibit Eight** a true an exact copy of my timesheet, which has been "categorized" pursuant to Local Rule 54.3(d)(1).  To assist the Court, I have also tallied the hours for each section and, where applicable tallied the "NO CHARGE" entries for each section.  I have also totaled the hours and the "NO CHARGE" entries for the entire document.  To further assist the Court, at the beginning of each page, where applicable, the number of billed hours for the preceding page is printed in bold.

44.   I have also exercised discretion in declining to bill for a significant number of hours that I have expended on this case.  The tasks and time for which I have not billed are indicated as "NO CHARGE" in both submitted timesheets.  In addition, I have expended dozens of hours, which do not appear on the timesheets at all, discussing this case and strategizing with Attorney Brazier.  Numerous other phone calls between my clients and me also do not appear on the timesheet and have not been billed.  I estimate that at least 40 hours of telephonic discussions are not included on my timesheet(s).

45.   I employ a legal assistant who has assisted me tremendously in this case.  I have neither accounted for nor requested reimbursement for the hours he has spent in this case.

46.     I have requested an upward adjustment of my fee award in the amount of 25% of the fees awarded due to the complexity of this case, the volume of evidence, the number of plaintiffs and incidents involved, and other factors listed above.  One particular factor that should, alone, result in a multiplier is the disfavor that the community has shown towards my clients, this case, and the homeless in general.  I have attached as **Exhibit Nine** a true and exact copy of the Star-Advertiser's (Honolulu's leading newspaper) editorial entitled "Our View."  This editorial, purporting to present the opinion of the entire newspaper, claims that my clients were somehow taking advantage of the City.  Similar sentiments have been repeatedly expressed to me by friends, acquaintances, and even members of the bar who told me the "hoped [I] lose the De-Occupy case."

47.     Up to and including the instant motion and supporting declarations and having exercised billing judgment, I have reasonably expended 394.1 hours pursuing this matter.  However, I have reduced my actual billed hours by 24.8 hours or 6.7%.  The total hours for which I am requesting compensation are 369.3 hours.

48.     As such, the total value of reasonable attorneys' fees attributable to my participation in this case is $131,101.50.  Applying the requested 25% upward adjustment, my total requested award is $163,876.88.

49.   If I were awarded the rate a "partner" would bill five years ago ($250 per hour), my total award would be $92,325.   Applying the requested 25% upward adjustment, my total awarded amount would be $115,406.25.

50.   If I were awarded the rate previously awarded ($200 per hour), which I believe would leave me grossly underpaid, my total award would be $73,860.  Applying the requested 25% upward adjustment, my total awarded amount would be $92,325.

51.   Hawaii's GET tax will leave me with a 4.712% liability. Regardless of the amount awarded, I am requesting this Court award the full GET tax amount in addition to the awarded fee.  The following, using the amounts specified above, illustrates both the GET amount and the total award depending on the amount the Court awards:

|          | Awarded Amount | + | GET Tax | = | Total Award |
|----------|----------------|---|---------|---|-------------|
| @355     | $131,101.50    | + | 6177.50 | = | 137,279.00  |
| @355+25% | $163,876.88    | + | 7721.88 | = | 171,598.76  |
| @250     | $92,325        | + | 4350.35 | = | 96,675.35   |
| @250+25% | $115,406.25    | + | 5437.94 | = | 120,844.19  |
| @200     | $73,860        | + | 3480.28 | = | 77,340.28   |
| @200+25% | $92,325        | + | 4350.35 | = | 96,675. 35  |

52.    I have also spent 30.9 hours researching and drafting the attached Motion and Memorandum and preparing the exhibits, including my and Kevin O'Grady's Declarations.   I am requesting $10,969.50 for preparing the instant documents.   I am requesting the GET Tax liability for that award, which is an additional $516.88.   The total award I am requesting for preparing the instant motion and documents is $11,486.38.

53.    If I were awarded what a "partner" would bill five years ago, my award would be $7725 and the GET tax liability would be, and the GET Tax liability would be $364 for a total of $8089.  If I were awarded what I have been awarded previously in this Court, my award would be $6,180, and the GET Tax liability would be $291.20 for a total of $6471.20.

54.    I am not requesting the 25% increase for preparing the attorneys' fees motion.

55.    I am seeking a total attorneys' fees award of $183,085.13 for my involvement in this case, which includes a 25% multiplier for work done on the case but not on the instant motion and the applicable GET Tax liability.

<u>EXPENSES</u>

53.    I have incurred a total of $3,205.24 in expenses in this case, which I have paid out-of-pocket.  Those expenses are itemized as follows:

Filing Fee

$350                 Filing Fee

Transcripts

$50.68               Transcript of Settlement on the Record

$12.25               Transcript of Status Conference on Feb. 5, 2013

$42.04               Transcript of Status Conference on March 8, 2013

Depositions

$891.36              Wes Chun Deposition

$855.44              Dominic James and Christopher Smith Deposition

$248.38              Madori Rumpungworn Deposition

$404.??              Catherine Russell Deposition[2]

Copies

$267.75              Courtesy Copies paid 12/12/12

$46.08               Copies for Wes Chun Depos (Exhibits)

Misc.

$5.50                Parking for 1/17/13

---

[2] Despite having been present on counsel's desk for several weeks, the invoice for Ms. Russell's deposition has been misplaced.  Conveniently, Diane, the accounting personnel for Carnazzo, is not working on the date this Declaration is being drafted.  Accordingly, I will supplement this Declaration with the replaced invoice once it becomes available to me.  I do recall that the amount due on the invoice was $404 but do not remember the amount of "change" due in addition to the $404.

$31.76          Exhibit Tabs/Notebooks (supplies) for Hearing 1/17/13

54.   I have attached as **Collective Exhibit Ten** true and exact copies of the receipts and invoices related to this case.   The receipts and invoices are what they purport to be.   I am requesting reimbursement for the expenses in this case for the full amount of $3,205.24.   The total award that I am seeking, including fees, tax, and expenses is $186,290.37.

I, Richard L. Holcomb, declare under penalty of perjury under the laws of the state of Hawai'i that the forgoing is true and correct to the best of my knowledge.

DATED:  Honolulu, Hawai'i; August 11, 2014.

s/ Richard Holcomb
Richard Holcomb
Attorney for Plaintiffs