RICHARD L HOLCOMB (HI Bar No. 9177)
BRIAN BRAZIER (HI Bar No. 9343) (Of Counsel)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite 808
Honolulu, HI  96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@live.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| De-Occupy Honolulu; Catherine Russell; Christopher Smith; Madori Rumpungworn; Dominic James; and John Does 1-50, <br><br>    Plaintiffs, <br> vs. <br><br> City and County of Honolulu; Westley Chun; Trish Morikawa; Ken Shimizu; and John Does 1-50, <br><br>    Defendants. | CASE NO. CV 12-00668 JMS-KSC <br><br> REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS; DECLARATION OF RICHARD HOLCOMB; DECLARATION OF BRIAN BRAZIER; CERTIFICATION OF COUNSEL; CERTIFICATE OF SERVICE. |

## **Plaintiffs are undeniably the prevailing party.**

It is telling that throughout its argument (and other than reciting the standard to be applied in determining prevailing party status) the City **does not cite one single case** in support of its disingenuous "conclusion" that Plaintiffs did not prevail in this case. Clearly, as set forth in Plaintiffs' Memorandum, [Doc. 205-1], Plaintiffs are the prevailing party.

Nevertheless, the City argues that: 1) no injunctive order was ever entered, [Doc. 216, p. 11]; and, 2) that nothing in the Preliminary Injunction Order "gives anything more to Plaintiffs . . . that the SPO does not already provide or what the City has done or what it continues to do whenever its personnel enforces SPO." [Doc. 216, p. 11] Both of these contentions are patently false.

First, counsel recalls (and believes this occurred at the May 30, 2013 status conference [Doc. 130]) that Judge Seabright specifically informed the parties that the injunction would be entered as an Order so there could be no dispute as to its enforceability. Holcomb Decl. Yet, even if counsel's recollection were wrong, the Injunction Order itself completely eviscerates the City's contention that the injunction was not an order "[p]eriod." [Doc. 134, p. 9 ("IT IS SO ORDERED");

*compare* Doc. 216, p. 11] Clearly, the injunction is an Order and the parties' stipulation as to the terms of that Order are inconsequential to this undeniable fact.[1]

Second, the City's contention that the injunction (or the agreed upon TRO for that matter) did not change the status quo in this case is also demonstrably untrue. While the City stops short of claiming that the seizure or destruction of and refusal to return property in this case were within the scope of conduct

---

[1] One term that the City repeatedly relies upon in its briefing is its continued recalcitrant refusal to admit (in both the Preliminary Injunction and the Settlement Agreement) that it has done wrong. The City's refusal to admit that its conduct was wrong and/or the lack of a determination of the issue on its merits makes no difference whatsoever in the determination of prevailing party status. *Erickson v. Sympathy for the Record Indus. ex rel. Mermis*, C10-00636 HRL, 2011 WL 1211533 (N.D. Cal. Mar. 30, 2011) ("Here, he points out that this court made no determination as to the merits of the underlying claims for relief, and he did not admit any fault in the Rule 68 Judgment. Mermis fails to persuade. '[A] 'prevailing party' is one who has been awarded some relief by the court.' The key inquiry is whether some court action has created a 'material alteration of the legal relationship of the parties.'") (citations omitted); *Earth Island Inst., Inc. v. S. California Edison Co.*, 92 F.Supp.2d 1060, 1062 (S.D. Cal. 2000) (finding prevailing party status where "the parties entered into a settlement agreement, and therefore Defendant did not admit any fault"); *Luna v. Hoa Trung Vo*, CV F 08-1962 AWI, 2011 wl 2078004 (E.D. Cal. May 25, 2011) ("Plaintiff's concerns about Defendants' refusal to 'admit liability' are dubious given that Plaintiff can easily demonstrate conclusively that she is the "prevailing party" as a matter of law for purposes of both attorney's fees and entitlement to statutory damages."); *United States v. One 2008 Toyota Rav 4 Sports Util. Vehicle*, 2:09-CV-05672-SVW, 2012 WL 5272281 (C.D. Cal. Oct. 18, 2012) ("a litigant may become a 'prevailing party' even if the final outcome does not resolve the merits of the dispute. Critically, the touchstone is whether the parties' legal relationship has changed under judicial imprimatur.").

permitted by the Stored Property Ordinance, [*see e.g.* Docs. 137, pp. 12-36; 138 (Exhibits 1-13 to the Third Amended Complaint, video recordings of the conduct alleged)], the City infers that city workers carried on the same conduct in administering these raids as it did before.

Understandably in making this argument, the City makes no mention of individual Defendant Chun's deposition testimony that: the City provided only one training class before, as director of DFM, Chun was charged with the duty of supervising the raids; Chun was specifically trained that only "larger items" were to be tagged with the notice required of the ordinance; "smaller" items were seized without notice; and that city workers could destroy rather than seize property that met any one of five criteria, "flammable . . ., wet . . ., perishable . . ., broken . . ., [and any or all] building materials; and that it was left to the discretion of city workers as to whether this criteria was met." [Doc. 205-18]

In light of this revelation from the City's primary witness, it is not surprising that *all* of the issues raised in this case pertain specifically to the City's seizure of items without notice, the summary destruction of property, and/or the failure to return property.[2] [Doc. 137, pp. 12-36] As stated in Plaintiff Russell's Declaration:

_____

[2] This last issue was specifically remedied following the Motion for Sanctions, discussed below. In addition to these specific violations, Mr. Smith also
*Footnote continued

3

> The specific problems with the city's enforcement of the Stored Property Ordinance included: the city's failure to tag property ultimately seized; the city's failure to provide 24 hours under the SPO; the city's failure to provide an opportunity to remove property prior to seizure; the city's failure to store property in numbered bins as required by the SPO; the city's failure to exercise reasonable care in the handling of seized property; the outright destruction of property; the fact that property seized routinely disappeared when plaintiffs sought to retrieve it; the city's failure to respond to plaintiffs' requests to make appointments to retrieve seized property; and the city's failure to timely provide a time for property pickup.

[Doc. 205-4, pp. 2-3 ¶ 5]

Tagging, storing and returning items are all plainly required by the ordinance. ROH § 29-19, *et. seq*. Moreover, the ordinance in no way permits the summary destruction of wet, perishable, broken items and/or of all building materials. Thus, compliance with the TRO and the Preliminary Injunction Order, even if those injunctive instruments demanded no more than compliance with the ordinance, specifically and materially altered the relationship between Plaintiffs and Defendants.

The City also understandably avoids any discussion of Ms. Russell's Declaration which plainly demonstrates marked changes in the City's conduct following the injunctive relief:

---

challenged the fact that the City seized his property from a private location. [Doc. 137, pp. 12-16]  Not only is that outside the conduct permitted by the Stored Property Ordinance, but also the removal of tagged property from public property to private property is precisely what is required by the ordinance to prevent the otherwise authorized seizure. ROH § 29-19.3(b).

> 7. After the stipulation regarding the motion for temporary restraining order was put in place, many of the issues that we had previously had substantially improved. While by no means perfect, several of the issues improved markedly, including improved tagging prior to the seizure of property, improvement in the consistency of the required 24 hour notice, the ability to retrieve untagged contents of tents prior to seizure, a general improvement in the placing of property in numbered bins, better (although still imperfect) storage of property at the Halawa facility, and less property being destroyed and/or disappearing.

[Doc. 205-4]

Further, the City does not argue that the relief resulting from the Motion for Sanctions which required the City to establish an adequate retrieval procedure ***and train its employees***,³ [Doc. 48 ¶ 6], did not change the status quo. Instead, the City attempts to marginalize that relief.

---

³ Remarkably, the City now contends that:

> Plaintiffs suggest that 'three newly trained' (or 'to-be newly trained') city officials were assigned to satisfy Paragraph 3 of the Preliminary Injunction Stipulation. **This is incorrect.** The personnel who were tasked with this 'assignment' are existing employees in the Department of Facility Maintenance, Road Division: Messrs. Tyler Sugihara and Lan Yoneda and Ms. Trudy Ozaki. **They have been and are well-familiar with the requirements of the SPO and the City's compliance with the terms of the ordinance *as enacted and enforced from Day One to present.***

[Doc. 216, p. 13, n. 11 (emphases added)] In other words, the City asserts that the city workers were "shuffled" and not *newly trained* in compliance with the Order disposing of Plaintiffs' Motion for Sanctions. [Doc. 216, pp. 12-13] Thus, the City has not shown that Plaintiffs are incorrect, but rather that the City did not comply with an express Order of this Court. Judge Seabright specifically required

*Footnote continued

Obviously, this relief was significant and materially altered the parties' relationship. Each of Plaintiffs' claims involved property *that was not returned* to the Plaintiffs (insofar as the property at issue was not simply summarily destroyed at the time of seizure). [Doc. 137, pp. 12-36] This material alteration is also shown by Ms. Russell's Declaration:

> 8. A further improvement in our ability to retrieve property came after our attorneys filed a motion for sanctions against the city. In this court's January 24, 2013 order, the court found that the city did not comply with the provision of the preliminary injunction that allowed for the immediate retrieval of stored property. That order also found that the City needed to train its personal [sic] in the implementation of a procedure for the immediate retrieval of stored property. That ruling significantly improved our ability to retrieve our property and to do so in a timely fashion, as the city almost immediately adopted a procedure for the timely retrieval of property and devoted adequate resources toward the retrieval process. The city did set up a designated phone number to schedule appointments to retrieve seized property, and the city improved considerably the ability of plaintiffs to timely schedule appointments to retrieve seized property. This is [a] marked difference from the previous process, wherein no retrieval could take place at all unless Allen Sato was physically present at the office and without DFM director approval.

---

that the City not only correct its inadequate retrieval process but also: "**the City must train its personnel in the implementation of such a procedure given the apparent lack of knowledge of the terms of the Stipulation regarding the return of the seized property**." [Doc. 48 ¶ 6 (emphasis added)] The City did adopt and implement a comprehensive procedure to correct its egregious inability to return property. [Doc. 50] However, it now contends that its employees were *not* "newly" trained as required by the Order. Plaintiffs assumed the City had complied. This Court should not accept the City's revelation of its admitted non-compliance with an express order of this Court as proof that the relationship with the Plaintiffs was not "materially altered." In fact, this Court should impose sanctions. Nevertheless, the ordered retrieval procedure was a significant victory.

6

[Doc. 205-4 ¶ 8; *see also* Docs. 48, ¶ 6; 134, pp. 6-7]

Although prevailing on the "central issue" of a case is not necessary to the determination of prevailing party status, *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 790-92 (1989) (rejecting the "central issue" test), it is difficult to describe this case as having to do with anything other than the seizure or destruction of, and/or refusal to return seized property. As specifically recited in Plaintiffs' Memorandum, [Doc. 205-1, pp. 2-5], each of these issues was specifically remedied in the TRO agreement, Preliminary Injunction Order, and the Order following the Motion for Sanctions. [Docs. 18, ¶¶ 1(a) – (i); 48, pp. 3-4, ¶ 6; 50; and 134] The relationship between the parties materially changed.

Even if, by virtue of the Settlement Agreement, Plaintiffs had not been **fully compensated** for the items that were seized but never returned as discussed below, Plaintiffs could expect an interim award based on this portion of the record, alone. *Texas State Teachers Ass'n*, 489 U.S. at 790 ("Congress clearly contemplated that interim fee awards would be available 'where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues.'") (citations omitted). Indeed in *Watson v. City of Riverside*, 300 F.3d 1092 (9th Cir. 2002), the Ninth Circuit held that a Plaintiff who had obtained a

7

preliminary injunction was the prevailing party despite his case having become moot:

> This case is very similar to *Williams v. Alioto,* 625 F.2d 845, 847(9th Cir.1980), in which we held that a plaintiff who obtains a preliminary injunction is a prevailing party for purposes of § 1988 even though the underlying case becomes moot. In *Williams,* two individuals obtained a preliminary injunction prohibiting officials of the San Francisco Police Department from engaging in certain investigative practices aimed at solving the so-called Zebra murders. The district court also awarded attorney's fees in connection with the preliminary injunction. While the police department's appeal of the preliminary injunction was pending, the Zebra case was solved and the investigation ceased. The appeal was dismissed as moot. The police department then argued that because of the dismissal, the plaintiffs were not prevailing parties entitled to fees. We rejected that argument. We held that having won the preliminary injunction, the plaintiffs were prevailing parties notwithstanding the subsequent mooting of their case.
>
> We conclude that by obtaining the preliminary injunction appellees 'prevailed on the merits of at least some of (their) claims.' ... The preliminary injunction prevented appellants from continued enforcement of their original guidelines, which is precisely the relief appellees sought. Appellees succeeded on a 'significant issue in litigation, which achieve(d) ... the benefit the parties sought in bringing suit.' ... Our previous dismissal of the appeal as moot and vacation of the district court judgment does not affect the fact that for the pertinent time period appellees obtained the desired relief, upon findings by the district court that the original guidelines were unconstitutional.
>
> *Williams,* 625 F.2d at 847–848 (internal citations omitted).

*Watson*, 300 F.3d at 1095-96 (Plaintiff was prevailing party where preliminary injunction barring use of evidence at an administrative hearing was obtained despite the mootness of the case because the hearing had long since been held).

Thus, even if Plaintiffs had not also obtained **full compensation** for the seized items in this case as discussed below and no matter how boisterous the City's current rhetoric may be, Plaintiffs are the prevailing party.

Finally, and even if this Court could somehow reject the remainder of Plaintiffs' arguments, the City cannot possibly overcome the fact that Plaintiffs were **fully compensated** with tangible money in a binding settlement agreement.[4]

---

[4] The comment in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 600 (2001), that plaintiff prevails only when he or she receives a favorable judgment on the merits, or when he or she enters into a court-supervised consent decree is not as narrow as it may seem. *Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002), *cert. denied*, 537 U.S. 820 (2002). A settlement agreement with appropriate judicial imprimatur is sufficient. *Id.* (settlement agreement materially altered the legal relationship of the parties and rendered the plaintiff a prevailing party following settlement agreement filed with the court and where the court retained jurisdiction over the award of attorneys' fees); *compare P.N. v. Seattle School District No. 1*, 474 F.3d 1165, 1173 (9th Cir. 2007) (insufficient judicial imprimatur where IDEA lawsuit was filed *after* execution of settlement agreement for the sole purpose of obtaining attorneys' fees despite the fact that the previously executed "settlement agreement d[id] not appear to contemplate any judicial enforcement," did not "reserve 'any issue of attorneys' fees and costs,'" and "was not referred to any court, but was 'left for resolution by methods other than by th[e] Agreement and Release.'"). The City's citation of its disclaimer of an *admission* of liability is of no consequence to the determination of prevailing party status as sufficient judicial imprimatur plainly accompanies this agreement. And, even if this Court were to somehow consider the disclaimer of an admission at all, the Settlement Agreement itself specifically authorizes this Court to consider the terms of the Settlement when determining prevailing party status for the purposes of this Motion:

> The parties understand, however, that the United States District Court for the District of Hawaii and/or the United States Court of Appeals

*Footnote continued

The United States Supreme Court in *Farrar v. Hobby*, 506 U.S. 103 (1992) made clear that even a nominal damages judgment "or comparable relief through . . . settlement . . . modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Farrar*, 506 U.S. at 113. And, although "the prevailing party inquiry does not turn on the magnitude of the relief obtained,"[5] *Id.* at 114, in this case each Plaintiff received **full compensation** for the items that were seized and never returned. [Docs. 205-2, ¶ 4; 205-4, ¶ 14] Accordingly, the monetary settlement, alone,

---

for the Ninth Circuit may consider the fact of settlement, settlement negotiations, payment and/or receipt of consideration and other terms of this Agreement to determine "prevailing party" status for purposes of Paragraph 8 below.

[Doc. 202-1, p. 3 ¶ 7]  The City fully compensated Plaintiffs despite its disclaimer and this Court may consider that fact pursuant to the terms of the Settlement Agreement, even if such consideration were not required by applicable law.

[5] Notably, the Ninth Circuit has found that the *Farrar* holding only applies to cases where plaintiffs sought *substantial* damages but received only nominal damages. *Stivers v. Pierce*, 71 F.3d 732 (9th Cir. 1995). Plaintiffs never requested substantial damages, only compensation for their destroyed or unreturned items, compensation which they have received in full. And, even where substantial damages are sought but only nominal damages rewarded, "admirable" non-monetary results result in an award of attorneys' fees despite those attorneys having represented an unsympathetic plaintiff. *Wilcox v. City of Reno*, 42 F.3d 550 (9th Cir. 1994).

entitles Plaintiffs to a full award of attorneys' fees.[6]  And, if that were not sufficient, Plaintiffs are entitled pursuant to the Settlement Agreement to reclaim any property that the City has not destroyed, despite having been fully compensated for it.  [Doc. 202-1 ¶ 5(b)]  Of course the City does not mention this at all.

For whatever reason, the City also grossly exaggerates its accomplishments.  [Doc. 216, pp. 7-8]  It claims that the "City successfully dismissed" the claims against the individual Defendants.  That, of course, was accomplished via the settlement itself, [Docs. 200; 202-1 ¶ 9], and it is as nonsensical as claiming that Plaintiffs should not be prevailing party because the City was dismissed pursuant to the settlement.  As to the Motion to Dismiss, the record plainly shows that the City's arguments were decimated.  Defendants challenged *all* sixteen of Plaintiffs' claims.  [Doc. 84]  Of the sixteen claims, only two (the "Takings" and "Law of the

---

[6] Plaintiffs do not dispute that the City has attempted to operate a shell game, most notably by enacting the "Sidewalk Nuisance Ordinance" codified as ROH § 29-16, *et seq.* and, more recently proposing a safe zone at Sand Island, *see* Gordon Y.K. Pang, *Bills aimed at clearing off sidewalks are OK'd by panel*, STAR ADVERTISER, August 29, 2014 at A1.  Had this been the only "benefit" Plaintiffs received, Plaintiffs would not be entitled to compensation.  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 600 (2001).  However, even if this Court were to ignore the injunctive relief discussed above, as at least one commentator has noted: "*Buckhannon* should have no effect on fee awards in § 1983 damages actions."  3 Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983,* § 10:10 (West, 4th ed. 2011).

Splintered Paddle Claims") were dismissed outright. [Doc. 125] Nine survived without any necessary amendment. [Doc. 125] The remaining five were amended pursuant to Judge Seabright's Order in Plaintiffs' Third Amended Complaint and were not further challenged. [Doc. 137]

The only two issues where the City could possibly argue that Plaintiffs did not fully and completely prevail are: 1) the permanent injunction and 2) the facial challenge.[7]

The need for permanent injunctive relief was unnecessary. De-Occupy Honolulu no longer maintains an "occupational" vigil and all Plaintiffs except Dominic James have obtained long term housing. [Doc. 205-4 ¶¶ 12, 13] Moreover, the City was no longer actively enforcing the Stored Property Ordinance at Thomas Square. Instead it was enforcing the "Sidewalk Nuisance Ordinance," the subject of another lawsuit where the Plaintiffs in that case have also obtained injunctive relief. [Docs. 205-4 ¶ 11; the Defendants had virtually ceased utilizing the Stored Property Ordinance at that time, and instead conducted

---

[7] The City also observes that Plaintiffs filed a Motion to Reconsider following the hearing on the Motion for Sanctions. [Doc. 216, p. 5 (referring to Doc. 51)] That motion specifically raised the destruction of Dominic James' tent and was not denied because this issue was meritless, but instead because Plaintiffs should have attempted to retrieve Mr. James' property despite the finding of an inadequate retrieval procedure. [Doc. 52] Dominic James was then named as a Plaintiff, [Doc. 137], and pursuant to the settlement, has received full compensation for the destroyed tent which was the subject of the Motion to Reconsider. [Docs. 202, 205-2, 205-4]

their enforcement almost exclusively under the newly-enacted Sidewalk Nuisance Ordinance. Accordingly, Plaintiffs agreed to settle this case for the only remaining relief that was necessary to resolve this case, *i.e.*, compensation. Plaintiffs neither filed a motion for permanent injunctive relief nor seek any compensation for having sought permanent injunctive relief.

As for the facial challenge, the sole reason that Plaintiffs did not prevail was because the City, after the argument was raised, represented to this Court that it would not enforce the plain language of ROH § 29-19.5(a). [Doc. 122, 124] The Court seemingly agreed with the Plaintiffs' argument and even ordered supplemental briefing of this specific issue, at which point the City represented that it would not enforce the offending provisions. [Docs. 119, 122] This cannot be deemed any "loss" that carries any significance in the determination of prevailing party status.

These supposed "losses" do not merit a finding that Plaintiffs are not the prevailing party. "'[A] court's discretion to deny fees under § 1988 is very narrow and ... fee awards should be the rule rather than the exception.'" *Mendez v. Cnty. of San Bernardino,* 540 F.3d 1109, 1126 (9th Cir. 2008) (quoting *Herrington v. Cnty. of Sonoma,* 883 F.2d 739, 743 (9th Cir. 1989)). Likewise, no reduction in the amount awarded is justified. "Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war.... [L]osing is part of winning."

*Cabrales v. Cnty. of Los Angeles,* 935 F.2d 1050, 1053 (9th Cir.1991). This Court should instead consider "the significance of the overall relief obtained by the plaintiff," and "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Here, as shown above: Plaintiffs enjoyed injunctive relief throughout the entire period; the injunctive relief significantly changed the status quo to the benefit of the Plaintiffs; and, Plaintiffs were thereafter fully compensated for their losses. This is an excellent result.

### B. Plaintiffs deserve the full award.

As the City observes, the lodestar should only be adjusted "in rare and exceptional circumstances." [Doc. 216, p. 15 (*quoting Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)]

Plaintiffs initially object to the City's failure to identify the entries to which they object and the amounts involved. It is the City's burden to specify their objections and submit evidence supporting those objections. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). With the exception of 6.0 hours the City claims is not adequately described, 12.3 hours that the City claims was paralegal work, the City has completely failed in meeting this burden and its arguments should be summarily rejected.

The City argues that Mr. Holcomb should be awarded $200 per hour and Mr. Brazier $185 per hour. Plaintiffs concede (as they did in the Motion) those rates were awarded in the case styled *Hawaii Defense Foundation v. City and County of Honolulu*, 1:12-cv-00469 JMS RLP. Defendants appear to contend that even those rates are "grossly excessive." However, Plaintiffs dispute that rate is a fair or prevailing market rate, particularly where the City pays its most inexperienced outside counsel a minimum of $295 per hour. [Doc. 205-10]

The City claims that Plaintiffs' attorneys should not be paid for amending the complaint and/or preparing and filing Motions for Preliminary Injunction because some of the same briefing was involved.[8] [Doc. 216, p. 19] That same argument was rejected in *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

The City contends that 6.0 hours should be struck from Mr. Holcomb's award because Mr. Holcomb did not specify what was drafted or researched in preparing the PI/TRO Memorandum. [Doc. 216, p. 20] This Court should not

_____

[8] As for the Motion for Summary Judgment, the City contends that the attorneys should not be compensated at all. [Doc. 216, p. 19] Yet, the Court struck the motion with specific permission to refile it not because the work already done on the motion was unnecessary but because the Concise Statement of Facts needed *more* work, specifically the numbering of sentences and authentication of exhibits. [Doc. 188] Plaintiffs deserve compensation for that work.

require counsel to list specific cases that were involved in the research nor which sentences of a document were drafted during specific time increments. This objection, over a mere six hours, borders the absurd.

The City then contends that a total of 12.3 hours should not be awarded for paralegal work. [Doc. 216, pp. 22-23] This Court should not simply decline to award those hours, but instead should award a paralegal rate for that time.

The City claims asserts a bright line "rule" prohibiting counsel from billing "duplicate time for events." [Doc. 216, p. 23] The City not only fails to identify what events amount to duplicate time, but make no showing that the billing was unnecessary or excessive. This is contrary to the lodestar method. *See Camacho*, 523 F.3d at 980; *Deocampo v. Potts*, CIV. 2:06-1283 WBS, 2014 WL 788429 at *3 (E.D. Cal. Feb. 25, 2014).

The City requests a 20% reduction for purported "block-billing." Again, the City fails to cite to any block-billing. And, even if there were some block-billed entries, 20% is grossly excessive.

## CONCLUSION

The Motion for Attorneys' Fees should be granted in full as requested.

DATED: Honolulu, Hawaii; September 18, 2014.

                                            s/Brian Brazier\_\_\_\_
                                            Brian Brazier
                                            Attorney for Plaintiffs