IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DE-OCCUPY HONOLULU;      )   CIVIL NO. 12-00668 JMS-KSC
CATHERINE RUSSELL;       )
CHRISTOPHER SMITH; ANDREW )
SMITH; MADORI            )   FINDINGS AND RECOMMENDATION
RUMPUNGWORN; DOMINIC     )   TO GRANT IN PART AND DENY
JAMES; JOHN DOES 1-50,   )   IN PART PLAINTIFFS' MOTION
                         )   FOR ATTORNEYS' FEES AND
        Plaintiffs,      )   NON-TAXABLE EXPENSES; ORDER
                         )   DIRECTING RESUBMISSION OF
    vs.                  )   TIMESHEETS
                         )
CITY AND COUNTY OF       )
HONOLULU; WESTLEY CHUNG; )
TRISH MORIKAWA; LARRY    )
SANTOS; KEN SHIMIZU; JOHN )
DOES 1-50,               )
                         )
        Defendants.      )
_____ )

FINDINGS AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES AND NON-TAXABLE EXPENSES; ORDER DIRECTING
<u>RESUBMISSION OF TIMESHEETS</u>

Before the Court is Plaintiffs' Motion for

Attorneys' Fees and Non-Taxable Expenses, filed August

11, 2014.[1]  On August 22, 2014, Plaintiffs filed a

_____

[1]  Insofar as the Motion failed to comply with the
July 14, 2014 deadline set forth in the Court's May 30,
2014 Entering Order, Doc. No. 196, the Court issued an
Order to Show Cause why the Motion should not be denied
as untimely.  Doc. No. 206.  Following a hearing on the
Order to Show Cause and the submission of supplemental
briefing by the parties, the Court issued an Order

Statement of Consultation.  Defendants filed their

Opposition on September 5, 2014.  Plaintiffs filed

their Reply on September 18, 2014.

The Court finds this matter suitable for

disposition without a hearing pursuant to Rule 7.2(d)

of the Local Rules of Practice for the United States

District Court for the District of Hawaii ("Local

Rules").  After reviewing the Motion, the supporting

and opposing memoranda, and the relevant case law, the

Court FINDS and RECOMMENDS that the Motion be GRANTED

IN PART and DENIED IN PART for the reasons set forth

below.

<u>BACKGROUND</u>

Plaintiffs commenced the instant action on

December 12, 2012, seeking to strike down the City and

County of Honolulu's Stored Property Ordinance ("SPO")

as unconstitutional under the First, Fourth, Fifth, and

---

Deeming Timely Plaintiffs' Motion for Attorneys' Fees
and Non-Taxable Expenses.  Doc. No. 219.  In the Order,
the Court reluctantly concluded that excusable neglect
existed for the late filing of the Motion and thereby
deemed the Motion to be timely filed.  <u>Id.</u> at 12.

Fourteenth Amendments to the U.S. Constitution, and the Hawaii State constitutional counterparts.  Doc. No. 1. Plaintiffs also requested monetary damages pursuant to 42 U.S.C. § 1983, and asserted state tort claims.  Id. The same day, Plaintiffs filed a Motion for Temporary Injunctive Relief, as well as a Motion for Preliminary Injunction.  Doc. Nos. 4 & 5.

On December 18, 2012,[2] Judge Seabright approved a Stipulation re: Motion for Temporary Restraining Order entered into by the parties.  Doc. No. 18.  To maintain the status quo pending a hearing on the Preliminary Injunction Motion, the parties agreed that Defendants would comply with the SPO and would comply with the following in enforcing the same:

> a. Property must be tagged with notice pursuant to Chapter 29, Article 19, or a sticker that references such notice, for a period of 24 hours before impoundment unless the property poses a threat to the health, safety, or welfare of the public; if property poses a threat to the health, safety, or welfare of the public, City personnel will provide an opportunity for

_____

[2]  The Stipulation was docketed on December 19, 2012.

3

plaintiffs to immediately remedy the threat prior to impoundment;

b. No untagged tent or dwelling will be entered without a warrant. Plaintiffs acknowledge that there is no allegation that Defendants have entered an untagged tent or dwelling without a warrant;

c. A person claiming ownership of a tent that has been tagged for impoundment will be provided an opportunity, before the tent is impounded, to remove all untagged contents of the tent. Property retrieved by the person claiming ownership of the tent will not be impounded;

d. Members of the public may be excluded from the area within which tagged property is being impounded; the exclusion area may extend up to 10' from the property to be impounded. A person claiming ownership of a tent to be impounded will be permitted to enter the exclusion area for the purpose of removing the property from within the tent. Members of the public including property owners will be permitted to videotape or photograph the actions of the Defendants, their servants, employees, agents, and contractors so long as the videographer or photographer does so peaceably from outside the exclusion area.

e. All impounded property will be placed in numbered bins;

f. Reasonable care will be exercised to prevent the destruction and/or damage of impounded property;

4

g. At the time of the impoundment, an impoundment notification will be left in the place from which the property was impounded.  This notice will specifically identify the property impounded and provide a bin number in which the impounded property is or was stored;

h. Tagged property left on public property for more than 24 hours and unclaimed contents of tagged property will be impounded.  Impounded property will be stored at a facility in or near Halawa.  At the time that a person produces an impoundment notification with the specified bin number and attests to ownership of the property, all property related to that impoundment notification will be returned to the person immediately.  Production of receipts or identification will not be required for the return of the property; and

i. No property, tagged or untagged, will be destroyed until such time as the person claiming ownership has been provided a meaningful opportunity to reclaim the property.  Any impounded property of a perishable nature may be disposed of immediately in any manner without notice after impoundment by the City.  Property may be disposed of if not retrieved from storage within 30 days after impoundment.

Id. at 2-5.

On December 21, 2012, Plaintiffs filed a Motion for Sanctions, Enforcement of Agreement, and/or Temporary Restraining Order.  Doc. No. 19.

On January 24, 2013, Judge Seabright issued an
Order Granting in Part and Denying in Part Plaintiffs'
Motion for Sanctions, Enforcement of Agreement, and/or
Temporary Restraining Order ("Sanction Order"), ruling
as follows:

> 1. As to Plaintiffs' complaint that the
> City breached the Stipulation re: Motion
> for Temporary Restraining Order, filed on
> December 19, 2012 ("Stipulation"), by
> "seizing 'untagged' items," Plaintiffs
> withdraw this complaint because it lacks
> evidence to support this claim.  Thus, the
> court DENIES the Motion on this point.

> 2. As to Plaintiffs' complaint that the
> City breached the Stipulation by
> "rummaging" through "tagged tents" without
> identifying owners of the tents to remove
> personal property, the court finds that
> there is nothing in the Stipulation that
> requires the City to identify owners of
> personal property before it
> impounds the property. Thus, the court
> DENIES the Motion on this point.

> 3. As to Plaintiffs' complaint that the
> City breached the Stipulation by failing
> to exercise "due care to prevent
> destruction or harm to seized property,"
> the court has reviewed Plaintiffs'
> Exhibits 1 and 2 and finds that the video
> does not support this claim. Thus, the
> court DENIES the Motion on this point.

> 4. As to Plaintiffs' complaint that the
> City breached the Stipulation by failing

6

to store personal property in "numbered bins," the court finds that Plaintiffs failed to sustain their burden on this claim.  Thus, the court DENIES the Motion on this point.

5. As to Plaintiffs' complaint that the City breached the Stipulation by cordoning off more than ten (10) feet around the "tagged" property being impounded, the court finds that Plaintiffs failed to sustain their burden on this claim. Thus, the court DENIES the Motion on this point.

6. As to Plaintiffs' complaint that the City breached the Stipulation by refusing to return impounded property "immediately," although the court finds that the term "immediately" may be ambiguous in some circumstances, the court is able to conclude that the City did not comply with this provision.  Accordingly, the City and Plaintiffs shall meet and confer to work out a reasonable procedure by which the City will process requests for appointments to repossess impounded property to owners.  Further, the City must train its personnel in the implementation of such a procedure given the apparent lack of knowledge of the terms of the Stipulation regarding the return of the seized property.  The parties shall provide the court with a status letter by January 28, 2013 regarding the negotiations on this point. Thus, the court GRANTS the Motion on this point.

Doc. No. 48 at 2-4.  Plaintiffs' sought reconsideration

of the Sanction Order, Doc. No. 51, and on January 30,

2013, Judge Seabright denied their motion.  Doc. No.
52.

On March 1, 2013, Plaintiffs filed a First
Amended Complaint ("FAC").  Doc. No. 67.  On March 18,
2014, Plaintiffs moved for leave to file a Second
Amended Complaint ("SAC").  Doc. No. 77.  That same
day, Judge Seabright granted the motion and Plaintiffs
filed their SAC.  Doc. Nos. 79 & 80.

On April 1, 2013, Defendants filed a Motion to
Dismiss SAC and Plaintiffs filed a Superseding Motion
for Preliminary Injunction.  Doc. Nos. 84 & 85.

On May 21, 2013, Judge Seabright issued two
orders:  1) Order Granting in Part and Denying in Part
Defendants' Motion to Dismiss Second Amended Complaint
and 2) Order Denying Plaintiffs' Superceding Motion for
Preliminary Injunction.  Doc. Nos. 125 & 126.

On June 6, 2013, Judge Seabright approved a
stipulation entered into by the parties regarding the
filing of a Third Amended Complaint ("TAC").  Doc. No.
133.  Judge Seabright also approved a stipulation
regarding Plaintiffs' motion for preliminary

8

injunction, wherein the parties agreed to certain procedures concerning the repossession of stored property in order to preserve the status quo pending trial.  Doc. No. 134.  The procedures were identical to those agreed to in the December 18, 2012 stipulation. The stipulation also provided information about SPO related telephone calls and procedures for reclaiming personal property.  Id. at 6-7.  Finally, Defendants stated that the stipulation was not an admission of liability, nor did it materially change Defendant City's practices and procedures when Plaintiffs commenced the action.  Id. at 7-8.  The parties agreed that the stipulation was not a determination on the merits of the Preliminary Injunction Motion, and that the Court was not making any finding or ruling with respect to "prevailing party" status.  Id. at 8.

On June 24, 2013, Plaintiffs filed their TAC. Doc. No. 137.

On August 23, 2013, Plaintiffs filed a Second Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt.  Doc. No. 150.  Plaintiffs

withdrew this motion following the issuance of an order by Judge Seabright noting Plaintiffs' failure to address important facts, and requiring Plaintiffs to file a supplemental brief addressing deficiencies in the motion.  Doc. No. 151 & 152.

On November 26, 2013, Judge Seabright approved a Stipulation to Dismiss Plaintiff Andrew Smith and Defendant Larry Santos With Prejudice.  Doc. No. 167.

On April 16, 2014, the parties filed motions for summary judgment.  Doc. Nos. 173 & 174.  On May 12, 2014, Judge Seabright struck Plaintiffs' motion for summary judgment due to "glaring problems" with Plaintiffs' evidence, "[w]hether attributable to lack of experience or simple carelessness," such as failure to authenticate; haphazard presentation of the evidence; and improper formatting of the concise statement of facts.  Doc. No. 188.

On May 30, 2014, the Court held a settlement on the record, imposing deadlines of June 30, 2014, and July 14, 2014, for the dismissal and motion for attorneys' fees, respectively.  Doc. No. 196.

Following multiple continuances of the
dismissal deadline, on July 10, 2014, Judge Seabright
approved a Stipulation to Dismiss Individual
Defendants:  Westley Chun, Trish Morikawa, Kenneth
Shimizu, and John Does 1-50 With Prejudice.  Doc. No.
200.  The Stipulation to Dismiss Defendant City and
County of Honolulu With Prejudice was entered on July
28, 2014.  Doc. No. 204.

The present Motion followed.

<u>DISCUSSION</u>

I.  <u>Entitlement to Attorneys' Fees</u>

Plaintiffs submit that as the prevailing party,
they are entitled to attorneys' fees pursuant to 42
U.S.C. § 1988, the Settlement Agreement, and the
Dismissals of Defendants.  In support of their
contention that they are the prevailing party,
Plaintiffs cite the following:  1) they enjoyed
injunctive relief throughout the pendency of this
lawsuit and a Court-mandated "retrieval" procedure;
2) 14 of the 16 claims asserted by Plaintiffs survived
Defendants' motion to dismiss; 3) Defendants agreed to

11

a temporary restraining order and preliminary injunctive relief as to Plaintiffs' "as applied" challenges; 4) Plaintiffs raised a facial challenge to the SPO that was denied, but only because Defendant City represented that it would not enforce the offending provision; that in fact the Court seemingly agreed with Plaintiffs' reasoning; 5) pursuant to the Settlement Agreement, Plaintiffs recovered $1,000 in damages, which compensated them for their property which was never returned and/or destroyed, and authorizes Plaintiffs to obtain property that may still be stored by Defendant City.

Plaintiffs request either $281,200.19 or $176,548.18 in attorneys' fees.  The former amount represents a fee award with a requested increase in counsel's hourly rates, while the latter amount represents a fee award calculated with Plaintiffs' counsel's established hourly rates.

Defendants contest Plaintiffs' claims of prevailing party status, arguing that the SPO as enacted and as enforced remains in tact, and that there

12

has been no material alteration in the legal relationship between the parties that would entitle Plaintiffs to attorneys' fees.  Defendants contend that neither the Stipulation re: TRO nor the Stipulation re: Preliminary Injunction granted Plaintiffs injunctive relief or gave Plaintiffs anything more than what was already provided by the SPO.  Rebuffing Plaintiffs' characterization of the retrieval procedure as demonstrative of "success", Defendants explain that after meeting and conferring with Plaintiffs, at the direction of Judge Seabright, they shuffled existing personnel and hooked up a telephone console. Defendants strongly dispute that their actions constitute a material alteration in the legal relationship between the parties.

Section 1988 provides, in pertinent part:  "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  To be considered

13

a "prevailing party," a party must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Farrar v. Hobby, 506 U.S. 103, 109 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1160 (9th Cir. 2000). In other words, a plaintiff "'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar, 506 U.S. at 111-12; UFO Chuting of Hawaii, Inc. v. Smith, 508 F.3d 1189, 1197 (9th Cir. 2007). "Relief 'on the merits' occurs when the material alteration of the parties' legal relationship is accompanied by '*judicial imprimatur* on the change.'" Higher Taste, Inc. v. City of Tacoma, 717 F.3d 712, 715 (9th Cir. 2013) (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Heath & Human Res., 532 U.S. 598, 605 (2001)).

Although the Supreme Court has held that "[n]o material alteration of the legal relationship between

14

the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant," <u>Farrar</u>, 506 U.S. at 113,[3] the Ninth Circuit has made clear that in certain circumstances, "prevailing party" status may be accorded to those who obtain injunctive relief.  <u>See</u> <u>UFO</u>, 508 F.3d at 1197 (defining prevailing party as one who "achieves the objective of its suit by means of an injunction issued by the district court"); <u>Williams v. Alioto</u>, 625 F.2d 845, 847 (9th Cir. 1980) (per curiam) (holding that a plaintiff who obtains a preliminary injunction prevails on at least some of the merits of its claims); <u>Harris v. McCarthy</u>, 790 F.2d 753, 757 (9th Cir. 1986) (issuance of preliminary injunction, without more, warranted an award of attorneys' fees because the plaintiffs succeeded on a significant issue in the litigation and achieved some of the benefit they sought in bringing suit).  Indeed, "[o]ther court approved

_____

[3]  <u>Farrar v. Hobby</u> did not involve "prevailing party" status in the context of injunctive relief, but rather, whether a party who is awarded nominal damages following trial is a "prevailing party."  506 U.S. 103.

15

actions will suffice, provided they entail a judicial determination that the claims on which the plaintiff obtains relief are potentially meritorious." High Taste, 717 F.3d at 715.

Prevailing party status may also be conferred upon a plaintiff in litigation that results in an enforceable settlement agreement. La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1089 (9th Cir. 2010) ("Litigation that results in an enforceable settlement agreement can confer 'prevailing party' status on a plaintiff.") (quoting Carbonell v. I.N.S., 429 F.3d 894, 899 (9th Cir. 2005) ("We have . . . found that a litigant prevailed when he entered into a legally enforceable settlement agreement.")); Richard S. v. Dep't of Dev. Servs., 317 F.3d 1080, 1086 (9th Cir. 2003) (discussing Ninth Circuit law conferring prevailing party status on a plaintiff "when he or she enters into a legally enforceable settlement agreement against the defendant") (citation and quotations omitted).

The Ninth Circuit employs a three-part test in determining whether a settlement agreement confers prevailing party status on a plaintiff:  "(1) judicial enforcement; (2) material alteration of the legal relationship between the parties; and (3) actual relief on the merits of [the plaintiff's] claims."  La Asociacion, 624 F.3d at 1089 (quoting Saint John's Organic Farm v. Gem County Mosquito Abatement Dist., 574 F.3d 1054, 1059 (9th Cir. 2009)) (alteration in original).

A.  Settlement Agreement

The Court will first determine whether the Settlement Agreement confers prevailing party status upon Plaintiffs.  The Settlement Agreement required Defendants to pay Plaintiffs $1,000.00 and to coordinate retrieval of Plaintiffs' items stored in storage bins and held at the Halawa Corp Yard.  Doc. No. 202, Ex. 1 at ¶ 5.  The Settlement Agreement also authorized Plaintiffs to petition the Court for attorneys' fees and cost and the parties acknowledged that this Court or the Ninth Circuit could consider the

17

settlement to determine prevailing party status.  Id.,
Ex. 1 at ¶¶ 7-8.

    1.  Judicial Enforcement

    The terms of the Settlement Agreement are
judicially enforceable.  Although the Court did not, in
the stipulations for dismissal, expressly retain
jurisdiction to enforce the terms of the settlement,
the fact that the parties agreed that the Court would
retain jurisdiction to address the matter of fees and
costs, is sufficient judicial oversight for the purpose
of prevailing party status.[4]  Richard S., 317 F.3d at
1087 ("The district court's retention of jurisdiction
over the attorney's fees issue, 'thus provid[ed]
sufficient judicial oversight to justify an award of
attorneys' fees and costs.'" (alteration in original));
Barrios v. Cal. Interscholastic Federation, 277 F.3d
1128, 1134 n.5 (9th Cir. 2002) ("Moreover, the parties,

---

    [4] By contrast, if the parties had not included the
attorneys' fees/costs provision in the Settlement
Agreement, it would not have any judicial imprimatur.
P.N. v. Seattle Sch. Dist. No. 1., 474 F.3d 1165, 1173
(9th Cir. 2007).

in their settlement, agreed that the district court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an award of attorneys' fee and costs."); Haw. Defense Foundation v. City and County of Honolulu, Civil No. 12-00469 JMS-RLP, 2014 WL 2804445, at *3 (D. Haw. Apr. 22, 2014) (The parties' agreement that the court would retain jurisdiction to decide the issue of attorneys' fees was sufficient to convey judicial imprimatur over the settlement).

Other circumstances also support a finding that sufficient judicial oversight exists.  First, the terms of the Settlement Agreement were placed on the record on May 30, 2014, and the Court's related minutes stated that "[b]ased upon representations by counsel, the Court finds that the essential terms of a valid and binding settlement agreement have been stated." Doc. No. 196.  Second, the parties' agreement was reduced to writing and the resulting Settlement Agreement was filed with the Court.  Doc. No. 202.

Finally, the stipulations for dismissal referenced the Settlement Agreement.  Doc. Nos. 200 ("Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), Plaintiffs . . . and Defendants . . . consistent with the terms of the settlement of this matter, stipulate to dismiss the following parties with prejudice."); Doc. No. 204 ("Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), Plaintiffs . . . and Defendant . . . consistent with the terms of settlement of this matter, stipulate to dismiss Defendant City and County of Honolulu with prejudice.").  In Richard S. v. Department of Developmental Services, the Ninth Circuit rejected the defendants' contention that the settlement agreement was a private settlement agreement, and therefore not legally enforceable, because the parties stated the terms of the agreement on the record before the magistrate judge; the magistrate judge entered minutes reflecting that the parties agreed and understood that the terms of the agreement were binding and enforceable; the agreement was reduced to writing and filed with the district court; the order of

20

dismissal expressly referred to the settlement agreement; and the parties stipulated that the district court would retain jurisdiction to resolve the issue of attorneys' fees and costs.  <u>Richard S.</u>, 317 F.3d at 1088.  The actions taken by the parties and the Court in this action establish the requisite judicial imprimatur to confer prevailing party status.  Accordingly, the first prong of the test is satisfied.

   2. <u>Material Alteration of the Legal<br>Relationship Between the Parties</u>

  The Court next determines whether the Settlement Agreement materially altered the legal relationship between the parties.  "A material alteration of the parties' legal relationship occurs when 'the plaintiff can force the defendant to do something he otherwise would not have to do.'"  <u>Higher Taste</u>, 717 F.3d at 716 (quoting <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1118 (9th Cir. 2000)).  In the present action, the Settlement Agreement "materially altered the relationship between the parties because [Defendants] were required to do something directly

benefitting [Plaintiffs] that they otherwise would not have had to do." <u>Richard S.</u>, 317 F.3d at 1087. Pursuant to the terms of the Settlement Agreement, Plaintiffs obtained $1,000.00 in monetary relief for unreturned and/or destroyed property,[5] and the parties were to coordinate the return of Plaintiffs' stored property. Moreover, the Settlement Agreement is enforceable against Defendant. <u>Fischer</u>, 214 F.3d at 1118 ("[A] material alteration of the legal

---

[5] Defendants argue that the $1,000.00 did not represent damages, but merely consideration for the settlement of all claims. Opp'n at 9. However, whether the $1,000.00 is characterized as "damages" or "consideration", the fact remains that Plaintiffs obtained monetary relief. More importantly, the $1,000.00, though not a sizeable amount of monetary relief, benefitted Plaintiffs and Defendants would not have paid this amount if not for the settlement. <u>Cf. Farrar</u>, 506 U.S. at 113 ("A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant an amount of money he otherwise would not pay."). In any event, monetary relief is not a requirement for prevailing party status. <u>Fischer</u>, 214 F.3d at 1118.

Defendants also emphasize that they did not admit liability. That Defendants disclaimed liability does not preclude a finding that Plaintiffs are the prevailing party. The Court's determination does not consider whether liability was established.

relationship occurs [when] the plaintiff becomes entitled to enforce . . . a settlement agreement against the defendant." (second alteration in original)).   When coupled with the fact that Defendants were made to do something benefitting Plaintiffs that they would not otherwise have had to do, there has been a material alteration in the legal relationship between the parties.

Defendants further proffer that Plaintiffs have not materially altered their relationship with Defendants because the SPO as enacted and enforced from day one remains intact.   The Court disagrees.   Even if the Settlement Agreement required Defendants to do what they were already doing, their "behavior became legally required rather than voluntary as a result of the [Settlement] Agreement."   Saint John's, 574 F.3d at 1059; Fischer, 241 F.3d at 1118 ("The Inn next argues that Fischer cannot be the prevailing party because the Inn's 'duty' to comply with the ADA was 'the same before and after the settlement.'   The Supreme Court, however, has never framed the prevailing party inquiry

23

in terms of altering a party's 'duty' to follow the law.  Instead, the Court has focused on whether the plaintiff obtained an enforceable judgment or settlement that requires the defendant to do something he otherwise would not have to do.").  Inasmuch as Defendants' behavior was changed because of the Settlement Agreement, the Settlement Agreement can be said to have "effected a material alteration in the legal relationship between the parties."  Saint John's, 574 F.3d at 1059.  The Court therefore finds that the second prong of the test is satisfied.

      3.   **Actual Relief on the Merits of Plaintiffs' Claims**

      Finally, the Court considers whether Plaintiffs obtained actual relief on the merits of Plaintiffs' claims.  To achieve actual relief on the merits of their claims, "a plaintiff must receive some actual relief that serves the goals of the claim in his or her complaint."  Id.; La Asociacion, 624 F.3d at 1090.  The threshold for sufficient relief to confer prevailing party status is low.  Saint John's, 574 F.3d at 1059.

All that is required for a plaintiff to cross the threshold is success on any significant issue in the litigation which achieved some of the benefit the plaintiff sought in bringing suit.  <u>Id.</u>  "[A]n extremely small amount of relief is sufficient to confer prevailing party status."  <u>Id.</u> at 1059-60; <u>Fischer</u>, 214 F.3d at 1119 ("[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained . . . Although the size of the relief may impact the size of the eventual fee award, it does not affect *eligibility* for a fee award." (citations and quotations omitted)); <u>Mendez v. County of San Bernardino</u>, 540 F.3d 1109, 1125 (9th Cir. 2008) ("Even a plaintiff who wins only nominal damages is considered a prevailing plaintiff under § 1988.").

Plaintiffs alleged that the SOP is unconstitutional (facially and as applied) and even if it could withstand scrutiny, that Defendants routinely disregarded provisions of the SOP.  Plaintiffs asked the Court for 1) a declaratory judgment declaring the SOP unconstitutional and affirming that Defendants'

actions violated Plaintiffs' Constitutional (federal
and state) rights; 2) a temporary restraining order
a) preventing Defendants from seizing or destroying
property unless certain conditions are met and
b) compelling Defendants to leave sufficiently detailed
notice when property is seized; 3) permanent/
preliminary injunctive relief with respect to the
foregoing; 4) compensatory damages; and 5) punitive
damages.  TAC at 45-47.  Through the Settlement
Agreement, Plaintiffs received some relief, albeit
limited, on their claims.  Thus, they received some
actual relief that serves the goals of the claims in
the TAC.  For these reasons, the Court finds that
Plaintiffs are the prevailing party in this action.

　　B.　Injunctive Relief

　　　　Given the determination that Plaintiffs are the
prevailing party pursuant to the Settlement Agreement,
the Court need not reach the issue of whether the
stipulations regarding the motions for injunctive
relief, or the Sanction Order, conferred prevailing
party status upon Plaintiffs.

## II. <u>Calculation of Attorneys' Fees</u>

Having determined that Plaintiffs are the prevailing party, the Court now assesses the amount of fees to which they are entitled.  Under federal law, reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in <u>Hensley v. Eckerhart</u>.  <u>Fischer</u>, 214 F.3d at 1119.  The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  <u>Hensley</u>, 461 U.S. at 433.  Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975), which have not already been subsumed in the lodestar calculation.  <u>See</u> <u>Fischer</u>, 214 F.3d at 1119 (citation omitted).

The factors the Ninth Circuit articulated in <u>Kerr</u> are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the

27

attorney due to acceptance of the case,
(5) the customary fee, (6) whether the fee
is fixed or contingent, (7) time
limitations imposed by the client or the
circumstances, (8) the amount involved and
the results obtained, (9) the experience,
reputation, and ability of the attorneys,
(10) the "undesirability" of the case,
(11) the nature and length of the
professional relationship with the client,
and (12) awards in similar cases.

Kerr, 526 F.2d at 70.  Factors one through five have

been subsumed in the lodestar calculation.  See Morales

v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir.

1996).  Further, the Ninth Circuit, extending City of

Burlington v. Daque, 505 U.S. 557, 567 (1992), held

that the sixth factor, whether the fee is fixed or

contingent may not be considered in the lodestar

calculation.  See Davis v. City & County of San

Francisco, 976 F.2d 1536, 1549 (9th Cir. 1992), vacated

in part on other grounds, 984 F.2d 345 (9th Cir. 1993).

Once calculated, the "lodestar" is presumptively

reasonable.  See Pennsylvania v. Delaware Valley

Citizens' Council for Clean Air, 483 U.S. 711, 728

(1987); see also Fischer, 214 F.3d at 1119 n.4 (stating

that the lodestar figure should only be adjusted in

28

rare and exceptional cases).

When a plaintiff achieves limited success, however, "the district court can simply award 'low fees or no fees' without reciting the *Kerr* factors." Fischer, 214 F.3d at 1119.  "The Supreme Court has instructed that when attempting to determine whether a victory is 'technical,' the district court must 'compare' the relief the plaintiff originally sought in his complaint with the relief he ultimately obtained." Id. (quoting Farrar, 506 U.S. at 114).  Indeed, "the degree of success obtained" is "the most critical factor" in determining the reasonableness of a fee award.  Farrar, 506 U.S. at 114 (citations omitted). Thus, while the degree of a plaintiff's success does not affect the prevailing party analysis, it is relevant to the reasonableness inquiry.  Richard S., 317 F.3d at 1087 n.3.  A comparison between the amount of damages sought versus those awarded "promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'" Farrar, 506 U.S. at 114-

29

15 (citation omitted).  Because § 1988 fee awards "were never intended to produce windfalls to attorneys," in evaluating fee requests, courts must consider "the relationship between the extent of success and the amount of the fee award."  Id. at 115-16 (citations and quotations omitted).

Plaintiffs request the following attorneys' fees for work performed by their attorneys.  Table 1 reflects the lodestar with the requested increased hourly rate.  Table 2 reflects the lodestar with the hourly rates previously deemed reasonable for Plaintiffs' counsel.

**Table 1**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| Richard Holcomb | 391.1 | $355.00 | $138,840.50 |
| Brian Brazier | 285.425 | $250.00 | $71,356.25 |
| **TAX (4.712%)** | | | $9,904.47 |
| **TOTALS** | 676.525 | | $220,101.22 |

**Table 2**

| **NAME** | **HOURS** | **RATE** | **TOTAL** |
|---|---|---|---|
| Richard Holcomb | 391.1 | $200.00 | $78,220.00 |
| Brian Brazier | 285.425 | $185.00 | $52,803.63 |
| **TAX (4.712%)** | | | $6,173.83 |
| **TOTALS** | 676.525 | | $137,197.46 |

Incredibly, Plaintiffs have requested a <u>25%
increase</u> to the lodestar.[6]  Yet they have offered no
legitimate legal or factual basis, nor could they, for
this substantial multiplier.  With the 25% increase
requested by Plaintiffs, the total requests (depending
on the hourly rate applied) are $281,200.19 and
$176,548.18, respectively.

The Court is now tasked with determining the
reasonableness of the requested hourly rates and time
expended.

A.   <u>Reasonable Hourly Rate</u>

In determining the reasonableness of an hourly

_____

[6]  The 25% applies to all work except work
completed on this Motion and applicable taxes.

31

rate, the experience, skill, and reputation of the attorney requesting fees are taken into account.  <u>See</u> <u>Webb v. Ada County</u>, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  <u>See</u> <u>id.</u>; <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir. 1992), <u>as amended on denial of reh'g</u>, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").  It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services.  <u>See</u> <u>Jordan v. Multnomah County</u>, 815 F.2d 1258, 1263 (9th Cir. 1987).

In flagrant disregard of Judge Seabright's well-reasoned Order in <u>Hawaii Defense Foundation v. City and County of Honolulu</u>, Civil No. 12-00469 JMS-RLP, 2014 WL 2804448 (D. Haw. June 19, 2014), Plaintiffs' counsel brazenly argue that they are entitled to highly inflated hourly rates - $350.00 for

Mr. Holcomb and $250 for Mr. Brazier.[7]  Two judges have already considered and rejected their arguments.  By resubmitting this issue, Plaintiffs are in effect seeking reconsideration of Judge Seabright's order.[8] Presenting such a challenge to this Court, which defers to the opinions and rulings of the district judges in this district, is wasteful, particularly because Judge Seabright is the district judge presiding over this case.  Plaintiffs' disagreement with Judge Seabright's decision is an invalid basis to challenge it now.

Relying heavily on the same evidence presented to Judge Seabright, Plaintiffs insist that their

---

[7]  In reality, Plaintiffs actually request hourly rates that are higher still because they also seek a 25% increase in the lodestar amount, which includes the hourly rate.

[8]  Plaintiffs' counsel apparently employs the tactic of using one case to challenge and/or attack rulings in another. In Hawaii Defense, Judge Seabright noted that counsel suggested that the striking of the Motion for Summary Judgment in this case was improper "because authentication was unnecessary where the exhibits were authenticated by operation of law when the defendants failed to timely file responses to Requests for Admissions." Haw. Def., 2014 WL 2804448, at *4 n.3.

33

attorneys are entitled to their desired rates, even though none of the case law supports such rates for their skill level and experience.  Of their 29 page memorandum in support of the Motion, 17.5 pages were dedicated to reiterating arguments already advanced and rejected in Hawaii Defense.[9]  As will be further explained below, counsel's time would have been better spent discussing the amount of fees to which they are entitled in this limited success case, rather than rehashing the issue of their hourly rates, which has already been determined.  Further, counsel should have better researched and made efforts to comply with the extensive body of law in this district and with Ninth Circuit law regarding compensable tasks.

The Motion is utterly devoid of any legal (or other) support to warrant an overruling of Judge Seabright's order.  Because Judge Seabright already conducted a thorough analysis of the hourly rate issue,

---

[9]  By contrast, Plaintiffs devoted approximately one page to the hours expended, and even then, failed to address the relevant law.

34

with which the Court agrees, it is unnecessary to revisit many of the issues discussed in <u>Hawaii Defense</u>. Moreover, Plaintiffs' counsel certainly have not demonstrated, or even argued, that their abilities or circumstance have changed so significantly since the issuance of Hawaii Defense on June 19, 2014, that they would be entitled to a 43.66% (Mr. Holcomb) and 26% (Mr. Brazier) increase in their hourly rates.

One of the arguments presented by Plaintiffs is that inflation warrants a rate increase. Plaintiffs cite the increases in salary to federal judges for inflation as support. This bare assertion, without more, is contrary to established law in this district. Both this Court and Judge Kobayashi have determined that inflation alone does not warrant an automatic increase in an attorney's hourly rate. <u>I.T. v. Dep't of Educ.</u>, Civil No. 11-00676 LEK-KSC, 2012 WL 6969333, at *3 (D. Haw. Nov. 30, 2012) (finding that inflation alone is not a sufficient basis for the rate increase), adopted by <u>I.T. v. Dep't of Educ.</u>, Civil No. 11-00676 LEK-KSC, 2013 WL 419016, at *3 (D. Haw. Jan. 31, 2013)

(agreeing with magistrate judge's finding and noting that another magistrate judge had also found counsel's $275.00 hourly rate to be reasonable).

Plaintiffs' accusations about the Court's hourly rate determinations are not well founded and evidence a fundamental misunderstanding about how rate determinations are made in this district.  That Plaintiffs' counsel regard themselves so highly as to be entitled to rates grossly exceeding that of counsel with decades more experience, does not lead to the conclusion that the judges in this district have engaged in "systemic reductions in attorneys' rates" or improper capping of rates.  In determining appropriate rates, this Court considers an attorney's experience, skill, and reputation, prevailing rates in this district, and, if necessary, draws comparisons (whether expressly stated or not) between counsel with similar experience and skill.  There are a number of instances where the Court awards the requested hourly rate because it is reasonable under the circumstances of a particular case.  Consequently, any allegation by

36

Plaintiffs that the rates awarded by the Court are not

the prevailing rates in the community is without merit.

The law clearly obligates the Court to take into

account the skill, experience, and reputation of the

attorney requesting fees.  In conducting such an

evaluation, reductions must inevitably be made because,

just as Plaintiffs' counsel do here, attorneys

sometimes place higher value on their worth and ability

than is justified based on their performance in a given

case.  Likewise, the hourly rate willingly paid by a

client is not necessarily commensurate with "prevailing

rates" in this district.[10]  As Judge Seabright so aptly

stated:  "what Messrs. Brazier and Holcomb are able to

charge a single client does not suggest they command

---

[10]  In a footnote, Plaintiffs submit that Mr.
Brazier has current clients paying $250.00 and he has
received $350.00 from other federal district courts in
California.  Again, that a client may be willing to pay
an inflated hourly rate does not speak to the
reasonableness of the rate.  Moreover, awards by
district courts in California are not binding or
persuasive here.  The law is clear that the relevant
community is the forum district.  A $350.00 rate based
on prevailing rates in California has no relevance
here.

this rate as to all their clients and/or are entitled
to such rate as a reasonable hourly rate."  Haw.
Defense, 2014 WL 2804448, at *5 n.7.  If the hourly
rates awarded by the Court always had to comport with
the rates paid by clients, it would dispense of the
requirement that a court take into account an
attorney's skill and experience.

     Even if the Court disagreed with Judge
Seabright's analysis in Hawaii Defense, which it does
not, or Plaintiffs had submitted compelling evidence to
support an increase in counsel's hourly rates, the
Court would nevertheless find that counsel is not
entitled to the rates they request.  In fact, if this
Court did not defer to the hourly rates determination
made by Judge Seabright, it would be inclined to
recommend rates lower than $200.00 and $185.00 based on
its knowledge of counsel's performance in this case.

     Plaintiffs' counsel lament what they
characterize as grossly inadequate/insufficient hourly
rates, but they have not demonstrated, either in this
case or the others in which they have appeared, that

38

their abilities or skills justify the high rates they seek.  They have flouted rules, have failed to comply with orders, and have exhibited a misunderstanding of the law and/or failed to recognize the applicable law throughout the course of this litigation.  The following are examples of counsel's subpar performance: 1) counsel untimely filed this Motion because it misunderstood the hard deadline imposed by the Court, as well as Local Rule 54.3, which resulted in additional (and unnecessary and avoidable) work for the Court and Defendants;[11] 2) counsel's courtesy copies failed to comply with Local Rule 7.7 (requiring that courtesy copies "comply with all Local Rule requirements, including the tabbing of exhibits and declarations or affidavits"); 3) Judge Seabright struck Plaintiffs' Motion for Summary Judgment due to "glaring problems" with Plaintiffs' evidence, "[w]hether

---

[11]   The Court acknowledges that it ultimately deemed the Motion timely, but it was with great reluctance that it did so.  The point here, however, is that Plaintiffs failed to meet the original deadline set for filing the Motion.

39

attributable to lack of experience or simple carelessness," such as, failure to authenticate,[12] haphazard presentation of the evidence, improper formatting of the concise statement of facts; and 4) Judge Seabright issued an order in response to Plaintiffs' Second Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt noting Plaintiffs' failure to address important facts, and requiring Plaintiffs to file a supplemental brief addressing deficiencies in the motion.[13]   These examples tend to establish that counsel lack experience, skill, and diligence.

---

[12]   Plaintiffs' counsel also failed to authenticate exhibits in Hawaii Defense.  Haw. Defense, 2014 WL 2804448, at *4 n.3 ("Counsel's submissions in this case are no different—they attach exhibits to their Motion and Objections without ever providing a declaration identifying and authenticating those exhibits to the court.  Such sloppiness does nothing to support counsels' claim of experience and skill.").

[13]   The Court should not have to repeatedly point out the deficiencies in counsel's work product.  It is precisely for these reasons that counsel are not entitled to the higher rates they seek.

From a legal perspective, this case was not complicated and did not require attorneys with specialized skill.  Counsel contend in part that they are entitled to higher hourly rates and a 25% increase in the award because of the undesirability of this case.  The fact that other attorneys might have been unwilling to take the case is not indicative of complexity or legal significance and any suggestion that counsel are entitled to higher hourly rates or an inflated award because the case was undesirable is unconvincing.

From a procedural perspective, this case was made more complicated than it needed to be.  A number of filings, orders, and conferences were necessitated by counsel's conduct.  <u>See</u>, <u>e.g.</u>, Doc. No. 52 at 4 (In denying Plaintiffs' motion for reconsideration, Judge Seabright stated: "[w]here Plaintiffs had ample opportunity to present this evidence and have not established diligence, the court will not allow such piecemeal litigation").  As such, the nature and complexity of this case does not support an increase in

41

counsel's hourly rates, let alone a 25% increase to the lodestar in this case.

Counsel's apparent lack of experience and skill, as evidenced by the foregoing examples and the Court's multiple interactions with counsel, supports a finding that the hourly rates established by Judge Seabright are manifestly reasonable.  Therefore, the Court recommends that Mr. Holcomb's rate remain at $200.00, and Mr. Brazier's rate remain at $185.00.

B.   <u>Hours Reasonably Expended</u>

Beyond establishing a reasonable hourly rate, a prevailing party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained.  <u>See</u> <u>Tirona v. State Farm Mut. Auto. Ins. Co.</u>, 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted).  The court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable.  <u>See</u> <u>id.</u> at 637 (citing <u>INVST Fin. Group v. Chem-Nuclear Sys.</u>, 815 F.2d 391,

404 (6th Cir. 1987), <u>cert. denied</u>, 484 U.S. 927 (1987)).  This Court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." <u>Soler v. G & U, Inc.</u>, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated.  <u>See Gates</u>, 987 F.2d at 1399 (quoting <u>Hensley</u>, 461 U.S. at 433-34).  Courts must exclude from fee calculations hours that were not "reasonably expended." <u>Hensley</u>, 461 U.S. at 434 (citation and quotations omitted).

In the present case, the Court declines to evaluate the hours expended by counsel at this time. Counsel's timesheets are rife with non-compensable entries.  It is not the Court's duty to conduct a painstaking review of approximately 40 pages of timesheets, <u>see</u> Mot., Exs. 7, 8, 11 & 12, when counsel has not conducted a sufficient review themselves. Counsel represents that they have exercised billing judgment.  However, they plainly have not because had

they reviewed their timesheets and the applicable case law, many entries should have been excluded from the request.

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

Hensley, 461 U.S. at 434. In addition to including a number of non-compensable entries, counsel has failed to explain why Plaintiffs are entitled to the requested fee award, which is disproportionately high compared to the limited success enjoyed by Plaintiffs.

Plaintiffs' counsel are directed to resubmit their timesheets after making appropriate reductions. Reductions should be made (or eliminated) for clerical work; insufficient descriptions; block billing;

44

duplicate work; excessiveness;[14] quarter-hour billing;

and any other category of work/billing practice that

the Court has previously deemed non-compensable.  The

Court provides the following examples of non-

compensable entries:  1) Mr. Holcomb's 4/17/14 and

4/18/14 entries are clerical;[15] 2) Mr. Holcomb and Mr.

---

[14]   Without identifying specific entries, the Court
notes that it would deem excessive a large portion of
the hours associate with the drafting/preparation of
this Motion.  Defendants should not bear the cost of
work related to meritless arguments, especially when
the arguments are duplicative of arguments made in
Hawaii Defense.

[15]   The following is a list of tasks previously
deemed clerical or ministerial in this district and are
therefore deemed non-compensable:

> reviewing Court-generated notices;
> scheduling dates and deadlines;
> calendering dates and deadlines; notifying
> a client of dates and deadlines; preparing
> documents for filing with the Court;
> filing documents with the Court; informing
> a client that a document has been filed;
> personally delivering documents; bates
> stamping and other labeling of documents;
> maintaining and pulling files; copying,
> printing, and scanning documents;
> receiving, downloading, and emailing
> documents; and communicating with Court
> staff.

Hawaii Motorsports Inv., Inc. v. Clayton Group Servs.,

Brazier's 5/14/14 entries are duplicative;[16] only one

attorney may be compensated; 3) one of Mr. Holcomb's

entries on each of 12/10/12 ("Draft Chris Smith's

Declaraton/e-mail to Darko to add Exhibits") and

12/11/12 ("Review/Correct PI Memorandum/Draft TRO

Motion/Compile Exhibits") are block billed; 4) Mr.

Brazier's 10/15/13 entry is insufficiently described,

and 5) Mr. Brazier appears to utilize quarter-hour

billing, though certain increments, i.e. 3.125, 0.375,

have never been seen by the Court.  To be clear, these

are just a few examples of non-compensable entries.

There are many others that the Court has not cited.

---

Inc., Civ. No. 09-00304 SOM-BMK, 2010 WL 4974867, at *5
(D. Haw. Dec. 1, 2010), adopted by Hawaii Motorsports
Inv., Inc. v. Clayton Group Servs., NC, Civ. No.
09-00304 SOM-BMK, 2010 WL 5395669 (D. Haw. Dec. 22,
2010); see also, e.g., Yamada v. Weaver, Civil No.
10-00497 JMS-RLP, 2012 WL 6019363, at *10 (D. Haw. Aug.
30, 2012), adopted in pertinent part by Yamada v.
Weaver, Civil No. 10-00497 JMS-RLP, 2012 WL 6019121 (D.
Haw. Nov. 30, 2012) (deeming clerical work completed on
table of authorities).

[16]   What is more, due to Mr. Brazier's
unconventional billing increments, both counsel are
claiming different amounts of time for the same
conference.

46

As if to suggest he exercised restraint and judiciousness, Mr. Holcomb notes that he did not account for his legal assistant's work on this case. Mot., Decl. of Richard L. Holcomb in Support of Motion for Attorneys' Fees and Expenses ("Holcomb Decl.") at ¶ 45.  If Mr. Holcomb researched and acquainted himself relevant case law, he would have discovered that hours expended by legal assistants are not compensable.  Even a cursory review of counsel's timesheets reveals that genuine good faith efforts were not made to exclude excessive, redundant, or otherwise unnecessary hours.

Plaintiffs' counsel should be particularly mindful, in resubmitting their timesheets, about whether the hours for which they are seeking compensation are proportional to the result they achieved in this case.  The resubmission should include only timesheets, not legal arguments.  The leave granted by the Court to resubmit timesheets is not an invitation to rewrite or edit the current descriptions. In fact, Plaintiffs' counsel is prohibited from doing so.  This is not an opportunity for counsel to correct

47

deficiencies that have been highlighted by the Court. The Court is doing this to facilitate efficient review of the requested hours.  Plaintiffs' counsel are only permitted to cut/reduce their hours, and should do so in accordance with the extensive body of law in this district and the Ninth Circuit regarding compensable/non-compensable tasks. The deadline for the resubmission is **November 24, 2014.**

Plaintiffs are cautioned that their presently requested award will likely be reduced significantly because the applicable law requires as much, and they will not receive a 25% increase in the lodestar.

Defendants may file a response to the resubmission by **December 24, 2014.**  Any response shall be limited to 10 pages.  After reviewing the submissions, the Court will decide whether it will grant Plaintiffs leave to file a response.

In sum, the Court finds that Plaintiffs are the prevailing party in this action, and that Mr. Holcomb and Mr. Brazier are entitled to hourly rates of $200.00 and $185.00, respectively.  The Court declines to make

48

a determination about the amount of the fee award until Plaintiffs resubmit timesheets that omit non-compensable hours and which reflect their limited success in this action.

III.   Costs

Plaintiffs also request $3,205.24 in costs: 1) $350.00 in filing fees; 2) $104.97 in transcripts; 3) $2,399.18 in deposition costs; 4) $313.83 in copying costs; and 5) $37.26 in miscellaneous costs (parking and exhibit tabs/notebooks).[17]  Defendants argue that these costs should not be reimbursed because the first four categories are taxable costs that should have been presented in a bill of costs.  Defendants further contend that Plaintiffs have failed to provide statutory authority entitling them to the fifth category of expenses.  This is not entirely true. Although the Court agrees that the request, as with

---

[17]   Categories 1-4 are taxable costs, and category 5 is a non-taxable cost.  They will be evaluated accordingly.

many of Plaintiffs' submissions, is deficient,[18]
Plaintiffs requested the costs pursuant to § 1988.
Mot. at ¶ 8.  As for Defendants' argument that the
request for certain fees should have been presented in
a bill of costs, the Court disagrees.  Parties
frequently include requests for taxable costs in their
motions for attorneys' fees.

Federal Rule of Civil Procedure ("FRCP")
54(d)(1) provides that "[u]nless a federal statute,
these rules, or a court order provides otherwise,
costs-other than attorney's fees-should be allowed to
the prevailing party."  Fed. R. Civ. P. 54(d)(1).  FRCP
54(d)(1) "creates a presumption in favor of awarding
costs to a prevailing party, but vests in the district
court discretion to refuse to award costs."  Escriba v.
Foster Poultry Farms, Inc., 743 F.3d 1236, 1247 (9th

---

[18]   Not surprisingly, Plaintiffs do not submit
arguments in their memorandum to support their request
for costs, even though both Local Rules 54.2 and 54.3
require that they do so.  Neither does Mr. Holcomb's
Declaration contain representations about the
reasonableness of the requested costs, though Local
Rule 54.2 requires such information.

Cir. 2014) (citing <u>Ass'n of Mexican-American Educ. v. State of Cal.</u>, 231 F.3d 572, 591 (9th Cir. 2000) (en banc)).

Insofar as Plaintiffs have been deemed the prevailing party, they are entitled to an award of costs.

A.   <u>Taxable Costs</u>

"The general costs statute, 28 U.S.C. § 1920, defines the term 'costs' as used in Rule 54(d)." <u>Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.</u>, 741 F.3d 955, 957 (9th Cir. 2013); <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 441-42 (1987). Section 1920 enumerates the following costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this

51

title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  The burden is on the losing party to demonstrate why costs should not be awarded.  Stanley v. Univ. of S. Cal., 178 F.3d 1069, 1079 (9th Cir. 1999).

If a district court declines to award costs, it must specify its reasons for doing so.  Ass'n of Mexican-American Educators, 231 F.3d at 591.  On the other hand, a "district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award."  Save Our Valley v. Sound Transit, 335 F.3d 932, 945 (9th Cir. 2003).

The Court evaluates each category of requested taxable costs in turn.

1.  Filing Fee

Plaintiffs request $350.00 in filing fees.

Section 1920(1) allows for the taxation of the fees of the clerk and marshal.  Indeed, "[f]iling fees are properly recoverable by a prevailing party under § 1920(1)."  <u>World Triathalon Corp. v. Dunbar</u>, 539 F. Supp. 2d 1270, 1288 (D. Haw. 2008).  Accordingly, the Court awards Plaintiffs **$350.00** for filing fees.

### 2.   <u>Court Transcripts</u>

Plaintiffs request $104.97 in transcripts costs for the transcript of the settlement on the record and the February 5, 2013, and March 8, 2013 status conferences.  Section 1920(2) authorizes the recovery of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2).  Because § 1920(2) provides the statutory basis for the recovery of court transcript costs, the Court finds that the **$104.97** in transcript costs are recoverable.

### 3.   <u>Deposition Costs</u>

Plaintiffs request $2,399.18 in deposition costs:  1) $891.36 for Westley Chun; 2) $ 855.44 for

53

Dominic James and Christopher Smith; 3) $248.38 for

Madori Rumpungworn; and 4) $404.00 for Catherine

Russell.  The receipts for Mr. Chun and Ms.

Rumpungworn's depositions demonstrate that Plaintiffs

are seeking to recover not only deposition transcript

costs, but other costs associated with the depositions.

Section 1920(2) authorizes the recovery of deposition

transcript costs, but deposition costs themselves are

clearly not covered by § 1920(2).

Deposition transcript costs may be reimbursable

if certain conditions are met.  Local Rule 54.2(f)(2)

provides:

> The cost of a stenographic and/or video
> original and one copy of any deposition
> transcript necessarily obtained for use in
> the case is allowable.  A deposition need
> not be introduced in evidence or used at
> trial, so long as, at the time it was
> taken it could reasonably be expected that
> the deposition was used for trial
> preparation, rather than mere discovery.

Local Rule 54.2(f)(2).  Under the applicable law then,

Plaintiffs would be entitled to one stenographic and/or

video original and one copy of any deposition

transcript necessarily obtained for use in the case, so

54

long as it was expected to be used for trial preparation and not discovery.

Here, the Court declines to award any of the deposition costs because 1) all of the non-transcript deposition costs are non-compensable and 2) Plaintiffs have not verified that the depositions were reasonably expected to be used for trial preparation, rather than mere discovery.[19] Evanow v. M/V Neptune, 163 F.3d 1108, 1118 (9th Cir. 1998) (deposition transcript costs are taxable if they are reasonably necessary for trial).

4. Copying Costs

Plaintiffs request $313.83 in copying costs: 1) $267.75 for "Courtesy Copies paid 12/12/12" and 2) $46.08 for "Copies for Wes Chun Depos (Exhibits)." Section 1920(4) provides for the taxation of "[f]ees for exemplification and the costs of making copies of

---

[19] In addition, the supporting documentation for the James/Smith depositions is not itemized so it is unclear what the $855.44 represents. Mot., Holcomb Decl., Ex. 10. And, Plaintiffs did not include documentation for Ms. Russell's deposition, despite Mr. Holcomb's representation that he would do so. Holcomb Decl. at 21 n.2.

any materials where the copies are necessarily obtained

for use in the case." Local Rule 54.2(f)(4) sets forth

specific requirements that must be met:

> The cost of copies necessarily obtained
> for use in the case is taxable provided
> the party seeking recovery submits an
> affidavit describing the documents copied,
> the number of pages copied, the cost per
> page, and the use of or intended purpose
> for the items copied. The practice of
> this court is to allow taxation of copies
> at $.15 per page <u>or the actual cost
> charged by commercial copiers, provided
> such charges are reasonable. The cost of
> copies obtained for the use and/or
> convenience of the party seeking recovery
> and its counsel is not allowable.</u>

Local Rule 54.2(f)(4) (emphasis added). Mr. Holcomb's

declaration does not sufficiently describe the need for

the copies. While courtesy copies are required by the

Court, Mr. Holcomb has not explained why 10 copies were

necessary for what is presumably Plaintiffs' Motion for

Preliminary Injunction, which was filed on December 12,

2012. Mot., Holcomb Decl., Ex. 10. Exercising its

discretion, and given that Mr. Holcomb did not

adequately justify the request, the Court reduces the

cost for courtesy copies to $133.88, which is half of

the requested amount.

The same issue arises with respect to the copies of exhibits for Mr. Chun's deposition.  There is no explanation about the costs incurred.  Only a receipt from Professional Image is attached.  Without information concerning the necessity and/or use of the copies, the Court cannot ascertain whether the cost was reasonably incurred.  Accordingly, the Court recommends that the copies associated with Mr. Chun's deposition be denied, but that **$133.88** be awarded for copying costs.

B.   <u>Non-Taxable Costs</u>

Finally, Plaintiffs request $37.26 in miscellaneous costs:  1) $5.50 for parking and 2) $31.76 for office supplies (exhibit tabs/notebooks). While the court's discretion to award costs is ordinarily limited by the strictures of 28 U.S.C. § 1920, <u>Yasui v. Maui Electric Co., Ltd.</u>, 78 F. Supp. 2d 1124, 1126 (D. Haw. 1999), "[i]t is well established that attorney's fees under 42 U.S.C. § 1988 include reasonable out-of-pocket litigation expenses that would

normally be charged to a fee paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920."  Trustees of Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co., 460 F.3d 1253, 1257, 1258 (9th Cir. 2006).  Thus, costs "not recoverable under 28 U.S.C. § 1920 may be recoverable . . . as out-of-pocket litigation expenses reimbursable as part of (or "incidental to") an award of attorneys' fees under some provision or authority other than § 1920."  Aloha Tower Assocs. Piers 7, 8 and 9, Ltd. P'ship v. Millennium Aloha, Inc., 938 F. Supp. 646, 650 (D. Haw. 1996); Redland, 460 F.3d at 1258 (quoting Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1257-58 (10th Cir. 1998) ("Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate.")).

The Court finds that the $5.50 in parking fees are compensable because parking fees are a reasonable out-of-pocket litigation expense that would normally be

charged to a fee paying client.  By contrast, the $31.76 in office supplies are not compensable.  Office supplies are generally part a firm's overhead.  The Court recommends that Plaintiffs recover **$5.50** in miscellaneous costs pursuant to § 1988.

In sum, the Court recommends that the district court award Plaintiffs **$594.33** in costs.

CONCLUSION

Based on the foregoing, the Court HEREBY FINDS AND RECOMMENDS that the district court GRANT IN PART AND DENY IN PART Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Expenses, filed August 11, 2014.  The Court declines to recommend the amount of the fee award at this time, but recommends an award of **$594.33** in costs.

The Court ORDERS Plaintiffs to resubmit timesheets, in accordance with the discussion above, by **November 24, 2014**.  Defendants may file a response, not to exceed 10 pages, by **December 24, 2014**.  The Court will thereafter determine whether Plaintiffs will be

59

granted leave to file a response.

IT IS SO FOUND AND RECOMMENDED AND SO ORDERED.

DATED:  Honolulu, Hawaii, October 31, 2014.



_____
Kevin S.C. Chang
United States Magistrate Judge

CIVIL NO. 12-00668 JMS-KSC; DE-OCCUPY, ET AL. V. CITY AND COUNTY OF HONOLULU, ET AL.; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE EXPENSES; ORDER DIRECTING RESUBMISSION OF TIMESHEETS