IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DE-OCCUPY HONOLULU; ET AL.;      )    CIVIL NO. 12-00668 JMS-KSC
                                 )
                    Plaintiffs,  )    ORDER ADOPTING (1) FINDINGS
                                 )    AND RECOMMENDATION TO
        vs.                      )    GRANT IN PART AND DENY IN
                                 )    PART PLAINTIFFS' MOTION FOR
CITY AND COUNTY OF               )    ATTORNEYS' FEES AND NON-
HONOLULU; ET AL.,                )    TAXABLE EXPENSES; ORDER
                                 )    DIRECTING RESUBMISSION OF
                    Defendants.  )    TIMESHEETS, DOC. NO. 221; AND
                                 )    (2) SUPPLEMENTAL FINDINGS
                                 )    AND RECOMMENDATION
                                 )    REGARDING AMOUNT OF FEE
_____  )    AWARD, DOC. NO. 226

## ORDER ADOPTING (1) FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE EXPENSES; ORDER DIRECTING RESUBMISSION OF TIMESHEETS, DOC. NO. 221; AND (2) SUPPLEMENTAL FINDINGS AND RECOMMENDATION REGARDING AMOUNT OF FEE AWARD, DOC. NO. 226

## I. INTRODUCTION

This is the third action over the last year-and-a-half in which this

court is tasked with determining reasonable fees for attorneys Richard Holcomb

and Brian Brazier in civil rights litigation against the City and County of Honolulu

(the "City"). The court has already addressed in these previous cases several

issues directly bearing on this case, including the legal framework for determining

prevailing party status, Holcomb's and Brazier's reasonable hourly rate, and the appropriateness of reductions to the hours requested to reach a reasonable fee award.

Both parties largely ignore these previous determinations in objecting to Magistrate Judge Kevin S.C. Chang's recommendation that Plaintiffs be afforded prevailing party status and that the requested fees of $220,101.22 be reduced to $72,176.18. *See* Doc. No. 221, Oct. 31, 2014 Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Expenses; Order Directing Resubmission of Timesheets ("F&R"); Doc. No. 226, Feb. 3, 2015 Supplemental Findings and Recommendation Regarding Amount of Fee Award ("Supplemental F&R"). Based upon a de novo review, the court finds that Plaintiffs are the prevailing parties and that Plaintiffs are entitled to attorneys' fees in the amount of $72,176.18 as determined by Magistrate Judge Chang, plus additional fees for their time on the Objections.

## II. <u>BACKGROUND</u>

### A. **Plaintiffs' Complaint**

Plaintiffs De-Occupy Honolulu, Catherine Russell, Christopher Smith, Andrew Smith, Madori Rumpungworn, and Dominic James ("Plaintiffs")

were part of the "Occupy" movement that took place throughout various cities. At the time of this action, Plaintiffs had maintained a constant presence at Honolulu's Thomas Square for over a year, where they erected tents, signs, and other artwork. Defendants the City and Westley Chun, Trish Morikawa, Larry Santos, and Ken Shimizu (collectively, "Defendants") conducted, participated in, and/or oversaw several impoundments of Plaintiffs' property at Thomas Square. These impoundments were conducted pursuant to Chapter 29, Articles 18 and 19 of the Revised Ordinances of Honolulu ("ROH") ("Articles 18 and 19"), which outline that the City may seize personal property left on public property after providing twenty-four hours notice.

On December 12, 2012, Plaintiffs filed this action, asserting that Articles 18 and 19 violate the First, Fourth, Fifth, and Fourteenth Amendments and the Hawaii Constitution both facially and as applied to Plaintiffs, and asserting related state laws. Doc. No. 1. The Complaint alleged several instances in which Defendants seized property without providing the required twenty-four hours notice, destroyed property without impounding it, and/or provided no opportunity for a post-deprivation hearing. Plaintiffs sought injunctive and declaratory relief, and monetary damages.

**B.     Plaintiffs' Motion for Temporary Restraining Order, Motion for Sanctions, and First Motion for Preliminary Injunctive Relief**

Along with their December 12, 2012 Complaint, Plaintiffs filed Motions for Temporary Restraining Order ("TRO Motion") and for Preliminary Injunction ("PI Motion").  Doc. Nos. 4, 5.  On December 17, 2012, the court held a status conference regarding these Motions in which the parties agreed to enter a stipulation pending briefing and hearing on the PI Motion, which would obviate the need to proceed on the TRO Motion.  Doc. No. 15.  The court also questioned the basis of Plaintiffs' PI Motion, given that the success-on-the-merits argument did not make a clear facial attack on Article 19, despite counsels' assertions that they were proceeding on both a facial and as-applied challenge.  Although the court gave Plaintiffs the opportunity to file a new PI Motion, *see* Doc. No. 17 (granting Plaintiffs the opportunity to file a new PI Motion "to incorporate additional arguments"), Plaintiffs declined to do so.

On December 19, 2012, the parties entered into a "Stipulation Re: Motion for Temporary Restraining Order" ("Stipulation"), agreeing that pending a hearing on the PI Motion, Defendants would comply with Article 19 and take other safeguards when impounding and holding items taken from Thomas Square.  Doc. No. 18.  The Stipulation required, among other things, that impounded

4

property be placed in numbered bins, that the notice left at the place of impoundment describe the property and identify the bin number in which the property was stored, and that impounded property be returned "immediately" when a person produces the impoundment notification and attests to ownership of the property. The parties further agreed that Plaintiffs could file a Motion for Enforcement of the Stipulation if they believed that Defendant breached the Stipulation's terms.

On December 20, 2012, one day after the Stipulation, Defendants impounded property at Thomas Square, which resulted in Plaintiffs filing a December 21, 2012 Motion for Sanctions asserting six different breaches of the Stipulation. Doc. No. 19. One of the breaches alleged was that Defendants failed to record the bin number on a notice of impoundment, and Plaintiffs attached as an exhibit a photocopy of a crumpled and/or ripped notice without a bin number. *See* Doc. No. 19-1. After Defendants produced a copy of the notice with the bin number written on the top left-hand corner, *see* Doc. No. 30-28, Plaintiffs accused Defendants of fabricating evidence. *See* Doc. No. 33, at 10 ("[I]f anyone is guilty of 'fabricating evidence,' it is the City."). It was not until the court directed the parties to make available for inspection the original notice that Holcomb admitted that the notice included the bin number, provided a flimsy excuse for his

oversight, and withdrew his objection to the lack of a bin notice. *See* Doc. No. 88, at 7-8.

After holding an evidentiary hearing, the court issued a January 24, 2013 Order determining that Plaintiffs carried their burden as to only one alleged violation -- that the City refused to return impounded property "immediately." Doc. No. 48. The court's January 24, 2013 Order provided:

> As to Plaintiffs' complaint that the City breached the Stipulation by refusing to return impounded property "immediately," although the court finds that the term "immediately" may be ambiguous in some circumstances, the court is able to conclude that the City did not comply with this provision. Accordingly, the City and Plaintiffs shall meet and confer to work out a reasonable procedure by which the City will process requests for appointments to repossess impounded property to owners. Further, the City must train its personnel in the implementation of such a procedure given the apparent lack of knowledge of the terms of the Stipulation regarding the return of the seized property. The parties shall provide the court with a status letter by January 28, 2013 regarding the negotiations on this point. Thus, the court GRANTS the Motion on this point.

*Id.* at 3-4.[1] As a result of this meet-and-confer process, the City adopted a policy in which it (1) set up a dedicated telephone number for all Article 19 related phone

---

[1] Plaintiffs sought reconsideration of the January 24, 2013 Order, seeking to present evidence they failed to present at the evidentiary hearing. Doc. No. 51. The court denied this Motion given that none of this evidence was newly discovered. Doc. No. 52.

calls, which would be answered by a live person during regular business hours and which would take recorded voice mail messages after regular hours; and (2) would allow repossession of impounded personal property within one business day after contacting the City, or within two days if contact was made after 2:30 p.m.  Doc. No. 50.

## C.      Plaintiffs' Superseding PI Motion and Defendants' Motion to Dismiss

Focusing back on the PI Motion, Plaintiffs asserted during a February 5, 2013 status conference that their Motion argued likelihood of success on the merits based on both a facial and as-applied challenge to Article 19.  Because Plaintiffs' PI Motion did not articulate clearly a facial challenge (as to the court had previously informed Plaintiffs), the court directed Plaintiffs to file a new Motion for Preliminary Injunction to make such argument.  Doc. No. 72, Feb. 5, 2013 Status Conf. Tr. at 12 (the court explaining that supplemental briefing was necessary because "given how little was in your initial filing, I just didn't know if it was fair to the city because they maybe didn't know quite how to respond at this point in time").

On February 8, 2013, Plaintiffs filed a "Superseding Motion" for PI, which argued that Article 19 is facially unconstitutional, and simply incorporated

by reference Plaintiffs' previous arguments in their original PI Motion. Doc. No. 56. Defendants also filed a Motion to Dismiss, to be heard on the same day as the PI Motion. Doc. No. 57.

After both Motions were fully briefed, Plaintiffs filed an Amended Complaint, which not only added additional allegations occurring after the filing of the Complaint, but also clarified allegations in the Complaint and added new parties and claims. Doc. No. 67; *see also* Doc. No. 71 (Plaintiffs' statement explaining differences in pleadings). In light of the Amended Complaint's new allegations, the court vacated the pending Motions. The court explained that going forward with the hearing on only the PI Motion would result in piecemeal litigation. Further, both Plaintiffs' Amended Complaint and Superseding PI Motion improperly incorporated by reference matters in the original Complaint and Plaintiffs' other filings, which resulted in a mess of claims, evidence, and arguments distributed throughout the docket through which the court would not hunt to determine the scope and basis of Plaintiffs' arguments and claims. *See* Doc. No. 73; Doc. No. 87, Mar. 8, 2013 Tr. at 5-6. The court therefore granted Plaintiffs leave to file a Second Amended Complaint that did not improperly incorporate by reference documents and facts in previous filings, and set deadlines for the parties to file a Motion to Dismiss and PI Motion.

**D.    Plaintiffs' Second Amended Complaint and Related Motions Leading to Plaintiffs' Third Amended Complaint**

Plaintiffs filed their Second Amended Complaint on March 18, 2013, Doc. No. 80, and the parties filed their respective Motions to Dismiss and for PI on April 1, 2013. Doc. Nos. 84, 85. At a May 10, 2013 status conference, the parties agreed to work together on a stipulation for preliminary injunction addressing Plaintiffs' as-applied challenge to Article 19, such that the hearing on the Motions would focus only on the facial challenge. Doc. No. 119. On May 21, 2014, the court granted in part and denied in part Defendants' Motion to Dismiss, Doc. No. 125, and denied Plaintiffs' PI Motion. Doc. No. 126.

On June 6, 2013, the parties entered into a Stipulation addressing Plaintiffs' as-applied challenge to Article 19, which essentially extended the earlier Stipulation regarding procedures for repossession of stored property until trial ("Second Stipulation"). Doc. No. 134. The Second Stipulation recited that (1) Defendants stated that they were not admitting liability and that the Second Stipulation did not materially change the City's practices and procedures; (2) the parties agreed that the Second Stipulation was not a determination on the merits of the PI Motion; and (3) the court was not making any finding or ruling as to "prevailing party" status.

**E. Plaintiffs' Motion for Order to Show Cause; the Parties' Motions for Summary Judgment**

On July 24, 2013, Plaintiffs filed their Third Amended Complaint. Doc. No. 137.

On August 23, 2013, Plaintiffs filed a Second Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt in light of several recent impoundments of property at Thomas Park, allegedly in violation of the Second Stipulation. Doc. No. 150. On August 27, 2013, the court issued an Order requiring Plaintiffs to further explain the factual basis of their Motion given that the Second Stipulation applied only to impoundments pursuant to Article 19, and the impoundments that were the subject of Plaintiffs' Motion were pursuant to a new ordinance allowing summary removal of property from public sidewalks. Doc. No. 151. In response, Plaintiffs withdrew their Motion for Contempt. Doc. No. 152.

On November 26, 2013, the court approved a stipulation to dismiss Plaintiff Smith and Defendant Santos with prejudice. Doc. No. 167.

On April 16, 2014, the parties filed Motions for Summary Judgment. Doc. No. 173, 174. On May 12, 2014, the court struck Plaintiffs' Motion for Summary Judgment due to several "glaring problems" with Plaintiffs' evidence,

including: (1) lack of authentication of *any* exhibits; (2) "haphazard" presentation of exhibits, including submitting exhibits not referred to in the Motion; (3) submitting seven hours of videos with few citations to particular time points; and (4) submitting a Concise Statement which read more like a factual background in a brief than a Concise Statement.

## F.     Settlement and Motion for Attorneys' Fees

The parties' Motions for Summary Judgment did not go forward. Instead, on May 30, 2014, Magistrate Judge Chang held a settlement on the record and provided deadlines of June 30, 2014 for the dismissal and July 14, 2014 for the motion for attorneys' fees.  Doc. No. 196.  The parties' Settlement Agreement, which required the payment of $1,000 to Plaintiffs, recites that it should not be construed as any admission and/or inference of fault or wrongdoing by Defendants, and also provides:

> the United States District Court for the District of Hawaii and/or the United States Court of Appeals for the Ninth Circuit may consider the fact of settlement, settlement negotiations, payment and/or receipt of consideration and other terms of this Agreement to determine "prevailing party" status for purposes of Paragraph 8 below.
> 8.     Attorneys' Fees.    [Plaintiffs] and [Defendants] acknowledge and agree that Plaintiffs may seek attorneys' fees and costs pursuant to applicable law and rules governing the seeking of attorney's fees and costs.

> Pursuant to the rules and applicable law, the City may dispute both the entitlement to and amount of fees and costs requested. The court will decide the entitlement to and amount of fees awarded if any. Either party retains the right to object to and/or appeal such awards pursuant to applicable law.

Doc. No. 202-1, ¶¶ 7-8.

Despite the July 14, 2014 deadline to seek attorneys' fees, Plaintiffs filed their Motion for Attorneys' Fees on August 11, 2014. Doc. No. 205. After Magistrate Judge Chang issued an Order to Show Cause why the Motion for Attorneys' Fees should not be denied as untimely, Doc. No. 206, and the parties proceeded with their briefing on the Motion for Attorneys' Fees, Doc. Nos. 216, 220, the court deemed the Motion timely. Doc. No. 219.

Magistrate Judge Chang issued his F&R on October 31, 2014, finding that Plaintiffs are the prevailing parties and entitled to $594.33 in costs, that Holcomb's reasonable hourly rate was $200 (not the $355 requested), and that Brazier's reasonable hourly rate was $185 (not the $250 requested). The F&R further directed Plaintiffs to resubmit their time-sheets because they included numerous non-compensable entries (*i.e.*, clerical work, insufficient descriptions, block billing, duplicative work, excessiveness, and quarter-hour billing). After receiving supplemental briefing, Magistrate Judge Chang determined that

Plaintiffs were entitled to $72,176.18 in attorneys' fees.

On February 17, 2015, the parties filed their Objections, Doc. Nos. 227, 228, and Responses were filed on March 3, 2014. Doc. Nos. 229, 230. Pursuant to Local Rule 7.2(d), the court determines this matter without a hearing.

### III. STANDARD OF REVIEW

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988). The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or

recommendation to which a party objects. *United States v. Remsing*, 874 F.2d 614, 618 (9th Cir. 1989).

## IV. <u>DISCUSSION</u>

The F&R determined that (1) Plaintiffs are the prevailing party for purposes of attorneys' fees; (2) a reasonable hourly rate for Holcomb is $200, and for Brazier is $185; (3) Plaintiffs are not entitled to their requested 25% increase in the lodestar calculation; and (4) Plaintiffs are entitled to costs in the amount of $594.33. Doc. No. 221. The F&R further directed Plaintiffs to resubmit their timesheets given that the ones submitted included numerous noncompensable entries, showing a lack of a good faith effort to exclude hours that were excessive, redundant, unnecessary, or otherwise noncompensable. Upon resubmission of timesheets, the Supplemental F&R determined that Plaintiffs' hours requested should be reduced for redundant, excessive, and clerical work, block billing, and eighth-of-an-hour billing increments by Brazier, but that no further reductions were necessary for limited success. Doc. No. 226. In total, the Supplemental F&R recommends that Plaintiffs be awarded $72,176.18[2] in attorneys' fees.

---

[2] The Supplemental F&R calculated this amount by determining that Holcomb was entitled to 209.3 hours x $200 hourly rate, which equals $41,860.00, and that Brazier was entitled to 146.315 hours x $185 hourly rate, which equals $27,068.28. With 4.712% tax ($3,247.90), the total is $72,176.18.

Both parties object to the F&R and Supplemental F&R. Defendants challenge Plaintiffs' entitlement to fees while Plaintiffs object to the reasonable hourly rate, Magistrate Judge Change's requirement that Plaintiffs resubmit their timesheets, and the deductions for duplicative work.[3] Based on a de novo review, the court ADOPTS the F&R and Supplemental F&R, and awards additional fees to Plaintiffs for time spent on these Objections.

## A.    Defendants' Objections

The F&R determined that Plaintiffs were the prevailing party for purposes of attorneys' fees pursuant to 42 U.S.C. § 1988 due to the parties' settlement in which Defendants agreed to pay Plaintiffs $1,000. Defendants object, arguing that although Defendants paid Plaintiffs $1,000, such payment does not confer prevailing party status on Plaintiffs because Defendants did not admit liability and the payment was simply consideration for purposes of the settlement and not damages. Doc. No. 227, Defs.' Objs. at 5-6. Defendants further argue that Plaintiffs should not receive any attorneys' fees in light of Plaintiffs' counsels' numerous missteps in litigating this action. The court

---

[3] Neither party objects to Magistrate Judge Chang's determination of costs, rejection of Plaintiff's request for a 25% increase to the lodestar calculation, or deductions for excessive and/or clerical work, block billing, and eighth-of-an-hour billing increments by Brazier. The court therefore ADOPTS these determinations.

OVERRULES these objections.

## 1.    *Prevailing Party Status*

This court has already addressed the issue of prevailing party status

due to a settlement agreement in *James v. City & County of Honolulu*, 2015 WL

158895 (D. Haw. Jan. 13, 2015), and its legal analysis applies with equal force

here.  As *James* explains, prevailing party status requires a claimant to establish

two elements -- the party "must achieve a material alteration of the legal

relationship of the parties, and that alteration must be judicially sanctioned."  *Id.* at

*4 (quoting *P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165, 1172 (9th Cir. 2007);

*see also Bennett v. Yoshina*, 259 F.3d 1097, 1101 (9th Cir. 2001) (quoting

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res*., 532

U.S. 598, 604 (2001)).

Relevant to *James* as well as to this case, the Ninth Circuit has "held

that 'prevailing party' status has been obtained and remains in effect when a party

has obtained an enforceable settlement agreement or consent decree."  *Balla v.

Idaho*, 677 F.3d 910, 917 (9th Cir. 2012).  *Barrios v. California Interscholastic

Federation*, 277 F.3d 1128 (9th Cir. 2002), explains:

> "[A] plaintiff 'prevails' when actual relief on the merits
> of his claim materially alters the legal relationship
> between the parties by modifying the defendant's

> behavior in a way that directly benefits the plaintiff."
> [*Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)].  The
> Court explained that "a material alteration of the legal
> relationship occurs [when] the plaintiff becomes entitled
> to enforce a judgment, consent decree, or settlement
> against the defendant."  In these situations, the legal
> relationship is altered because the plaintiff can force the
> defendant to do something he otherwise would not have
> to do.

*Id*. at 1134 (quoting *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1118 (9th Cir.

2000)).  In determining whether a settlement agreement confers a plaintiff

prevailing party status, the court applies "a three-part test, looking at: '(1) judicial

enforcement; (2) material alteration of the legal relationship between the parties;

and (3) actual relief on the merits of [the plaintiff's] claims.'"  *La Asociacion de*

*Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir.

2010) (quoting *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement*

*Dist*., 574 F.3d 1054, 1059 (9th Cir. 2009)).

 Each of these three elements is met in this case.  First, the settlement

agreement is judicially enforceable -- courts have found that a settlement

agreement providing that the court retains jurisdiction over the issue of attorneys'

fees is sufficient to convey "judicial imprimatur" over the settlement.[4]  The

---

[4] *See Richard S. v. Dep't of Developmental Servs. of Cal*., 317 F.3d 1080, 1088 (9th Cir.
2003) ("Through [the parties'] legally enforceable settlement agreement and the district court's
(continued...)

Settlement Agreement in this action includes the same language as the settlement agreement in *James*, and meets this first requirement by providing that "[t]he court will decide the entitlement to and amount of fees awarded, if any." Doc. No. 202-1, Pls.' Ex. 1 ¶ 8.

Second, the Settlement Agreement materially altered the legal relationship between the parties because it required Defendants to pay Plaintiffs $1,000 to settle this action. *See Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) ("A settlement agreement meaningfully alters the legal relationship between parties if it allows one party to require the other party 'to do something it otherwise would not be required to do.'" (quoting *Fischer*, 214 F.3d at 1118)).

Finally, the Settlement Agreement provided Plaintiffs actual relief on the merits of their claims -- they sought compensatory damages, and ultimately received $1,000 in this action. *See La Asociacion*, 624 F.3d at 1090 ("[A] plaintiff

---

[4](...continued)

retention of jurisdiction [to resolve the issue of fees and costs], plaintiffs obtained a judicial imprimatur that alters the legal relationship of the parties") (internal quotation marks omitted); *Barrios*, 277 F.3d at 1134 n.5 (finding that "the parties, in their settlement, agreed that the district court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an award of attorneys' fees and costs"); *Justin R. ex rel. Jennifer R. v. Matayoshi*, 561 F. App'x 619, 620 (9th Cir. 2014) (finding that settlement agreement stating that the district court shall retain jurisdiction to determine the issue of Plaintiffs' entitlement to reasonable attorneys' fees and costs provided sufficient judicial imprimatur); *Cf. P.N.*, 474 F.3d at 1173 (finding that there was no "judicial imprimatur" of the settlement agreement at issue where the agreement did not contemplate any judicial enforcement and the matter of attorneys' fees and costs "was not referred to any court").

must receive some actual relief that serves the goals of the claim in his or her complaint.' While some relief is required, 'an extremely small amount of relief is sufficient to confer prevailing party status.'" (quoting *St. John's*, 574 F.3d at 1059-60)).

In opposition, Defendants argue that the $1,000 was consideration for the release of Plaintiffs' claims, not compensatory damages, and Plaintiffs did not obtain any of the other relief they sought in this action. Defendants' argument ignores that regardless of how they characterize their payment to Plaintiffs, the Settlement Agreement altered the parties' legal relationship by requiring Defendants to pay Plaintiffs $1,000. And this payment in fact provided compensation to Plaintiffs, which they sought in bringing this action. The court therefore OVERRULES Defendants' objection to the F&R's determination that Plaintiffs are the prevailing parties.

## 2. *Plaintiffs' Counsels' Conduct*

Defendants argue that Plaintiffs are not entitled to any fees due to the numerous missteps they took in litigating this action including, for example, improperly incorporating arguments and exhibits by reference in their pleadings and briefs, which required refiling so that the court and Defendants would be able to determine the precise scope of Plaintiffs' arguments and claims; filing a Motion

for Sanctions based on an impoundment at Thomas Square carried out pursuant to an ordinance not at issue in this action; and filing a Motion for Summary Judgment, which the court struck after Plaintiffs failed to authenticate any of their evidence.  Although the court agrees that Plaintiffs' counsels' numerous missteps in this action show a fundamental lack of experience and/or understanding of federal litigation, the court rejects that this conduct warrants a complete denial of attorneys' fees.

As an initial matter, Defendants did not raise this argument before Magistrate Judge Chang, and Defendants offer no reason why they failed to raise such argument earlier.  Under these circumstances, the court may exercise its discretion to decline hearing such arguments for the first time.  *See Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002) (providing that the court has discretion in deciding whether to hear an argument raised for the first time in objection to a magistrate judge's F&R); *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (same).

Further, even if the court addresses such argument, Defendants cite no caselaw supporting their argument that the court can simply decline to award attorneys' fees to the prevailing party where its counsel makes several bad litigation decisions.  Rather, these missteps are best considered and taken into

account in determining counsels' reasonable hourly rate and hours reasonably expended in this action.

Finally, to the extent Defendants' argument could be construed as suggesting that counsels' missteps are "special circumstances" rendering an award of attorneys' fees unjust, *see Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005) ("[A] prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)), the facts of this action do not qualify. "In applying the 'special circumstances' exception, [the court] focus[es] on two factors: '(1) whether allowing attorney[s'] fees would further the purposes of § 1988 and (2) whether the balance of equities favors or disfavors the denial of fees.'" *Id*. at 648 (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 878 (9th Cir. 1999)).

Awarding attorneys' fees in this action furthers the purposes of § 1988 given the public benefit this action provided. Specifically, although Plaintiffs did not obtain permanent injunctive relief, the parties' Stipulations required Defendants to train their personnel regarding implementing Article 19, and created a clear process for return of impounded items. These steps benefitted the homeless population of Honolulu, a particularly vulnerable group. *See, e.g.*,

*Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012) (discussing that the lack of procedure before impoundment by City of Los Angeles "is especially troubling given the vulnerability of Skid Row's homeless residents"). As a result, the equities do not weigh against an award of attorneys' fees, especially where counsels' missteps can be taken into account in determining a reasonable fee amount.

In sum, the court OVERRULES Defendants' objections to the F&R.

## B.      Plaintiffs' Objections

Plaintiffs object to Magistrate Judge Chang's (1) determination of counsels' reasonable hourly rate; (2) requirement that Plaintiffs resubmit their timesheets after sua sponte finding the initial ones deficient; and (3) deductions for duplicative time. The court addresses each of these objections in turn.

### 1.      *Reasonable Hourly Rate*

The F&R determined that the reasonable hourly rate for Plaintiffs' counsel was $200 for Holcomb and $185 Brazier, as opposed to the requested rates of $355 and $250 respectively. The F&R's awarded rates are the same as those awarded to Holcomb by this court in *Hawaii Defense Foundation v. City & Cnty. of Honolulu*, 2014 WL 2804448, at *5 (D. Haw. June 19, 2014), and *James*, 2015 WL 438175, at *1. Plaintiffs object to these hourly rates, raising the same

arguments the court has rejected in *Hawaii Defense Foundation* -- *i.e.*, that (1)

Hawaii attorneys should be compensated at the same rates as comparable attorneys

on the mainland by using the Laffey matrix (a grid of inflation-adjusted hourly

rates for lawyers with varying levels of experience in the Washington, D.C. area);

(2) rates in Hawaii fail to take into account inflation and the high cost of living;

(3) courts in this district place an artificial cap on hourly rates; and (4) the

importance of civil rights litigation establishes that counsel are entitled to the rates

requested.

For the same reasons explained in *Hawaii Defense Foundation*, the

court rejects these arguments once again. As explained in *Hawaii Defense*

*Foundation*, a reasonable hourly rate should reflect the "prevailing market rates in

the relevant community," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th

Cir. 2013), which generally "is the forum in which the district court sits." *Prison*

*Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). In determining

the reasonableness of an hourly rate, the experience, skill, and reputation of the

attorney requesting fees are taken into account. *Id.* at 455; *see also Webb v. Ada*

*Cnty.*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). "Importantly, the fee applicant

has the burden of producing 'satisfactory evidence' that the rates he requests meet

these standards." *Gonzalez*, 729 F.3d at 1206 (citing *Dang v. Cross*, 422 F.3d 800,

814 (9th Cir. 2005)); *see also S.E.C. v. Gemstar-TV Guide Int'l, Inc.*, 401 F.3d

1031, 1056 n.8 (9th Cir. 2005) ("[I]t is '[t]he fee applicant [that] has the burden of

producing satisfactory evidence, in addition to the affidavits of its counsel, that the

requested rates are in line with those prevailing in the community for similar

services of lawyers of reasonably comparable skill and reputation.'" (quoting

*Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987))).

      As *Hawaii Defense Foundation* further explains, Plaintiffs' argument

that they should be compensated according to mainland rates "do[es] not address

the applicable standard for determining a reasonable hourly rate -- *i.e.*, they are not

evidence of the prevailing rates in the District of Hawaii." 2014 WL 2804448, at

\*3 (collecting cases rejecting Laffey matrix). Rather, the relevant inquiry is the

"reasonable hourly rate in this market, based on the hourly rate, the experience,

skill, and reputation of the attorneys requesting the fees." *Id.* (emphasis omitted).

And as to the evidence Plaintiffs present regarding the prevailing rates in this

district, *Hawaii Defense Foundation* already rejected the bulk of it, explaining that

(1) the Pacific Business News article indicating that the City recently paid outside

counsel hourly rates between $295.00 and $495.00 for work in connection with

Honolulu's $5.2 billion rail transit project is unhelpful where this case is not

nearly as complex, and the article fails to tie the hourly rates discussed to the

particular attorneys charging such rate or provide any information indicating the experience, skill, and reputation of counsel; (2) the numerous cases in this district discussing the prevailing hourly rates do not suggest an artificial cap on fees, and just as easily suggest that attorneys seek higher rates from the court than they may charge a paying client; and (3) Brazier's and Holcomb's declarations outlining their experience do not suggest that they are entitled to rates of attorneys with many more years experience than them.

The only new evidence not presented previously in *Hawaii Defense Foundation* is the Declaration of attorney Kevin O'Grady, who asserts that Plaintiffs' requested hourly rates are reasonable.  *See* Doc. No. 205-5.  But cutting against O'Grady's assertions of familiarity with counsels' quality of work is this court's own first-hand view of counsels' experience and skill in litigating this action.  From the very start of this action and up through their motion for attorneys' fees, counsel made numerous mistakes which wasted both the parties' and this court's time.  In particular, counsel (1) presented an incomplete PI Motion which failed to articulate all of their arguments and which required refiling; (2) filed an Amended Complaint which improperly incorporated previous submissions by reference, and which required both parties to refile Motions that had otherwise been fully briefed and ready for hearing; (3) filed a Motion for

Summary Judgment which the court struck for failure to authenticate evidence; and (4) filed their Motion for Attorneys' Fees late, requiring further motions practice to determine whether they would be allowed to file such motion. These are glaring mistakes which the court would not expect from even the most junior of attorneys, and are certainly not the type of mistakes the court would expect (or that clients would pay for) from attorneys with Holcomb's and Brazier's years of experience, much less from attorneys who actually command the rates counsel seek in this action.[5] Thus, based on the court's knowledge of this case and counsels' experience, the court finds the rates recommended by the F&R are appropriate in this case. *See Haw. Defense Found.*, 2014 WL 2804448, at *5 & n.6 (finding helpful and citing to "the numerous cases in this district discussing the prevailing hourly rates in this district" to determine the reasonable hourly rate for Holcomb and Brazier).

　　　　In finding that Holcomb is entitled to a $200 hourly rate and Brazier a

---

[5] Also troubling is Plaintiffs' Motion for Sanctions in which they asserted that Defendants had not recorded the bin number on the notice of impoundment as required by the Stipulation. Plaintiffs based this assertion on a crumpled and/or ripped copy of the notice, and suggested, without ever checking the original, that Defendants fabricated evidence when they produced a copy of the notice with the bin number. *See* Doc. No. 33, at 10 ("[I]f anyone is guilty of 'fabricating evidence,' it is the City."). Plaintiffs withdrew this assertion after the court required the parties to present the originals and Plaintiffs (finally) properly reviewed the evidence to realize that the notice in fact contained the bin number. This level of carelessness is simply not acceptable where counsel alleges misconduct by fellow attorneys.

$185 hourly rate, the court recognizes Plaintiffs' argument that attorneys' fees pursuant to § 1988 are meant to encourage attorneys to bring cases challenging constitutional violations that may otherwise not be brought. *See* Doc. No. 228, Pls.' Objs. at 26; *see also City of Riverside v. Rivera*, 477 U.S. 561, 576-77 (1986) ("Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process. Moreover, the contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries." (citations omitted)). Reasonably compensating counsel based on the prevailing rates for attorneys with similar experience and skill in the district, however, fulfills this purpose, and the hourly rates awarded to Holcomb and Brazier properly reflect their experience and skill in litigating this action based on the prevailing rates in Hawaii.

The court therefore ADOPTS the F&R's determination that Holcomb is entitled to an hourly rate of $200, and that Brazier is entitled to an hourly rate of $185.

## 2.    *Re-submission of Time Sheets*

In the F&R, Magistrate Judge Chang declined to determine the hours reasonably expended by Holcomb and Brazier because the timesheets submitted included numerous non-compensable entries, which the court would not review on its own without counsel first conducting a sufficient review and deleting those entries which, based on Ninth Circuit law, should not be included in the request in the first place.  Doc. No. 221, F&R at 43-44.  Plaintiffs object to this procedure, arguing that Defendants have the burden of objecting to attorneys' fees and that this process allowed Defendants to raise objections to hours which they had not previously raised.  Doc. No. 228, Pls.' Objs. at 26-28.

In making this objection, Plaintiffs demonstrate a grave misunderstanding of the parties' burdens.  It is not Defendants' burden to outline all of the problems with Plaintiffs' time-sheets.  Rather, Plaintiffs, as the prevailing party, have "the burden of submitting detailed time records justifying the hours claimed to have been expended."  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (citations and quotations omitted); *see also Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) ("The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to an award.'  But

28

trial courts need not, and indeed should not, become green-eyeshade accountants."

(citations omitted)); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1098 (D. Haw.

2010) ("[A] prevailing party seeking attorneys' fees bears the burden of proving

that the fees and costs taxed are associated with the relief requested and are

reasonably necessary to achieve the results obtained.").

Further, the court has its own "independent duty to review the

submitted itemized log of hours to determine the reasonableness of hours

requested in each case." *Irwin v. Astrue*, 2012 WL 707090, at *1 (D. Or. Mar. 5,

2012) (citing *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001)); *Perdue v.

Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010) ("It is essential that the judge

provide a reasonably specific explanation for all aspects of a fee determination,

including any award of an enhancement.").  Thus, even when the opposing party

does not object to a motion for attorneys' fees, the court must independently

review the petition for reasonableness and give a "concise but clear explanation of

its reasons for the fee award." *See Cunningham v. Cnty of Los Angeles*, 879 F.2d

481, 484 (9th Cir. 1988) (quoting *Hensley*, 461 U.S. at 437).

Plaintiffs' original time sheets, with numerous non-compensable

entries, failed to establish the reasonableness of the hours presented, and

Magistrate Judge Chang acted well within the court's discretion and fulfilled the

independent duty of determining the reasonableness of Plaintiffs' fee requests by requiring Plaintiffs to resubmit their time sheets. The court therefore OVERRULES Plaintiffs' Objection to the F&R requiring Plaintiffs to resubmit their time sheets.

### 3. Deductions for Redundancy

Finally, Plaintiffs object to Magistrate Judge Chang's reductions of 39.05 hours from Brazier's time for redundancy. Plaintiffs argue that these deductions are improper to the extent they lack any consideration of the reasonableness of the time spent, and counsel should not be capped at having only one attorney participate on any one task. *See* Doc. No. 228, Pls.' Objs. at 28-30.

As the court explained in *Hawaii Defense Foundation*, 2014 WL 2804448, at *7, while the court recognizes that litigation often requires the participation of multiple attorneys, *see Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993), "overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 858 (7th Cir. 2009); *see also Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) ("A trial court should ordinarily greet a claim that several

lawyers were required to perform a single set of tasks with healthy skepticism.").

Such rule does not prevent two attorneys from working together on certain tasks that are divisible, or conferencing together to determine strategy. *See, e.g.*, *Garcia v. Resurgent Capital Servs., L.P.*, 2012 WL 3778852, at *7 (N.D. Cal. Aug. 30, 2012) (rejecting that hours spent by multiple attorneys conducting legal research, drafting motions, and preparing for trial was redundant because "[i]t is not unusual for two attorneys to work together on such activities, especially when they are working on different components of a brief or working together on a motion"); *Chabner v. United Omaha Life Ins. Co.*, 1999 WL 33227443 (N.D. Cal. Oct.12, 1999) ("Common sense dictates that a single task can be broken down over several discrete time periods and that a number of people might contribute to one end product."). Rather, billing is redundant where two attorneys perform a task that could just as easily be performed by one attorney in less time than the two attorneys billed together. Thus, as a general rule, the court does not permit more than one attorney to bill for attending: (1) a meeting between co-counsel; (2) a client meeting; or (3) a meeting with opposing counsel. *See Seven Signatures Gen. P'ship*, 871 F. Supp. 2d at 1055 (internal citations omitted). "In such a situation, the [c]ourt typically deducts the time spent by the lowest-billing attorney." *Id*. Further, the court permits two attorneys to bill for their appearances

at court proceedings only "when it is reasonable and necessary for a 'second chair' to appear with lead counsel." *Sheehan v. Centex Homes*, 853 F. Supp. 2d 1031, 1044 (D. Haw. 2011).

Brazier and Holcomb worked on many of the same tasks in this case which Magistrate Judge Chang did not reduce for redundancy because they are amenable to division between two attorneys without improper overlap (*e.g.*, drafting pleadings and motions). But Brazier and Holcomb also performed numerous tasks together, which good billing judgment would ordinarily prevent from being charged doubly to a paying client (or in this case, by the opposing side due to a fee-shifting statute). These include Holcomb and Brazier both billing for the same client meetings, preparing for and attending the same depositions, and attending the same court conferences and hearings. Plaintiffs offer no explanation as to why any of these events required two attorneys when one would have been sufficient, and the court sees none either.[6]

And from the court's own de novo calculations, the number of duplicative hours between Brazier and Holcomb for these tasks exceed the 39.05 hours deducted by Magistrate Judge Chang. Given that the court would likely

---

[6] In opposition, Plaintiffs complain that Defendants often had multiple attorneys attend hearings and conferences, and that Plaintiffs should likewise should be able to as well. But, as should be obvious, Defendants' potential overstaffing practices are not at issue.

deduct even more hours than Magistrate Judge Chang if Defendants had made

such objection (they did not), the court OVERRULES Plaintiffs' objection to

Magistrate Judge Chang's deductions to Brazier's hours for redundancy.

## C.    Attorneys' Fees for Objections

Plaintiffs seek additional fees for the Objections, asserting that

Holcomb spent a total of 5.4 hours and Brazier spent a total of 10.8 hours on their

Objections, and that Holcomb spent a total of 23.3 hours and Brazier spent a total

of 2.2 hours on the Response to Defendants' Objections.  Although the court finds

the hours spent on Plaintiffs' Response to Defendants' Objections reasonable, the

court finds that the 16.2 total hours spent on Plaintiffs' Objections is unreasonable

where Plaintiffs for the most part rehashed arguments that this court has already

rejected.  To the extent Plaintiffs raised these Objections simply to maintain their

right of appeal, far fewer hours were necessary.  The court therefore reduces the

counsels' time spent on their Objections by fifty percent, finding that 2.7 hours for

Holcomb and 5.4 hours for Brazier are reasonable.  Thus, in total, the court adds

an additional 26 hours for Holcomb and 7.6 hours for Brazier for work on the

instant Objections, for total additional award of $6,917.27.[7]

---

[7]    The court reaches this amount as follows: (26 hours x $200 hourly rate = $5,200) + (7.6 hours x $185 hourly rate = $1,406) x 1.04712 for tax = $6,917.27.

## V. **CONCLUSION**

In sum, the court OVERRULES the parties' objections and ADOPTS

the (1) Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs'

Motion for Attorneys' Fees and Non-taxable Expenses; Order Directing

Resubmission of Timesheets, Doc. No. 221; and (2) Supplemental Findings and

Recommendation Regarding Amount of Fee Award, Doc. No. 226. Plaintiffs are

awarded $594.33 in costs, and a total of $79,093.45 ($72,176.18 + $6,917.27) in

fees.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 9, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*De-Occupy Honolulu et al. v. City & Cnty. of Honolulu*, Civ. No. 12-00668 JMS-KSC, Order
Adopting (1) Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion
for Attorneys' Fees and Non-taxable Expenses; Order Directing Resubmission of Timesheets,
Doc. No. 221; and (2) Supplemental Findings and Recommendation Regarding Amount of Fee
Award, Doc. No. 226